UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

MICHAEL CHOW known as "MR. CHOW",
MR CHOW ENTERPRISES, LTD, a California
Limited Partnership, MC MIAMI ENTERPRISES, LLC,
a Florida Limited Liability Company,
MC TRIBECA, LLC, a New York Limited Liability
Company, and TC VENTURES, INC., a
New York Corporation,

     Plaintiffs,

v.

CHAK YAM CHAU, STRATIS MORFOGEN,
PHILIPPE MIAMI LLC, a Florida Limited Liability
Company, PHILIPPE NORTH AMERICA
RESTAURANTS, LLC, a New York Limited Liability
Company, PHILIPPE RESTAURANT CORP.,
a New York Corporation,

     Defendants.

_____/

# 09-21893

## CIV-HOEVELER

### MAGISTRATE JUDGE
### GARBER

FILED by _AJS_ D.C.

**JUL 0 8 2009**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. – MIAMI

## **COMPLAINT**

Plaintiff Michael Chow, known as "Mr. Chow," together with the entities that operate the restaurants known as "MR CHOW": MR. CHOW ENTERPRISES, LTD., MC MIAMI ENTERPRISES, LLC, TC VENTURES, INC., and MC TRIBECA, LLC (collectively, the "MR CHOW Restaurants") sue Defendants and allege:

### I. NATURE OF ACTION

1.    This is an action by Mr. Chow and the MR CHOW Restaurants against Defendants for unfair and deceptive trade practices, misappropriation of trade secrets, unfair competition, conversion, trademark infringement, false advertising, and other violations of the Lanham Act and common law.

2.      Defendants Chak Yam Chau and Stratis Morfogen, and the Defendant entities through which they collectively operate restaurants under the name "Philippe by Philippe Chow," have engaged, and continue to engage, in ongoing and escalating efforts to unlawfully mislead, confuse and deceive the public and the clients of the MR CHOW Restaurants, in order to wrongfully convert to themselves, and profit from, the name, reputation and trademark rights of the MR CHOW Restaurants and the real Mr. Chow.  As more fully explained below, Defendant Chau has personally engaged in a concerted course of conduct over an extended period of time to pass himself off as the real Mr. Chow.

3.      Defendants' wrongful conduct includes, among many other things:  (a) changing Defendant Chau's last name from "Chau" to "Chow," thereby creating a fictitious character, fraudulently and deceptively suggesting that Chau is either the real Mr. Chow, his relative, or the former "executive chef" of one of the MR CHOW Restaurants; (b) fraudulently advertising and promoting Defendant Chau as the inventor of the signature dishes served at the MR CHOW Restaurants (when, in fact, the vast majority of these dishes were created by Mr. Chow himself many years before Defendant Chau became employed at a MR CHOW Restaurant) and the mastermind behind the unique dining experience associated with the MR CHOW Restaurants; (c) engaging in other intentionally misleading, confusing, false and deceptive promotional and advertising activities, including internet advertising and purchasing search engine sponsored links, that divert to Defendants the reputation, business, clients and prospective clients of the real Mr. Chow and the MR CHOW Restaurants, and (d) unlawfully misappropriating other intellectual property and trade secrets of Mr. Chow and the MR CHOW Restaurants.  In fact, after Defendant Morfogen's attempt to lawfully purchase an interest in another famous Chinese

2

restaurant brand failed, he claims to have "purchased" the MR CHOW Restaurant brand in the form of a $20.00 tip to a then MR CHOW Restaurant busboy.

4.     Defendants' ongoing wrongful conduct, most recently conducted at their Miami Beach operation, has escalated over time to the point where Plaintiffs find themselves with no other choice but to commence this legal proceeding in order to protect their vital business interests and the name, reputation and identity of the real Mr. Chow.  By this action, Mr. Chow and the MR CHOW Restaurants seek to permanently enjoin Defendants from such wrongful and illegal conduct, and to recover damages resulting from their unlawful actions.

## II. PARTIES

5.     Plaintiff Michael Chow, known as "Mr. Chow," is a resident of California and the founder and main principal of the MR CHOW Restaurants and the creator of the MR CHOW brand.

6.     Plaintiff MR CHOW ENTERPRISES, LTD. is a California limited liability partnership that operates the MR CHOW restaurant located in Beverly Hills, California and which owns the MR CHOW trademarks.

7.     Plaintiff T.C. VENTURES, INC. is a New York corporation that operates the MR CHOW restaurant located in mid-town Manhattan, New York.

8.     Plaintiff MC TRIBECA, LLC is a New York limited liability company that operates the MR CHOW restaurant located in New York's Tribeca.

9.     Plaintiff MC MIAMI ENTERPRISES, LLC is a Florida limited liability company that will operate the MR CHOW restaurant located in Miami Beach, Florida, which is scheduled to open later this year.

3

10.     Defendant Chak Yam Chau is a citizen and resident of New York who, upon information and belief, regularly conducts business in this federal district directly and through Defendant Philippe Miami LLC and other Defendants, and upon further information and belief has engaged in substantial and not isolated activity and has committed tortious acts within the State of Florida and in this federal district either directly or through his agents and employees.

11.     Defendant Stratis Morfogen is a citizen and resident of New York who, upon information and belief, regularly conducts business in this federal district directly and through Defendant Philippe Miami LLC and other Defendants, and upon further information and belief has engaged in substantial and not isolated activity and has committed tortious acts within the State of Florida and in this federal district either directly or through his agents and employees.

12.     Defendant Philippe Miami LLC is a Florida limited liability company with its principal place of business located at 2305 Collins Avenue, Miami Beach, Florida and operates a restaurant under the name "Philippe by Philippe Chow."

13.     Defendant Philippe North America Restaurants, LLC is a New York limited liability company which, upon information and belief, regularly conducts business in this federal district either directly or through Defendant Philippe Miami LLC and other Defendants, and upon further information and belief has engaged in substantial and not isolated activity and has committed tortious acts within the State of Florida and in this federal district either directly or through its agents and employees.

14.     Defendant Philippe Restaurant Corporation is a New York corporation which, upon information and belief, regularly conducts business in this federal district either directly or through Defendant Philippe Miami LLC and other Defendants, and upon further information and

4

belief has engaged in substantial and not isolated activity and has committed tortious acts within the State of Florida and in this federal district either directly or through its agents and employees.

### III. JURISDICTION AND VENUE

15.     This Court has jurisdiction over the subject matter of this lawsuit under the Lanham Act, 15 U.S.C. § 1116(a) which gives Plaintiffs Mr. Chow and the MR CHOW Restaurants civil remedies for Defendants' violations.  Thus, this Court has original federal question jurisdiction pursuant to 28 U.S.C. § 1331. This Court also has original jurisdiction over Plaintiffs' claims of unfair competition pursuant to 28 U.S.C. § 1338(b), as such claims are joined in this action with substantial and related claims under the trademark laws.

16.     This Court may exercise supplemental jurisdiction over all related state law claims under 28 U.S.C. § 1367.  Declaratory and other relief is authorized by the Federal Declaratory Judgment Act, as amended, 28 U.S.C. §§ 2201 and 2202.

17.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims herein occurred in this district and because Defendants are subject to personal jurisdiction in this district.

18.     Defendants are subject to personal jurisdiction in this Court under Fla. Stat. §§ 48.193(1)(a), 48.193(1)(b), and 48.193(2) because they (i) operate, conduct, engage in, or carry on businesses or business ventures within the State of Florida; (2) have committed tortious acts within the State of Florida as alleged herein; and (iii) engage in substantial and not isolated activity within the State of Florida.

## IV. GENERAL ALLEGATIONS

### From Exile comes Reinvention, Revolution and Innovation

19.     The real Mr. Chow was born in Shanghai, China.  His father was a renowned grand master of the Beijing opera and is regarded as a "national treasure," a rare and highly respected honor in The Peoples Republic of China.  In a bipartisan bill introduced into the United States Senate in 2005 by then-Democratic Senator Joseph Lieberman and Republican Senator Lamar Alexander for the purpose of educating American youth about the rich culture of China, Mr. Chow's father was recognized as one of the eight most influential people in the history of China.

20.     As a result of his father's influence, young Mr. Chow was immersed in China's venerable and refined arts.  The legacy bestowed by his father's position and artistic accomplishments ultimately inspired the work of Mr. Chow in the West.

21.     Mr. Chow was first introduced to Western culture at the tender age of 13, when he was sent to London to further his education.  In London, he studied arts and architecture.  As an uprooted young man, he was isolated from his family and from the rich Chinese culture.  In fact, from the very day he left Shanghai, Mr. Chow was never able to communicate with nor see his father again.

22.     Being separated from his family and his heritage left Mr. Chow longing to bring the great culinary tradition of China to the West.  Mr. Chow realized his dream in 1968, when he opened his first visionary and revolutionary designer restaurant, the eponymous MR CHOW. The mission of Mr. Chow – both the man and his restaurant – was then and remains today to

6

promote an appreciation and understanding of the complex and varied cuisine of China through authentic interpretations, refinements, and reinventions of classic dishes.

23.     Successfully accomplishing these goals, Mr. Chow has devoted his entire life to carefully constructing at his restaurant a universe of experiences for his clients, with each detail intended to bridge the gap between East and West through the medium of Chinese cuisine, creating a unique fine dining experience.  Over time, and through painstaking effort, Mr. Chow has been able to convert a misunderstood and largely unfamiliar cuisine into an art form with a cult following by providing clients of the MR CHOW Restaurants with a dining experience that both enlightens and entertains.

24.     The unique experience of the MR CHOW Restaurants is accomplished through specially developed methods, processes, and techniques, which relate not only to the preparation and presentation of the food, but to the control and function of the kitchen, the cooking, expediting and food delivery processes, and the training of staff.  This compilation of processes, methods and techniques was painstakingly developed over a period of forty-one years (essentially, a lifetime body of work), and amounts to a virtual treasure chest of detail, know how, skill and technique, culminating in the MR CHOW experience, all captured in the MR CHOW brand.  Collectively, these processes, methods, and techniques constitute trade secrets of Mr. Chow and the MR CHOW Restaurants.

25.     Through the interpretation and reinterpretation of ancient dishes from China, or as original recipes, Mr. Chow created twelve classic dishes that have become the signature dishes of the MR CHOW Restaurants.  These dishes are known by name and reputation, and many, if not all, have had a cult following for over four decades.  These include Ma Mignon, Chicken Joanna, Mr. Chow Noodle, Chicken Satay with its secret sauce, and others.  These unique dishes, being

7

the heart and soul of the MR CHOW Restaurants, have been tested, retested and refined by Mr. Chow and are among the trade secrets and intellectual property of Mr. Chow and the MR CHOW Restaurants.

26.     In addition to preparing authentic Chinese cuisine, Mr. Chow has always been keenly interested in educating and entertaining his clients, with a view towards honoring and sharing China's cultural heritage. Among the many things Mr. Chow has done to accomplish this objective was to bring the ancient art of hand-pulled noodle-making to his restaurants, where he created and introduced a daily noodle-making show at his first restaurant some forty-one years ago. This show has been exhibited on national television and has even been demonstrated in the Kung Fu Panda movie DVD.

27.     The ancient art of stretching hundreds of fine noodle strands from a mound of dough entirely by hand and without knives or other utensils, remained in the kitchen until Mr. Chow brought it into the dining room in his nightly noodle show. The rapid, skillful transformation of dough into noodle strands from a trolley in the center of the dining room is one of Mr. Chow's many signature innovations, and is inextricably associated with the MR CHOW Restaurants.

28.     To change the preconceptions of his clients regarding Chinese cuisine, Mr. Chow also determined that food should be presented in an environment different from that of traditional Chinese restaurants so that his clients could focus on the unique and authentic cuisine. For example, his restaurants feature west European waiters, and meals are served in two courses, both historical firsts, as such things were never before done in a Chinese restaurant. This desire, coupled with his education in the arts and architecture, led Mr. Chow to create one of the first designer restaurants, with an environment designed with the greatest attention to detail, to be

simultaneously sophisticated and comfortable. The clean lines, modern furnishings, lighting, fixtures, and utensils, all carefully selected by Mr. Chow, brought an artistic sensibility that further contributed to the unique identity of the MR CHOW Restaurants.

29. In 1974, following his success in London, Mr. Chow opened a MR CHOW restaurant in Beverly Hills, California, enabling him to expand his pursuit of educating and entertaining the West about the authentic and sophisticated cuisine of China, through the unique experience that has become uniquely associated with all the MR CHOW Restaurants.

30. Since that time, other MR CHOW Restaurants have opened in select locations in the United States, taking care to limit the venues to preserve and sustain the processes, techniques, and methods that contribute to the MR CHOW experience. In 1979, MR CHOW opened in New York City on East 57th Street, and in 2006, he opened a second New York location in Tribeca.

31. In 2005, Mr. Chow announced his plan to expand to Miami Beach and leased space in the soon to be completed W Hotel. The Miami Beach location is scheduled to open in August of 2009.

### The One and Only Mr. Chow

32. Mr. Chow's combination of great ancient cuisine, explored through the authentic interpretations and original recipes developed at his restaurants, and the carefully-composed setting, truly revolutionized Chinese fine dining and made the MR CHOW brand a cultural icon. In fact, Mr. Chow himself is known and referred to almost universally as "Mr. Chow" and not as "Michael Chow." The thirtieth anniversary of the MR CHOW Restaurants was commemorated by numerous luminaries in the social, political, art, entertainment, business, professional and sports fields. It is unlikely that such a famous and diverse group of people has ever been brought

9

together before, or since, to commemorate such an event. No restaurant has ever amassed such a remarkable international clientele.

33.     Over the years, Mr. Chow has repeatedly been heralded in the media as a great cultural icon, in the company of Ray Croc, the founder of McDonalds. Mr. Chow's innovations in concept and design extend beyond the restaurant industry and have inspired great artists, designers and producers, placing him among the leading visionaries of the 20th century.

34.     The MR CHOW Restaurants became – and remain today – gathering places for intelligentsia, celebrities, artists, world leaders, and the general dining public who are in search of a special experience.

35.     As a result of the popularity of the MR CHOW Restaurants, the MR CHOW trademark has become famous. Likewise, the trade secrets of the MR CHOW Restaurants, which Mr. Chow has taken reasonable measures to protect, have great economic value in addition to their personal meaning and value to Mr. Chow. The reputation of Mr. Chow and the MR CHOW Restaurants in the marketplace is a valuable draw to the public and a source of regular repeat business from existing clients.

### Defendant Morfogen Attempts to Buy, and Then to Steal, a Great Restaurant

36.     Defendant Morfogen engaged in a course of conduct specifically geared towards unfairly capitalizing on the fame of Mr. Chow and the MR CHOW Restaurants and trademark.

37.     As reported in the Florida press, Defendant Morfogen has owned a "Kids Kingdom" amusement park, a diner, and a nightclub, but he has no prior experience owning or operating an iconic Chinese fine dining restaurant. But Defendant Morfogen knew what he liked, and according to his own statements in the media, he liked the MR CHOW experience and regularly dined at the MR CHOW Restaurants for over a decade.

10

38.     Defendant Morfogen also acknowledged the economic value of the MR CHOW Restaurants and brand.  As a result, in or about 2005, he began to search for a means of acquiring a Chinese restaurant business with the reputation, status and value of MR CHOW to compete with the MR CHOW Restaurants which he obviously coveted.

39.     In early 2005, Defendant Morfogen secured a restaurant space on 60th Street in New York that had previously housed several failed restaurants.  Defendant Morfogen then attempted to purchase the mark and intellectual property of Davé, a famous Parisian restaurant that had its own treasure chest of detail, know how, skill and technique, and that had itself built a strong reputation in the restaurant industry.  In fact, MR CHOW and Davé are among the very few restaurants that have an internationally famous following.

40.     Defendant Morfogen's stated intention was to bring the famed Parisian Chinese restaurant Davé to New York.  However, this attempt to do things "the right way," by acquiring the rights to the mark, reputation, processes and dishes of Davé, ultimately failed.

41.     When Defendant Morfogen's lawful attempt to compete with the MR CHOW Restaurants failed, Defendant Morfogen then apparently decided to compete unlawfully by misappropriating the name, reputation, trade secrets, intellectual property and ultimately the business and identity of Mr. Chow and the MR CHOW Restaurants.

42.     Defendant Morfogen hatched his plan through a now infamous twenty-dollar payoff to a busboy at the MR CHOW restaurant in New York.  That busboy put Defendant Morfogen in contact with Defendant Chak Yam Chau, known then as "Philippo," who, at the time, was an expeditor in the MR CHOW kitchen.  After being given a new car as a "signing bonus," Defendant Chau entered into the conspiracy with Defendant Morfogen, described in this

11

Complaint, to deceptively, fraudulently and unlawfully use and profit from the name, reputation, trade secrets and intellectual property of Mr. Chow and the MR CHOW Restaurants.

43.     Defendants Chau and Morfogen have made repeated false claims on the internet and in interviews that Defendant Chau was the "executive chef" at MR CHOW and the "chef Chow" behind the MR CHOW Restaurants. These claims have absolutely no merit whatsoever.

44.     Defendant Chau was hired to work in a MR CHOW Restaurant in 1980 as a lowest level kitchen assistant.  Prior to that time, he had absolutely no kitchen experience, whether in Hong Kong or elsewhere.  During his 25 years with the MR CHOW Restaurants, Defendant Chau was a chopping assistant, a chopper, an assistant chopper-expeditor and ultimately, for the three years before his resignation, leading expeditor.   He never rose to the position of executive chef as he falsely claims.  In fact, he never could have, as all Mr. Chow executive chefs are trained by Master Chefs in China or Hong Kong and must accumulate years of experience there before being hired to work at a MR CHOW Restaurant.

45.     Defendants have also repeatedly claimed in the media that Defendant Chau was the "mastermind" and "architect" of the MR CHOW Restaurants' menu and that he, and not the real Mr. Chow, was personally responsible for creating the signature dishes served at the MR CHOW Restaurants. In fact, Defendant Morfogen has been quoted as falsely stating, "Philippe was the architect for this menu for the past twenty-seven years; Michael doesn't cook.  I'm not hiding the fact; these are his dishes.  I didn't want him to come here and start cooking Vietnamese or Thai.  I wanted him to cook what he has been cooking for twenty-seven years."

46.     Recently, the following misinformation was published on the website of OpenTable.com, a restaurant reporting service,  and is believed to be directly attributable to Defendants:

> Philippe Chow of New York's famed Mr. Chow now opened Philippe Miami located at 2305 Collins Ave. @ the Gansevoort South Hotel. Formerly the renowned chef of Mr. Chow Philippe has at last decided after 27 years to start anew. Philippe will bring his culinary expertise & worldly experience from his beginnings in Hong Kong to his unique restaurant. He has been noted as one of the top Asian culinary masterminds of our time.

Each and all of these claims are patently false, and were made for the sole and express purpose of passing Defendant Chau off as the real Mr. Chow.

47.     Defendant Chau did not develop or contribute to the development of any of the signature dishes served at the MR CHOW Restaurants (the vast majority of which were personally and painstakingly designed, created, harmonized and perfected by Mr. Chow himself prior to the time that he opened his first restaurant in London in 1968, some thirteen years before Defendant Chau was first employed as a lowest level kitchen assistant in a MR CHOW Restaurant), or to any other portion of the MR CHOW Restaurants' menu. In fact, he contributed *nothing whatsoever* to the MR CHOW menu.

48.     In his position as chopper-expediter, Defendant Chau learned, in confidence, the valuable trade secrets of Mr. Chow and the MR CHOW Restaurants, including many of the processes, techniques, and methods that cumulatively comprise the MR CHOW brand. Over the course of his twenty-five years of employment at MR. CHOW, Defendant Chau became intimately familiar with the restaurant's interpretations and original recipes that had been painstakingly tested, retested and amassed over a period of forty-one years, and with presentation and delivery techniques and methods that are essential components of the MR CHOW Restaurants. In short, Defendant Chau was directly privy to the treasure chest of details, know how, skills and techniques which he and Defendant Morfogen misappropriated in an attempt to unfairly imitate the MR CHOW experience.

13

### The Dishonest Schemes and Deceptive Conduct behind "Philippe Chow"

49.     In 2005, Defendant Morfogen conspired with Defendant Chau to steal the mark, reputation, and trade secrets of the MR CHOW Restaurants, and to steal the very identity of Mr. Chow, in order to unlawfully acquire the business and economic value of the MR CHOW Restaurants and brand.

50.     By resignation letter signed using the last name "Chau," Defendant Chau resigned from his lead chopper-expeditor position effective September 24, 2005, allegedly because of "personal and family issues."

51.     Thereafter, Defendant Chau changed the spelling of his last name from "Chau" to "Chow" for the sole and express purpose of passing himself off as the real Mr. Chow and confusing the public, and particularly the clients of the MR CHOW Restaurants.

52.     In December 2005, Defendants Chau (after having changed the spelling of his last name from "Chau" to "Chow" a few short months after submitting his resignation letter) and Morfogen opened a New York restaurant, named "PHILIPPE CHOW" in Defendant Morfogen's rented space on 60th Street – just a few blocks away from the MR CHOW restaurant on 57th Street, where they proceeded to unfairly trade on the MR CHOW name, reputation and client experience.

53.     Defendants began their plan to capitalize on the success of the MR CHOW Restaurants by relying on and furthering consumer confusion.  It is a well-known phenomenon in the restaurant business that when an internationally famous restaurant that has been in business for a long period of time opens a new location, the clients of the old restaurant flock to the new one.  Knowing this, Defendants, in opening their New York restaurant, intentionally created

confusion and passed off their restaurant as being affiliated or associated with the MR CHOW Restaurants.

54.     Defendants Chau and Morfogen, and upon information and belief the agents and employees of the Defendant entities, misrepresented Defendant Chau in the press, to the public and to clients and potential clients as the former "executive chef" of MR CHOW and "mastermind" and "architect" of the restaurant's menu and its signature dishes.

55.     Indeed, the Philippe Chow menu contains the same signature dishes as MR CHOW. Defendants promoted the menu as consisting of "Chef Chow's" dishes that Defendant Chau had been preparing "for the last 27 years" at MR CHOW. These are more patent falsehoods, as (a) the dishes were created years before Defendant Chau became employed at MR CHOW, and (b) Defendant Chau was never in charge of preparing any dishes at the MR CHOW restaurant at which he worked.

56.     Defendant Chau was <u>never</u> a food chef and only <u>very</u> occasionally actually cooked any of the food at the MR CHOW Restaurants. During Defendant Chau's 25 years of employment with MR CHOW, he was primarily a food chopper.

57.     Not only did the Defendants employ a confusingly similar name for their restaurant, but they also attempted to serve diners in a refined atmosphere like the environment created by and associated with the MR CHOW Restaurants, and their menu contained similarly-named dishes to the signature dishes of the MR CHOW Restaurants.

58.     Defendants also copied the classic daily noodle show that Mr. Chow introduced forty-one years ago. This act was yet another attempt to confuse and deceive the public, clients and potential clients into believing that Defendants' restaurant was, in fact, a MR CHOW Restaurant or that it was affiliated with or associated with the MR CHOW Restaurants.

15

59. In promoting their restaurant, Defendants falsely advertised Defendant Chau as "Philippe Chow of the famed MR CHOW restaurant" and created the false and misleading impression that Defendant Chau was *the* "Mr. Chow." Although Defendants occasionally offered a disclaimer that Defendant Chau, now going by the name "Chow," was "no relation" or "not related to" the real Mr. Chow, such occasional statements hardly dispelled the confusion and deception Defendants' conduct created.

60. To further mislead the public, Defendants purchased internet advertising on sites such as Google, TMZ and Yahoo!, known as sponsored links, by which key word searching for the MR CHOW Restaurants or the real Mr. Chow would misdirect the client or prospective client to Defendants' website, "Philippechow.com." Defendants also used "metatags" with the name "Chow" imbedded in the Philippechow.com website to cause users searching for information about the MR CHOW Restaurants to be intercepted and directed to promotional information about Defendants' restaurants instead.

61. Upon information and belief, Defendants directed their staff to misrepresent that the Defendants' restaurants were in fact MR CHOW Restaurants or that they were associated or affiliated with the MR CHOW Restaurants, and that the fictitious "Philippe Chow" (played by Defendant Chau) was "Chef Chow" of the famous MR CHOW Restaurants, or that he was the son or brother of the real Mr. Chow.

62. Defendants continued to misappropriate trade secrets and other confidential and proprietary information from the MR CHOW Restaurants in order to further their deception of clients and to unfairly compete through dishonest and unconscionable means. Defendants at all pertinent times did not disclose these trade secrets so they could continue to profit from them through their continuing illegal conduct.

16

**Defendant Chau's Ultimate Attempt to Become Mr. Chow and Defendants' Attempt
to Deprive Mr. Chow of the Name, Reputation and Rights of the
MR CHOW Restaurants in Miami Beach**

63.     In 2005 Mr. Chow publicized his plans to open a restaurant in Miami Beach.  In
an obvious attempt to confuse and deceive clients, prospective clients, and the public as to the
identity of the real Mr. Chow and the origins of the signature MR CHOW dishes and dining
experience, Defendants secured a location and opened a restaurant in Miami Beach ahead of Mr.
Chow.

64.     Defendants' continuing actions in South Florida to confuse and deceive clients,
prospective clients and the public that Defendants' restaurants are affiliated or associated with
the MR CHOW Restaurants and to wrongfully associate the name, reputation and experience of
Mr. Chow with Defendant "Philippe Chow," culminated in the conversion of Plaintiffs' valuable
intellectual property and the deprivation of the rights, benefits and value of that intellectual
property to Mr. Chow and the MR CHOW Restaurants in Florida, and resulted in the bringing of
this action.

65.     When the Philippe Chow restaurant opened in Miami Beach in 2008, Defendant
Morfogen continued his false statements in the press, stating that when Chau was employed at
MR CHOW, "Philippe…was the architect for this menu over the last 27 years," and that Philippe
Chow was the "great chef," "famous for many of the popular dishes at MR CHOW" and "had
developed a huge following over his 27 years working under owner (no relation) Michael
Chow."

66.     As a result of these false statements, Defendants reduced the real Mr. Chow to
absentee owner Michael Chow, of no relation to the so called "great chef" and "architect" of the
MR CHOW signature dishes, Philippe Chow.  Prospective clients of the real MR CHOW

17

Restaurants can reasonably be misled into believing that the fictitious "Philippe Chow" is Mr. Chow and the imposter restaurant "Philippe by Philippe Chow" is an authentic MR CHOW Restaurant and that the real MR CHOW Restaurant is a copycat with respect to all of the signature aspects of the MR CHOW dining experience.

67.     In their promotion, advertising and communications to clients of their Miami Beach restaurant, Defendants directly refer to Defendant Chau as "Mr. Chow." Defendant Chau even calls himself "Mr. Chow" and, on information and belief, instructs his staff to refer to him in the press as "Mr. Chow." Upon further information and belief, staff at the Miami Beach restaurant are instructed to inform, and do inform persons who inquire that the restaurant is associated with or is a MR CHOW restaurant and that "Philippe Chow" was the chef behind the MR CHOW Restaurants.

68.     At Defendants' Miami Beach restaurant, the signage over the restaurant falsely identifies other locations, including "L.A.," even though Defendants have no restaurant in Los Angeles. This reference to "L.A." appears to be nothing more than another attempt to deliberately confuse and deceive the public, clients and prospective clients of MR CHOW, that Defendants' Miami Beach restaurant is associated with the MR CHOW Restaurants, including the venerable MR CHOW restaurant in Beverly Hills which has been in operation for thirty-five years.

69.     Defendants' attempt to confuse the public has been successful. Press accounts of Defendants' Miami opening included statements like the following which clearly demonstrate the confusion created between Defendants' Miami restaurant and the MR CHOW Restaurants: "Do you know that famed New York restaurant MR CHOW? Well its chef, Philippe Chow is bringing his flare to South Beach." In the same story a patron stated "in L.A., I used to go to MR

CHOW weekly." Since Defendants do not have an L.A. location, she could have only been referring to the Beverly Hills MR CHOW restaurant, mistakenly believing that it was affiliated with Defendants' restaurant.

70.     Defendant Chau, under the guise of the fictitious "Philippe Chow," has falsely stated on the on-line "Twitter" service that there are "Philippe Chow" locations in Beverly Hills, as well as New York and Miami.    This is further evidence of Defendants' ongoing and escalating wrongful conduct.

71.     Defendants' actions to deceive and confuse the public and consumers, and to misappropriate as their own the MR CHOW name, reputation, signature dishes, entertainment, and dining experience before the MR. CHOW Restaurant opening in Miami Beach, constitutes an unlawful conversion to Defendants of the rights and benefits of ownership of the MR. CHOW brand and trademark, depriving Plaintiffs of those valuable rights and benefits.

72.     Plaintiffs' bring this action to protect their rights, to enjoin the continued dissipation and devaluation of the MR CHOW brand, the continued wrongful use and benefit of the property of Plaintiffs, and the unlawful deception and confusion of the public and the prospective clients of the MR CHOW Restaurants in Miami Beach, and finally to obtain from Defendants the damages incurred.

## The MR CHOW Restaurants' Right to Protect Their Marks, Trade Secrets and Other Proprietary Information and Intellectual Property

73.     The MR CHOW Restaurants have continuously used and promoted the federally registered MR CHOW marks, U.S. Registration Numbers 1,160,402, 1,247,990, 2,973,442, and 3,558,956 (the "MR CHOW Registered Marks").

19

74.     The MR CHOW Restaurants have also continuously used and promoted other marks not federally registered, such as the names of the signature dishes, but which have been legitimately used by the MR CHOW Restaurants since prior to the time Defendant began use of the fictitious "Philippe Chow," the mark "Philippe by Philippe Chow" and the MR CHOW signature dishes and the MR CHOW noodle show.

75.     Mr. Chow and the MR CHOW Restaurants engaged in reasonable steps to protect the trade secrets used in operating the MR CHOW Restaurants though policies, procedures, training and other measures designed and intended to protect them under the circumstances. In fact, Mr Chow successfully prosecuted a case in London in 1986, not dissimilar to the instant case, where an individual whose actual last name was "CHOW" attempted to pass his restaurants off as being associated with the MR CHOW London Restaurant. The case resulted in the defendant being barred from ever using his own last name of "CHOW" in connection with any restaurant featuring Chinese cuisine.

## V. CONDITIONS PRECEDENT; ATTORNEY'S FEES

76.     All conditions precedent to the institution of this action have been waived, performed or have occurred.

77.     Plaintiffs have retained the undersigned counsel to represent them in this action and are obligated to pay them a reasonable fee for their services.

## VI. CAUSES OF ACTION

### Count I
### Federal Trademark Infringement

78.     Plaintiffs incorporate paragraphs 1 through 77 of this Complaint as if fully set forth herein.

79.     This is an action for infringement of federally registered trademarks under 15 U.S.C. § 1114(1)

80.     MR CHOW ENTERPRISES is the valid owner of the MR CHOW Registered Marks. The other MR CHOW Restaurants are related companies whose use of the MR CHOW Registered Marks inures to the benefit of MR CHOW ENTERPRISES.

81.     Prior to 2005, no third party used the MR CHOW Registered Marks or any confusingly similar marks.

82.     The MR CHOW Restaurants used the MR CHOW Registered Marks in restaurant menus, displays, and through other methods of advertising and promotion, including print and on-line media.

83.     MR CHOW qualifies as a strong trademark since it is the subject of an incontestable registration and since it represents a term used to identify and distinguish the services of the MR CHOW Restaurants from the services of others.

84.     The MR CHOW Registered Marks were distinctive and famous prior to Defendants' adoption and use of: (a) the false identity "Mr. Chow," (b) the use of MR CHOW in key word searching and sponsored link advertising, and (c) all other unlawful uses of the MR CHOW name and mark, including confusingly similar variations thereof, to mislead consumers into believing that Defendants' restaurant services are sponsored by, affiliated with or associated with Mr. Chow and the MR CHOW Restaurants.

21

85. Defendants' actions have caused a likelihood of confusion and actual confusion in the marketplace due to the similarity of the marks and similarity of the services associated with the marks represent.

86. The MR CHOW Restaurants and Defendants compete for the same clients in the same industry.

87. Defendants adopted and use the MR CHOW name and marks, or confusingly similar variations thereof, willfully and with a bad faith intent to profit from the MR CHOW Registered Marks, and to damage the goodwill and reputation of Mr. Chow.

88. Defendants were well aware of the distinctiveness, growth and potential of the MR CHOW brand in infringing upon the distinctive and famous MR CHOW marks.

89. Defendants' infringement has been willful and deliberate, and designed specifically to trade upon the goodwill associated with the MR CHOW Registered Marks.

90. Defendants' infringement constitutes a violation of 15 U.S.C. § 1114 and will continue unless enjoined by this Court.

91. Defendants' acts of infringement have caused injury to Plaintiffs and as a direct and proximate result of Defendants' acts of infringement, Mr. Chow and the MR CHOW Restaurants have incurred substantial and material damages in an amount to be determined at trial.

92. Mr. Chow and the MR CHOW Restaurants will continue to suffer irreparable injury unless Defendants are permanently enjoined by this Court.

WHEREFORE, Plaintiffs demand an accounting of profits Defendants wrongfully obtained from their trademark infringement, damages, treble damages, costs and attorneys' fees

under 15 U.S.C. § 1117, unjust enrichment damages, permanent injunctive relief and such other relief as the Court may deem just and proper.

### Count II
### Federal Trademark Infringement Based on Reverse Confusion and Reverse Palming Off under 15 U.S.C. § 1125(a)

93.     Plaintiffs incorporate paragraphs 1 through 77 of this Complaint as if fully set forth herein.

94.     Defendants are the junior users of the MR CHOW Registered Marks (or their confusingly similar variations thereof) and have adopted similar or identical marks to profit from the reputation and goodwill of the MR CHOW Restaurants, the senior users of the MR CHOW marks.

95.     Consumers are likely to mistakenly associate Mr. Chow and the MR CHOW Restaurants with Defendant Chau and "Philippe by Philippe Chow" and are likely to mistakenly believe that the products and services of MR CHOW Restaurants are actually products and services of Defendants.

96.     Defendants have saturated the South Florida market with false and deceptive advertising and promotions using confusingly similar marks to the MR CHOW Registered Marks. Such advertising and promotions caused the MR CHOW Restaurants to lose the value of the MR CHOW brand, product identity and corporate identity, and to lose control over the goodwill and reputation associated with the brand, and the ability to enter into new markets.

97.     Defendants' false and misleading representations are likely to cause consumers to view the MR CHOW Restaurants as infringers of Defendants' marks and style of doing business, including the MR CHOW signature dishes, the noodle-pulling demonstration, and the culturally-significant Chinese cuisine presented in a refined designer restaurant environment.

23

98.     As a result of Defendants' actions, Plaintiffs have been damaged and are entitled to monetary damages, including Defendants' profits, costs and attorney's fees.

99.     Plaintiffs will continue to suffer irreparable injury unless Defendants are permanently enjoined by this Court.

WHEREFORE, Plaintiffs demand an accounting of profits Defendants wrongfully obtained from their trademark infringement, damages, treble damages, costs and attorneys' fees under 15 U.S.C. § 1117, unjust enrichment damages, permanent injunctive relief and such other relief as the Court may deem just and proper.

**Count III**
**False Association/False Designation of Origin and Federal Unfair Competition under 15 U.S.C. § 1125(a)**

100.     Plaintiffs incorporate paragraphs 1 through 77 of this Complaint as if fully set forth herein.

101.     Defendants' use of the names Philippe Chow and "Mr. Chow," as well as other schemes, devices and false advertising, constitute a false designation of origin and/or a false description or representation, which is likely to deceive and mislead consumers, and has actually deceived and misled consumers, into believing that the Defendants' services originate with Plaintiffs, or are otherwise affiliated with, licensed, sanctioned or endorsed by Plaintiffs.

102.     Defendants' willful, intentional, and unauthorized acts of copying Plaintiffs' unique products and services, Defendants' naming of their products and services similarly to those of the MR CHOW Restaurants, and Defendants falsely describing the origins of their products and services, unfairly restrains Mr. Chow and the MR CHOW Restaurants from competing and is likely to deceive clients and prospective clients into mistakenly believing that

Defendant Chau and the restaurants "Philippe by Philippe Chow" do not have any competing brands or products in the market.

103.   Defendants' unlawful actions constitute violations of 15 U.S.C. § 1125(a).

104.   Plaintiffs have no control over the nature and quality of the services offered by Defendants and any failure, neglect, or default by Defendants in providing their services will and does reflect negatively on Plaintiffs as the believed source or origin thereof, hampering efforts by Plaintiffs to continue to protect their reputation for high quality services, resulting in either a loss of sales, a diminution in Plaintiffs' reputation, and the need for considerable expenditures to promote their services and engage in corrective advertising, all to the irreparable harm of Plaintiffs.

105.   As a direct and proximate result of Defendants' false association, false designation and unfair competition, Mr. Chow and the MR CHOW Restaurants have incurred substantial and material damages in an amount to be determined at trial.

WHEREFORE, Plaintiffs demand an accounting of profits Defendants wrongfully obtained from their false association/false designation of origin, damages, treble damages, costs and attorneys' fees under 15 U.S.C. § 1117, unjust enrichment damages, permanent injunctive relief, and such other relief as the Court may deem just and proper.

## Count IV
### False Advertising under 15 U.S.C. §1125(a)

106.   Plaintiffs incorporate paragraphs 1 through 77 of this Complaint as if fully set forth herein.

107.   Defendants are direct competitors to the MR CHOW Restaurants.

108.    Defendants' advertisements and promotions, and their factual representations on-line, in print media, and in person, are false and misleading.

109.    The advertisements and promotions have deceived, or have the capacity to deceive, consumers.

110.    The deception likely had or likely may have a material effect on purchasing decisions.   The MR CHOW marks have been or will be weakened as a result of clients, prospective clients and the public seeing the MR CHOW Restaurants and the MR CHOW marks as copies of Defendants rather than as the unique, predominant and senior mark, brand and product.

111.    Defendants' misrepresentations and false advertising affects interstate commerce.

112.    Plaintiffs have been and will continue to be injured as a result of Defendants' false advertising.

113.    Defendants used and continue to use in commerce false or misleading descriptions of fact, or false and misleading representations of fact, which in commercial advertising or promotion misrepresent the nature, characteristics, qualities, or origin of Defendants' services.

114.    Defendants' false advertising has caused the MR CHOW Restaurants to lose clients and prospective clients, and to incur increased promotional costs, as a result of Defendants' false and misleading representations.

115.    Mr. Chow and the MR CHOW Restaurants will continue to suffer irreparable injury unless Defendants are permanently enjoined by this Court.

WHEREFORE, Plaintiffs demand an accounting of profits Defendants wrongfully obtained from their false advertising, damages, treble damages, costs and attorneys' fees under

15 U.S.C. § 1117, unjust enrichment damages, permanent injunctive relief, and such other relief as the Court may deem just and proper.

## Count V
## Common Law Trademark Infringement

116.    Plaintiffs incorporate paragraphs 1 through 77 of this Complaint as if fully set forth herein.

117.    Plaintiffs own and enjoy common law rights in connection with the MR CHOW marks, which rights are superior to any rights which Defendants may claim therein.

118.    Defendants' use of the names Philippe Chow, Mr. Chow and other confusingly similar variations thereof, and other marks used by the MR CHOW Restaurants to promote their restaurant services is likely to, and has actually caused confusion as to source or origin, and consumers are likely to associate Defendants' services with, and as originating from, Plaintiffs.

119.    Defendants' infringement has damaged Plaintiffs and will continue unless enjoined by this Court.

120.    Plaintiffs have no plain, speedy or adequate remedy at law because as long as Defendants continue to use a confusingly similar name, mark and confusing advertising and promotion, the public will continue to be confused and Plaintiffs will continue to sustain damage and loss of goodwill.

121.    Plaintiffs will continue to suffer irreparable injury unless Defendants are permanently enjoined by this Court.

122.    As a direct and proximate result of Defendants' infringement, Plaintiffs have incurred substantial and material damages in an amount to be determined at trial.

123.    Defendants' conduct was wanton, willful, and malicious, so as to justify the imposition of punitive damages pursuant to § 768.72, Fla. Stat.

WHEREFORE, Plaintiffs demand judgment against Defendants for damages, unjust enrichment damages, punitive damages, permanent injunctive relief, costs and such other relief as the Court may deem just and proper.

### Count VI
### Common Law Unfair Competition

124.    Plaintiffs incorporate paragraphs 1 through 76 of this Complaint as if fully set forth herein.

125.    Defendants compete in the restaurant business with Mr. Chow and the MR CHOW Restaurants.

126.    By committing the acts alleged herein, including without limitation the use of similar names in a similar industry, and other deceptive and fraudulent conduct, Defendants are guilty of unfair competition in violation of the common law of Florida.

127.    Defendants' unfair competition has been willfully performed with the actual and constructive knowledge of Plaintiffs' prior rights and prior use and registration of the federally registered and other MR CHOW marks.

128.    Defendants' actions have caused or are likely to cause consumer confusion.

129.    Mr. Chow and the MR CHOW Restaurants will continue to suffer irreparable injury unless Defendants are permanently enjoined by this Court.

130.    As a direct and proximate result of Defendants' unfair competition, Mr. Chow has incurred substantial and material damages in an amount to be determined at trial.

131.   Defendants' conduct was wanton, willful, and malicious, so as to justify the imposition of punitive damages pursuant to § 768.72, Fla. Stat.

WHEREFORE, Plaintiffs demand judgment against Defendants for actual damages, unjust enrichment damages, punitive damages, permanent injunctive relief, costs and such other relief as the Court may deem just and proper.

## Count VII
## Misappropriation of Trade Secrets under New York Law

132.   Plaintiffs incorporate paragraphs 1 through 77 of this Complaint as if fully set forth herein.

133.   The business plans, business strategies, techniques, operational and management processes and procedures, and other confidential business information of Mr. Chow and the MR CHOW Restaurants constitute trade secrets protected by the common law of New York.

134.   These trade secrets give Plaintiffs an advantage over their competitors.

135.   Mr. Chow and the MR CHOW Restaurants have acted at all times to reasonably protect from disclosure these trade secrets, through policies, procedures, training and other appropriate means.

136.   By their actions, Defendants used improper means to acquire the trade secrets of Mr. Chow and the MR CHOW Restaurants in violation of New York law.

137.   Defendants have kept Plaintiffs' trade secrets confidential and yet make use of those trade secrets to their commercial advantage.

138.   Defendants' misappropriation of trade secrets is ongoing.

139.   Mr. Chow and the MR CHOW Restaurants will continue to suffer irreparable injury unless Defendants are permanently enjoined by this Court.

140.    As a direct and proximate result of Defendants' misappropriation of trade secrets, Mr. Chow and the MR CHOW Restaurants have incurred substantial and material damages in an amount to be determined at trial.

141.    Defendants' conduct was wanton, willful, and malicious, so as to justify the imposition of punitive damages pursuant to § 768.72, Fla. Stat.

142.    Because Defendants' misappropriation of trade secrets occurred initially through Defendants' wrongful actions in New York, New York trade secret law, and its attendant statute of limitations applies to this count.

WHEREFORE, Plaintiffs demand judgment against Defendants for damages, punitive damages, permanent injunctive relief, costs and such other relief as the Court may deem just and proper.

### Count VIII
### Violation of Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.*

143.    Plaintiffs incorporate paragraphs 1 through 77 of this Complaint as if fully set forth herein.

144.    Defendants' actions as set forth above offend established public policy, are unscrupulous or substantially injurious to consumers, and/or are in violation of statutes proscribing unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices, and Defendants' actions therefore constitute deceptive acts or unfair practices.

145.    Defendants have engaged in such deceptive and unfair trade practices in violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 – 501.213.

146.    Mr. Chow and the MR CHOW Restaurants have been aggrieved by Defendants unfair and deceptive acts.

147.    As a direct and proximate result of Defendants' deceptive and unfair trade practices, Mr. Chow and the MR CHOW Restaurants also have incurred substantial and material damages in an amount to be determined at trial.

148.    Mr. Chow and the MR CHOW Restaurants will continue to suffer irreparable injury unless Defendants are permanently enjoined by this Court.

WHEREFORE, Plaintiffs demand judgment against Defendants for damages, permanent injunctive relief, costs, attorneys' fees and such other relief as the Court may deem just and proper.

**Count IX**
**Conversion**

149.    Plaintiffs incorporate paragraphs 1 through 77 of this Complaint as if fully set forth herein.

150.    Defendants have wrongfully and unlawfully asserted dominion over the intellectual property of Mr. Chow and the MR CHOW Restaurants, and other valuable confidential and proprietary information of Mr. Chow and the MR CHOW Restaurants.

151.    Defendants' acts of dominion are inconsistent with Mr. Chow and the MR CHOW Restaurants' ownership of the intellectual property of Mr. Chow, the MR CHOW marks and the MR CHOW Restaurants, and the other valuable confidential and proprietary information of Mr. Chow and the MR CHOW Restaurants.

152.    Defendants have obtained that intellectual property, proprietary information and other property of Mr. Chow and the MR CHOW Restaurants by unauthorized acts and conduct.

153.    Defendants' conduct was wanton, willful, and malicious, so as to justify the imposition of punitive damages pursuant to § 768.72, Fla. Stat.

154.    As a result of Defendants' wrongful conversion of the property of Mr. Chow and/or the MR CHOW Restaurants, Plaintiffs are entitled to damages in an amount to be determined at trial.

155.    Plaintiffs have no adequate remedy at law for the harm that would be inflicted by Defendants without judicial intervention, and Plaintiffs are therefore entitled to permanent injunctive relief.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory damages, punitive damages, permanent injunctive relief, costs and such other relief as the Court may deem just and proper.

## VII.  DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial as to all issues so triable.

Respectfully Submitted,

KLUGER KAPLAN
Attorneys for Plaintiffs
Miami Center - 17th Floor
201 South Biscayne Boulevard
Miami, FL 33131
Telephone: (305) 379-9000
Facsimile: (305) 379-3428

By: _____
ALAN J. KLUGER
Fla. Bar No. 200379
Akluger@klugerkaplan.com
TERRI T. MEYERS
Fla. Bar No. 881279
Tmeyers@klugerkaplan.com
LISA J. JERLES
Fla. Bar No. 56092
Ljerles@klugerkaplan.com

32

PERETZ CHESAL & HERRMANN, P.L.
MICHAEL B. CHESAL, ESQ.
Fla. Bar No.: 775398
mchesal@pc-iplaw.com
201 S. Biscayne Blvd., Suite 1750
Miami, FL  33131

MORGAN, LEWIS & BOCKIUS, LLP
JOAN CANNY, ESQ.
Fla. Bar No. 0492531
jcanny@morganlewis.com
200 South Biscayne Boulevard
5300 Wachovia Financial Center
Miami, FL  33131-2339

Of Counsel:   Edward Hayes, Esq.
              Edward W. Hayes, P.C.
              New York Bar No. 1412071
              edhayes@pipeline.com
              515 Madison Avenue
              30th Floor
              New York, NY 10022

M0648358

33

JS 44 (Rev. 2/08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   NOTICE: Attorneys MUST

**09-21893**

## I. (a) PLAINTIFFS

MICHAEL CHOW, known as "MR. CHOW", CHOW ENTERPRISES, LTD., a California Limited Liability Partnership, et al.

**(b)** County of Residence of First Listed Plaintiff   LOS ANGELES COUNTY
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

ALAN J. KLUGER, ESQ.
KLUGER KAPLAN
201 S. BISCAYNE BLVD., SUITE 1700
MIAMI, FL 33131

## DEFENDANTS

CHAK YAM CHAU, STRATIS MORFOGEN, PHILIPPE MIAMI, LLC, a Florida Limited Liability Company, et al.

County of Residence of First Listed Defendant   KINGS COUNTY
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT
OF LAND INVOLVED.

Attorneys (If Known)

CIV-HOEVELER
MAGISTRATE JUDGE
GARBER

FILED by AJS D.C.

JUL 08 2009

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. - MIAMI

**(d)** Check County Where Action Arose: ✓ MIAMI- DADE   ☐ MONROE   ☐ BROWARD   ☐ PALM BEACH   ☐ MARTIN   ☐ ST. LUCIE   ☐ INDIAN RIVER   ☐ OKEECHOBEE   ☐ HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
✓ 3  Federal Question (U.S. Government Not a Party)
☐ 2  U.S. Government Defendant
☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)   and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

09-CV-21893 — Hoeveler/Garber

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☒ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus-Alien Detainee | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | ☐ 950 Constitutionality of State Statutes |

## V. ORIGIN (Place an "X" in One Box Only)

✓ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Re-filed- (see VI below)   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).
(See instructions second page):

a) Re-filed Case ☐ YES ✓ NO   b) Related Cases ☐ YES ✓ NO

JUDGE _____   DOCKET NUMBER _____

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

For trademark infringement and other Lanham Act violations, deceptive and unfair trade practices, trade secret misappropriation and common law torts.

LENGTH OF TRIAL via   7   days estimated for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ✓ Yes   ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE
July 8, 2009

FOR OFFICE USE ONLY

AMOUNT $250.00   RECEIPT # 1004236

07/08/09