UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-21893-CIV-HOEVELER/GARBER

MICHAEL CHOW known as "MR. CHOW",
MR CHOW ENTERPRISES, LTD, a California
Limited Partnership, MC MIAMI ENTERPRISES, LLC,
a Florida Limited Liability Company,
MC TRIBECA, LLC, a New York Limited Liability
Company, and TC VENTURES, INC., a
New York Corporation,

      Plaintiffs,

v.

CHAK YAM CHAU, STRATIS MORFOGEN,
PHILIPPE MIAMI LLC, a Florida Limited Liability
Company, PHILIPPE NORTH AMERICA
RESTAURANTS, LLC, a New York Limited Liability
Company, PHILIPPE RESTAURANT CORP.,
a New York Corporation, PHILIPPE WEST COAST LLC,
a California Limited Partnership, COSTIN DUMITRESCU,
MANNY HAILEY, YAO WU FANG, SUN CHUN HUI,
MARK CHENG and PING CHING KWOK,

      Defendants.

_____/

## SECOND AMENDED COMPLAINT

    Plaintiff Michael Chow, known as "Mr. Chow," together with the entities that operate the

restaurants known as "MR CHOW": MR. CHOW ENTERPRISES, LTD., MC MIAMI

ENTERPRISES, LLC, TC VENTURES, INC., and MC TRIBECA, LLC (collectively, the "MR

CHOW Restaurants") sue Defendants and allege:

### I.  NATURE OF ACTION

    1.    This is an action by Mr. Chow and the MR CHOW Restaurants against

Defendants for unfair and deceptive trade practices, misappropriation of trade secrets, unfair

competition, conversion, trademark infringement, false advertising, and other violations of the Lanham Act as well as other violations of statutory and common law.

2.      Defendants Chak Yam Chau, Stratis Morfogen, Costin Dumitrescu, Manny Hailey and the Defendant entities through which they collectively operate restaurants under the name "Philippe Chow" and "Philippe by Philippe Chow," have engaged, and continue to engage, in ongoing and escalating efforts to unlawfully mislead, confuse and deceive the public and the clients of the MR CHOW Restaurants, in order to wrongfully convert to themselves, and profit from, the name, reputation and trademark rights of the MR CHOW Restaurants and the real Mr. Chow.  As more fully explained below, Defendant Chau has personally engaged in a concerted course of conduct over an extended period of time to pass himself off as the real Mr. Chow.

3.      Defendants' wrongful conduct includes, among many other things:  (a) Defendant Chau's adopting the fictitious last name of "Chow" in order to fraudulently and deceptively suggest that Chau is the real Mr. Chow, or the "Chow" of Mr. Chow or his relative, or the former "Executive Chef" of the well known MR CHOW Restaurant; (b) fraudulently advertising and promoting Defendant Chau as the inventor of the signature dishes served at the MR CHOW Restaurants (when, in fact, the vast majority of these dishes were created by Mr. Chow himself many years before Defendant Chau became employed at a MR CHOW Restaurant), and as the creator of the unique MR CHOW menu and the mastermind behind the unique dining experience associated with the MR CHOW Restaurants; (c) engaging in other intentionally misleading, confusing, false and deceptive promotional and advertising activities, including internet advertising and purchasing search engine sponsored links, that divert to Defendants the reputation, business, clients and prospective clients of the real Mr. Chow and the MR CHOW Restaurants, and (d) unlawfully misappropriating other intellectual property and trade secrets of

2

Mr. Chow and the MR CHOW Restaurants.

4.      Defendants' ongoing wrongful conduct, most recently conducted at their Miami Beach operation and now continuing in California, began in New York in 2005 and was discovered by Plaintiffs thereafter over a period of time between 2005 and 2009.  It has escalated over time to the point where Plaintiffs find themselves with no other choice but to commence this legal proceeding in order to protect their vital business interests and the name, reputation and identity of the real Mr. Chow.  By this action, Mr. Chow and the MR CHOW Restaurants seek to enjoin Defendants permanently and pending judgment from such wrongful and illegal conduct, and to recover damages resulting from their unlawful actions.

## II. PARTIES

5.      Plaintiff Michael Chow, known as "Mr. Chow," is a resident of California and the founder and main principal of the MR CHOW Restaurants and the creator of the MR CHOW brand.

6.      Plaintiff MR CHOW ENTERPRISES, LTD. is a California limited liability partnership that operates the MR CHOW restaurant located in Beverly Hills, California and which owns the MR CHOW trademarks.

7.      Plaintiff T.C. VENTURES, INC. is a New York corporation that operates the MR CHOW restaurant located in mid-town Manhattan, New York.

8.      Plaintiff MC TRIBECA, LLC is a New York limited liability company that operates the MR CHOW restaurant located in New York's Tribeca.

9.      Plaintiff MC MIAMI ENTERPRISES, LLC is a Florida limited liability company that will operate the MR CHOW restaurant located in Miami Beach, Florida, which is scheduled to open later this year.

3

10.     Defendant Chak Yam Chau ("Chau") is a citizen and resident of New York who, upon information and belief, regularly conducts business in this federal district directly and through Defendant Philippe Miami LLC and other Defendants, and upon further information and belief has engaged in substantial and not isolated activity and has committed tortious acts within the State of Florida and in this federal district either directly or through his agents and employees.

11.     Defendants Stratis Morfogen ("Morfogen") and Costin Dumitrescu ("Dumitrescu") are citizens and residents of New York.  Upon information and belief Defendant Manny Hailey ("Hailey") is a citizen and resident of California, and Yao Wu Fang, Sun Chun Hui, Mark Cheng and Ping Ching Kwok (together, the "Defendant Chefs") are citizens and residents of New York and are chefs who formerly worked for Plaintiffs in the MR CHOW Restaurants and now work for the other Defendants in their Philippe Chow restaurants.  Upon information and belief, all of the individual Defendants regularly conduct business in this federal district directly and through Defendant Philippe Miami LLC and other Defendants, and upon further information and belief have engaged in substantial and not isolated activity and have committed tortious acts within the State of Florida and in this federal district either directly or through his agents and employees.

12.     Defendant Philippe Miami LLC is a Florida limited liability company with its principal place of business located at 2305 Collins Avenue, Miami Beach, Florida and operates a restaurant under the name "Philippe by Philippe Chow."

13.     Defendant Philippe North America Restaurants, LLC is a New York limited liability company which, upon information and belief, regularly conducts business in this federal district either directly or through Defendant Philippe Miami LLC and other Defendants, and

4

upon further information and belief has engaged in substantial and not isolated activity and has committed tortious acts within the State of Florida and in this federal district either directly or through its agents and employees.

14.     Defendant Philippe Restaurant Corporation is a New York corporation which, upon information and belief, regularly conducts business in this federal district either directly or through Defendant Philippe Miami LLC and other Defendants, and upon further information and belief has engaged in substantial and not isolated activity and has committed tortious acts within the State of Florida and in this federal district either directly or through its agents and employees.

15.     Defendant Philippe West Coast LLC ("Chau West Coast") is a California limited liability company through which the individual Defendants own and operate Defendants' new restaurant in West Hollywood, California.

### III.  JURISDICTION AND VENUE

16.     This Court has jurisdiction over the subject matter of this lawsuit under the Lanham Act, 15 U.S.C. § 1116(a) which gives Plaintiffs Mr. Chow and the MR CHOW Restaurants civil remedies for Defendants' violations.  Thus, this Court has original federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This Court also has original jurisdiction over Plaintiffs' claims of unfair competition pursuant to 28 U.S.C. § 1338(b), as such claims are joined in this action with substantial and related claims under the trademark laws.

17.     This Court may exercise supplemental jurisdiction over all related state law claims under 28 U.S.C. § 1367.  Declaratory and other relief is authorized by the Federal Declaratory Judgment Act, as amended, 28 U.S.C. §§ 2201 and 2202.

18.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims herein occurred in this district

and because Defendants are subject to personal jurisdiction in this district.

19.     Defendants are subject to personal jurisdiction in this Court under Fla. Stat. §§ 48.193(1)(a), 48.193(1)(b), and 48.193(2) because they (i) operate, conduct, engage in, or carry on businesses or business ventures within the State of Florida; (2) have committed tortious acts within the State of Florida as alleged herein; and (iii) engage in substantial and not isolated activity within the State of Florida or (iv) operate pursuant to a license granted by other named Defendants.

## IV.  GENERAL ALLEGATIONS

### From Exile comes Reinvention, Revolution and Innovation

20.     Michael Chow, the real Mr. Chow, was born in Shanghai, China.  His father was a renowned grand master of the Beijing opera and is regarded as a "national treasure," a rare and highly respected honor in The Peoples Republic of China.  In a bipartisan bill introduced into the United States Senate in 2005 by then-Democratic Senator Joseph Lieberman and Republican Senator Lamar Alexander for the purpose of educating American youth about the rich culture of China, Mr. Chow's father was recognized as one of the eight most influential people in the history of China.

21.     As a result of his father's influence, young Mr. Chow was immersed in China's venerable and refined arts.   The legacy bestowed by his father's position and artistic accomplishments ultimately inspired the work of Mr. Chow in the West.

22.     Mr. Chow was first introduced to Western culture at the tender age of 13, when he was sent to London to further his education.  In London, he studied arts and architecture.  As an uprooted young man, he was isolated from his family and from the rich Chinese culture.  In fact, from the very day he left Shanghai, Mr. Chow was never able to communicate with nor see his

father again.

23.     Being separated from his family and his heritage left Mr. Chow longing to bring the great culinary tradition of China to the West.  Mr. Chow realized his dream in 1968, when he opened his first visionary and revolutionary designer restaurant, the eponymous MR CHOW. The mission of Mr. Chow – both the man and his restaurant – was then and remains today to promote an appreciation and understanding of the complex and varied cuisine of China through authentic interpretations, refinements, and reinventions of classic dishes.

24.     Successfully accomplishing these goals, Mr. Chow has devoted his entire life to carefully constructing at his restaurant a universe of experiences for his clients, with each detail intended to bridge the gap between East and West through the medium of Chinese cuisine, creating a unique fine dining experience.  Over time, and through painstaking effort, Mr. Chow has been able to convert a misunderstood and largely unfamiliar cuisine into an art form with a cult following by providing clients of the MR CHOW Restaurants with a dining experience that both enlightens and entertains.

25.     The unique experience of the MR CHOW Restaurants is accomplished through specially developed methods, processes, and techniques, which relate not only to the preparation and presentation of the food, but to the control and function of the kitchen, the cooking, expediting and food delivery processes, and the training of staff.  This compilation of processes, methods and techniques was painstakingly developed over a period of forty-one years (essentially, a lifetime body of work), and amounts to a virtual treasure chest of detail, know how, skill and technique, culminating in the MR CHOW experience, all captured in the MR CHOW brand.  Collectively, these processes, methods, and techniques constitute trade secrets of Mr. Chow and the MR CHOW Restaurants.

26.     Through the interpretation and reinterpretation of ancient dishes from China, and the creation of original recipes, Mr. Chow created twelve classic dishes that have become the signature dishes of the MR CHOW Restaurants.   These dishes are known by name and reputation, and many, if not all, have had a cult following for over four decades.  These include Ma Mignon, Chicken Joanna, Mr. Chow Noodle, Chicken Satay with its secret sauce, and others. The recipes and mode of preparation of these unique dishes, being the heart and soul of the MR CHOW Restaurants, have been tested, retested and refined by Mr. Chow and are among the trade secrets and intellectual property of Mr. Chow and the MR CHOW Restaurants.

27.     In addition to preparing authentic Chinese cuisine, Mr. Chow has always been keenly interested in educating and entertaining his clients, with a view towards honoring and sharing China's cultural heritage.  Among the many things Mr. Chow has done to accomplish this objective was to bring the ancient art of hand-pulled noodle-making to his restaurants, where he created and introduced a nightly noodle-making show in the dining room at his first restaurant some forty-one years ago which has continued ever since in each MR CHOW Restaurant.  This show has been exhibited on national television and has even been demonstrated in the Kung Fu Panda movie DVD.

28.     The ancient art of stretching hundreds of fine noodle strands from a mound of dough entirely by hand and without knives or other utensils, remained first in Asia and then in the kitchen, until Mr. Chow brought it to England and America and into the dining room in his nightly noodle show.  The rapid, skillful transformation of dough into noodle strands from a trolley in the center of the dining room is one of Mr. Chow's many signature innovations, and is inextricably associated with the MR CHOW Restaurants.

29.    To change the preconceptions of his clients regarding Chinese cuisine, Mr. Chow also determined that food should be presented in an environment different from that of traditional Chinese restaurants so that his clients could focus on the unique and authentic cuisine.  For example, his restaurants feature meals served in two courses, an historical first, as such things were never before done in a Chinese restaurant.  This desire, coupled with his education in the arts and architecture, led Mr. Chow to create one of the first designer restaurants, with an environment designed with the greatest attention to detail, to be simultaneously sophisticated and comfortable.  The clean lines, modern furnishings, lighting, fixtures, and utensils, all carefully selected by Mr. Chow, brought an artistic sensibility that further contributed to the unique identity of the MR CHOW Restaurants.

30.    In 1974, following his success in London, Mr. Chow opened a MR CHOW restaurant in Beverly Hills, California, enabling him to expand his pursuit of  educating and entertaining the West about the authentic and sophisticated cuisine of China, through the unique experience that has become uniquely associated with all the MR CHOW Restaurants.

31.    Since that time, other MR CHOW Restaurants have opened in select locations in the United States, taking care to limit the venues to preserve and sustain the processes, techniques, and methods that contribute to the MR CHOW experience.  In 1979, MR CHOW opened in New York City on East 57th Street, and in 2006, he opened a second New York location in the Tribeca area of New York City.

32.    In 2009, Mr. Chow opened a MR CHOW Restaurant in the W Hotel in Miami Beach.

### The One and Only Mr. Chow

33.     Mr. Chow's combination of great ancient cuisine, explored through the authentic interpretations and original recipes developed at his restaurants, and the carefully-composed setting, truly revolutionized Chinese fine dining and made the MR CHOW brand a cultural icon. In fact, Mr. Chow himself is known and referred to almost universally as "Mr. Chow" and not as Michael Chow.  Although the patrons of the restaurants are by no means all celebrities, the thirtieth anniversary of the MR CHOW Restaurants was commemorated by numerous luminaries in the social, political, art, entertainment, business, professional and sports fields.  It is unlikely that such a famous and diverse group of people has ever been brought together before, or since, to commemorate such an event.  No restaurant has ever amassed such a remarkable international clientele.

34.     Over the years, Mr. Chow has repeatedly been heralded in the media as a cultural icon.  His innovations in concept and design extend beyond the restaurant industry and have inspired artists, designers and producers.

35.     The MR CHOW Restaurants became – and remain today – gathering places for intelligentsia, celebrities, artists, world leaders, as well as the general dining public who are in search of a special experience.

36.     As a result of the popularity of the MR CHOW Restaurants, the MR CHOW trademark and trade name have become famous.  Likewise, the trade secrets of the MR CHOW Restaurants, which Mr. Chow has taken reasonable measures to protect, have great economic value in addition to their personal meaning and value to Mr. Chow.  The reputation of Mr. Chow and the MR CHOW Restaurants in the marketplace is a valuable draw to the public and a source of regular repeat business from existing clients.

**<u>Defendant Morfogen Attempts to Steal a Great Restaurant</u>**

37.     Defendant Morfogen engaged in a course of conduct specifically geared towards unfairly capitalizing on the fame of Mr. Chow and the MR CHOW Restaurants and trademark.

38.     As reported in the Florida press, Defendant Morfogen owned a "Kids Kingdom" amusement park, a diner, and a nightclub.  He had operated a seafood restaurant; but he had no prior experience owning or operating an iconic Chinese fine dining restaurant.  Defendant Morfogen has engaged in a pattern and practice of attempting to confuse the public and steal the patrons of successful restaurants in the same field by giving his own restaurant a confusingly similar name to such successful restaurants.  Thus, observing the widely known "Sea Grill" overlooking the skating rink in Rockefeller Center in New York City, Morfogen opened a seafood restaurant in New York City under the name "Sea Grill of The Aegean" which he promoted as "Sea Grill's Restaurant."  After he was sued, Morfogen agreed to stop using that or any confusingly similar name.  But Defendant Morfogen, who regularly dined at the MR CHOW Restaurants for over a decade, decided to apply his unfair tactics in the field of high end Chinese restaurants.

39.     Defendant Morfogen knew and acknowledged the economic value of the MR CHOW Restaurants and brand.  As a result, in or about 2005, Defendant Morfogen decided to compete unlawfully with the MR CHOW Restaurants by misappropriating the name, reputation, trade secrets, intellectual property and ultimately the business and identity of Mr. Chow and the MR CHOW Restaurants.

40.     Defendant Morfogen hatched his plan through a now infamous twenty-dollar payoff to a busboy at the MR CHOW restaurant in New York.  That busboy put Defendant Morfogen in contact with Defendant Chak Yam Chau, who, at the time, was a chopper and

11

expeditor in the MR CHOW kitchen.   After being given a new car as a "signing bonus," Defendant Chau entered into the conspiracy with Defendant Morfogen, described in this Second Amended Complaint, to deceptively, fraudulently and unlawfully use, trade on and profit from the name, reputation, trade secrets and intellectual property of Mr. Chow and the MR CHOW Restaurants.   On information and belief, at some point, Defendants Chau and Morfogen were joined in said conspiracy by Defendant Dumitrescu and later by Defendant Hailey, and each of the acts of Defendants Chau and Morfogen were committed pursuant to that conspiracy and were duly authorized by each other and by Defendant Dumitrescu.

41.   Defendant Chau was hired to work in a MR CHOW Restaurant in 1980 as a lowest level kitchen assistant.   Prior to that time, he had absolutely no restaurant experience, whether in Hong Kong or elsewhere.   During his 25 years with the MR CHOW Restaurants, Defendant Chau was a chopping assistant, a chopper, an assistant chopper-expeditor and ultimately, for the three years before his resignation, principal chopper and expeditor.   He never rose to the position of Executive Chef, as he falsely advertises.   He never could have, as <u>all</u> Mr. Chow executive chefs are trained by Master Chefs in China or Hong Kong and must accumulate years of cooking experience there before being hired to work at a MR CHOW Restaurant.

42.   In his position as chopper-expediter, Defendant Chau and, in their position as chefs, the Defendant Chefs learned, in confidence, the valuable trade secrets of Mr. Chow and the MR CHOW Restaurants, including many of the processes, techniques, and methods that cumulatively comprise the MR CHOW brand.   Over the course of his twenty-five years of employment at MR. CHOW, Defendant Chau and, subsequently, the Defendant Chefs, became intimately familiar with the restaurant's interpretations of classic dishes and original recipes for signature dishes and sauces that had been painstakingly tested, retested and amassed over a

period of forty-one years, and with presentation and delivery techniques and methods that are essential components of the MR CHOW Restaurants.  In short, said Defendants were directly privy to the treasure chest of details, know how, skills and techniques which were trade secrets of Plaintiffs and which they and the other Defendants misappropriated in an attempt to unfairly imitate the MR CHOW experience.

43.    The Defendant Chefs have each signed written Confidentiality Agreements providing that, in consideration of their employment, such recipes and procedures were trade secrets of the MR CHOW Restaurants and that the Defendant Chefs would not use or disclose those trade secrets or other confidential information for themselves or any other employer.

### The Dishonest Schemes and Deceptive Conduct behind "Philippe Chow"

44.    In 2005, Defendants Morfogen and Dumitrescu conspired with Defendant Chau to steal the mark, reputation, and trade secrets of the MR CHOW Restaurants, and to steal the very identity of Mr. Chow, in order to unlawfully acquire the business and economic value of the MR CHOW Restaurants and brand.

45.    By resignation letter signed using his real last name "Chau," Defendant Chau resigned from his lead chopper-expeditor position effective September 24, 2005, allegedly because of "personal and family issues."

46.    Thereafter, as Plaintiffs subsequently learned, although "Chau" remained his legal last name, Defendant Chau adopted the fictitious last name "Chow" for the sole and express purpose of passing himself off as the real Mr. Chow and confusing the public, and particularly the clients of the MR CHOW Restaurants.

47.    In December 2005, Defendants Chau (falsely using the fictitious the last name "Chow"), Morfogen and Dumitrescu opened a New York restaurant, named "PHILIPPE

CHOW" in Defendant Morfogen's rented space on 60th Street – just a few blocks away from the MR CHOW restaurant on 57th Street, where they proceeded to unfairly trade on the MR CHOW name, reputation and client experience.

48.     As Plaintiffs discovered over time, Defendants sought to further their plan of capitalizing on the success of the MR CHOW Restaurants by creating and relying on consumer confusion.   It is a well-known phenomenon in the restaurant business that when an internationally famous restaurant that has been in business for a long period of time opens a new location, the clients of the old restaurant flock to the new location.  Knowing this, Defendants, in opening their New York restaurant, intentionally created confusion and passed off their restaurant as being affiliated or associated with the MR CHOW Restaurants.

49.     Defendants Chau, Morfogen and Dumitrescu, and, upon information and belief, the agents and employees of the Defendant entities, misrepresented Defendant Chau in the press, to the public and to clients and potential clients as the former "Executive Chef" of MR CHOW the "Chow of Mr. Chow" and "mastermind," "architect" and "creator" of MR CHOW's menu and its signature dishes.  All of these statements were unequivocally false.

50.     Upon information and belief, as Plaintiffs discovered over time, Defendants directed their staff to misrepresent that the Defendants' restaurants were in fact MR CHOW Restaurants or that they were associated or affiliated with the MR CHOW Restaurants, and that the fictitious "Philippe Chow" (played by Defendant Chau) was "Chef Chow" of the famous MR CHOW Restaurants, or that he was the son or brother of the real Mr. Chow.

51.     As Plaintiffs subsequently discovered, Defendants, in promoting their restaurant, falsely advertised Defendant Chau as "Philippe Chow of the famed MR CHOW restaurant" and created the false and misleading impression that Defendant Chau was *the* "Mr. Chow."

52.     Defendants Chau, Morfogen and Dumitrescu have repeatedly made false claims on the internet, in interviews and elsewhere that Defendant Chau was the "Executive Chef" at MR CHOW and the "Chef Chow" behind the MR CHOW Restaurants.   These claims are unequivocally false.

53.     Defendants have also repeatedly claimed in the media that Defendant Chau was the "mastermind" and "architect" of the MR CHOW Restaurants' menu and that he, and not the real Mr. Chow, was personally responsible for creating the signature dishes served at the MR CHOW Restaurants.  All of these claims are also unequivocally false.  In promoting Defendants' restaurant, Defendant Morfogen has been quoted as falsely stating, "Philippe was the architect for this menu for the past twenty-seven years; Michael doesn't cook.  I'm not hiding the fact; these are his [Mr. Chow's] dishes.  I didn't want him [Defendant Chau] to come here and start cooking Vietnamese or Thai.  I wanted him to cook what he has been cooking for twenty-seven years."  This promotional claim was totally false and misleading.  If Chau had been "cooking for twenty-seven years," it was not as a chef in the kitchen of the MR CHOW Restaurants, where he was a chopper/expediter who created no recipes at all and played no part in creation of the menu.

54.     Recently, the following false statement was published on the website of OpenTable.com, a restaurant reporting service, which Plaintiffs allege on information and belief was directly attributable to Defendants:

> Philippe Chow of New York's famed Mr. Chow now opened Philippe Miami located at 2305 Collins Ave. @ the Gansevoort South Hotel.  Formerly the renowned chef of Mr. Chow Philippe has at last decided after 27 years to start anew.  Philippe will bring his culinary expertise & worldly experience from his beginnings in Hong Kong to his unique restaurant.  He has been noted as one of the top Asian culinary masterminds of our time.

Each and all of these claims are patently false, and were made for the sole and express purpose

of passing Defendant Chau off as the real Mr. Chow and as possessing qualities which he does not possess.

55.     Defendant Chau did not develop or contribute to the development of MR CHOW's distinctive menu or any of the signature dishes served at the MR CHOW Restaurants (the vast majority of which were personally and painstakingly designed, created, harmonized and perfected by Mr. Chow himself prior to the time that he opened his first restaurant in London in 1968, some thirteen years before Defendant Chau was first employed as a lowest level kitchen assistant in a MR CHOW Restaurant).   In fact, he contributed *nothing* *whatsoever* to the MR CHOW menu or the creation of the dishes featured on that menu.

56.     The Philippe Chow menu contains the same signature dishes as MR CHOW. Defendants falsely promoted the menu as consisting of "Chef Chow's" dishes that Defendant Chau had been preparing "for the last 27 years" at MR CHOW.   These are also patent falsehoods, since (a) the dishes were created and developed years before Defendant Chau became employed at MR CHOW, and (b) Defendant Chau was never in charge of preparing any dishes at the MR CHOW restaurant at which he worked.   What he did was chopping and expediting.

57.     If Defendant Chau cooked any of the food at the MR CHOW Restaurants, it would have been only sporadically if, for example, one of the chefs became ill or for a staff meal.   During Defendant Chau's 25 years of employment with MR CHOW, he was a food chopper and expediter.

58.     As Plaintiffs discovered over time, not only did the Defendants adopt a false and confusingly similar name to be used in promoting their restaurant, their menu even gave similar names to the signature dishes they copied from the MR CHOW Restaurants.   For example, "Ma

16

Mignon" for a steak dish became "Me Mignon" for the same dish and "With Three" for a dish of shrimp, chicken and liver became "Three Within."  And Defendants not only stole the secret recipe for MR CHOW's satay sauce, they falsely labeled it "Chef Chow's famous sauce," even though Defendant Chau had nothing to do with its creation.  Defendants also attempted to serve diners in a refined atmosphere like the environment created by and associated with the MR CHOW Restaurants.

59.     Subsequently, Plaintiffs learned that Defendants even copied the classic nightly noodle show that Mr. Chow introduced forty-one years ago.  This act was yet another attempt to confuse and deceive the public, clients and potential clients into believing that Defendants' restaurant was, in fact, a MR CHOW Restaurant or that it was affiliated with or associated with the MR CHOW Restaurants.

60.     In order to create further confusion, Defendants attempted and, in a number of cases, succeeded in luring employees of the MR CHOW Restaurants to leave MR CHOW to serve in the same capacity in Defendants' restaurants, and to disclose trade secrets and confidential information of the MR CHOW Restaurants, thus creating the false impression in the minds of patrons of a relationship between the Defendants' restaurants and Plaintiffs' when they saw in Defendants' restaurants familiar faces from the MR CHOW Restaurants.  On information and belief, Defendants were able to induce Plaintiffs' chefs to work for Defendants and to disclose trade secrets and confidential information by offering unreported cash payments and unlawful benefits, as alleged hereinbelow, which lawfully operated restaurants like MR CHOW could not and would not do.

61.     As Plaintiffs discovered much later, to further mislead the public, Defendants purchased internet advertising on sites such as Google, TMZ and Yahoo!, known as sponsored

links, by which key word searching for the MR CHOW Restaurants or the real Mr. Chow would misdirect the client or prospective client to Defendants' falsely advertising website, "Philippechow.com." Defendants also used "metatags" with the name "Chow" imbedded in the Philippechow.com website to cause users searching for the MR CHOW Restaurants to be intercepted and directed to false promotional information about Defendants' restaurants instead. In addition, Defendants have repeatedly hired and paid others to post false derogatory reports about Plaintiffs' Restaurants on the internet.

62.    Defendants, including Defendants Chau, Morfogen, Dumitrescu and the Defendant Chefs, continued to misappropriate trade secrets and other confidential and proprietary information from the MR CHOW Restaurants in order to further Defendants' deception of clients and to unfairly compete through dishonest and unconscionable means. Defendants, at all pertinent times, refrained from disclosing these trade secrets to third parties so that they could continue to profit from them through their continuing illegal conduct.

**Defendant Chau's Ultimate Attempt to Become Mr. Chow and Defendants' Attempt to Deprive Mr. Chow of the Name, Reputation and Rights of the <u>MR CHOW Restaurants in Miami Beach</u>**

63.    Beginning in 2005, Mr. Chow publicized his plans to open a restaurant in Miami Beach. In an attempt to confuse and deceive clients, prospective clients, and the public as to the identity of the real Mr. Chow and the origins of the signature MR CHOW dishes and dining experience, Defendants Chau, Morfogen and Dumitrescu rushed to secure a location and opened a restaurant in Miami Beach ahead of Mr. Chow, doing so through Defendant Philippe Miami LLC. There, they copied the MR CHOW Restaurants in every way as they had done in New York.

64.     Defendants' continuing actions in South Florida to confuse and deceive clients, prospective clients and the public that Defendants' restaurants are affiliated or associated with the MR CHOW Restaurants and to wrongfully associate the name, reputation and experience of Mr. Chow with Defendant "Philippe Chow," culminated in the conversion of Plaintiffs' valuable intellectual property and the deprivation of the rights, benefits and value of that intellectual property to Mr. Chow and the MR CHOW Restaurants in Florida, and resulted in the bringing of this action.

65.     When the Philippe Chow restaurant opened in Miami Beach in 2008, Defendants Morfogen and Dumitrescu continued to promote Defendants' restaurants with false statements in the press, stating, for example, that, when Defendant Chau was employed at MR CHOW, "Philippe…was the architect for this menu over the last 27 years," and that Philippe Chow was the "great chef," "famous for many of the popular dishes at MR CHOW" and "had developed a huge following over his 27 years working under owner (no relation) Michael Chow."   All of these statements were false.

66.     As a result of these false statements, Defendants created the false impression in South Florida that the real Mr. Chow, Michael Chow, was an absentee owner and that the "great chef" and "architect" of the MR CHOW signature dishes and unique menu was Philippe Chow, who was the "Chow" of MR CHOW.  Prospective clients of the real MR CHOW Restaurants will likely be misled into believing that the fictitious "Philippe Chow" is Mr. Chow and the imposter restaurant "Philippe by Philippe Chow" is an authentic MR CHOW Restaurant or associated with the MR CHOW Restaurants or that the real MR CHOW Restaurant is a copycat with respect to all of the signature aspects of the MR CHOW dining experience.

67.     In their promotion, advertising and communications to clients of their Miami Beach restaurant, Defendants directly refer to Defendant Chau as "Mr. Chow."  Defendant Chau even calls himself "Mr. Chow" and, on information and belief, instructs his staff to refer to him in the press as "Mr. Chow."   Upon further information and belief, staff at the Miami Beach restaurant are instructed to inform, and do inform persons who inquire that the restaurant is associated with or is a MR CHOW restaurant and that "Philippe Chow" was the chef behind the MR CHOW Restaurants.

68.     At Defendants' Miami Beach restaurant, the signage over the restaurant falsely identified other locations of Defendants' restaurants, including "L.A.," even though Defendants had no restaurant in Los Angeles at the time.  This spurious reference to "L.A." was another attempt to confuse and deceive the public, clients and prospective clients of MR CHOW, that Defendants' Miami Beach restaurant is associated with the MR CHOW Restaurants, including the famous MR CHOW restaurant in Beverly Hills which has been in operation for thirty-five years.

69.     Defendants' attempt to confuse the public has been successful.  Press accounts of Defendants' Miami opening included statements like the following which clearly demonstrate the confusion created between Defendants' Miami restaurant and the MR CHOW Restaurants: "Do you know that famed New York restaurant MR CHOW?  Well its chef, Philippe Chow is bringing his flare to South Beach."  In the same story a patron of Defendants' Miami restaurant explained that this was not the only Mr. Chow Restaurant she patronized, that "in L.A., I used to go to MR CHOW weekly."   Since Defendants did not have an L.A. location at the time, she could have only been referring to the Beverly Hills MR CHOW restaurant, mistakenly believing that it was affiliated with Defendants' restaurant.

20

70.     Defendant Chau, under the guise of the fictitious name "Philippe Chow," has falsely stated on the on-line "Twitter" service that there are "Philippe Chow" locations in Beverly Hills, as well as New York and Miami.  This is further evidence of Defendants' ongoing and escalating wrongful conduct.

71.     Defendants' conduct alleged hereinabove, including their actions to deceive and confuse the public and consumers, and to misappropriate as their own the MR CHOW name, reputation, signature dishes, entertainment, and dining experience before the MR. CHOW Restaurant opening in Miami Beach, constitutes an unlawful conversion to Defendants of the rights and benefits of ownership of the MR. CHOW brand and trademark, depriving Plaintiffs of those valuable rights and benefits, and will create actual confusion among prospective patrons in the relevant market.

**Unlawful Procedures And Tortious Interference**

72.     Compounding their other acts of unfair competition, Defendants have surreptitiously engaged in providing illegal compensation and benefits to chefs, including unreported cash payments, thereby reducing the operating costs of their restaurants, a form of cost reduction not possible for lawfully operated restaurants such as "MR CHOW."

73.     Defendants have engaged in a concerted and continuing campaign of soliciting Plaintiffs' employees to terminate their employment relationship with Plaintiffs and to become employed in Defendants' restaurants, and, once there, to disclose Plaintiffs' trade secrets and confidential information for use in Defendants' restaurants.   On information and belief, Defendants have solicited and induced MR CHOW's chefs to work for Defendants and to disclose trade secrets and confidential information by wrongful and illegal means, such as offering such chefs illegal forms of compensation and benefits, as alleged hereinabove, which

cannot be offered in lawfully operated restaurants such as "MR CHOW."  Induced by the other Defendants Morfogen and Dumitrescu to so act, Defendant Chau did disclose and use such trade secrets and confidential information for his own benefit and for the benefit of Defendants, and, so induced, the Defendant Chefs also disclosed and used trade secrets and confidential information for the benefit of the other Defendants.

### The MR CHOW Restaurants' Right to Protect Their Marks, Trade Secrets and Other Proprietary Information and Intellectual Property

74.    The MR CHOW Restaurants have continuously used and promoted the federally registered MR CHOW marks, U.S. Registration Numbers 1,160,402, 1,247,990, 2,973,442, and 3,558,956 (the "MR CHOW Registered Marks").

75.    The MR CHOW Restaurants have also continuously used and promoted other marks and names not federally registered, such as the names of the signature dishes, but which have been legitimately used by the MR CHOW Restaurants since prior to the time Defendant began use of the fictitious "Philippe Chow," the mark "Philippe by Philippe Chow" and the MR CHOW signature dishes and the MR CHOW noodle show.

76.    Mr. Chow and the MR CHOW Restaurants engaged in reasonable steps to protect the trade secrets used in operating the MR CHOW Restaurants though policies, procedures, training and other measures designed and intended to protect them under the circumstances.  In fact, Mr Chow successfully prosecuted a case in London in 1986, not dissimilar to the instant case, where an individual whose actual last name was "CHOW" attempted to pass his restaurants off as being associated with the MR CHOW London Restaurant.  The case resulted in the defendant being barred from ever using his own last name of "CHOW" in connection with any restaurant featuring Chinese cuisine.

**Corporate Espionage**

77.     Before and following the filing of the Initial Complaint in this action, Defendants,
directly or through other persons, some of whose identities are currently unknown, have on
information and belief engaged in corporate espionage directed at the MR CHOW Restaurants,
including, among other activities, the actions of an agent or apparent agent to engage in
undercover surveillance at the MR CHOW Restaurant in Miami Beach.

**Defendants Extend Their Wrongful Campaign To California**

78.     Defendants Chau, Morfogen, Dumitrescu and Hailey, through Chau West Coast,
have opened a Philippe Chow restaurant in West Hollywood, California, an area adjoining
Beverly Hills.   Defendants' restaurants have previously been unknown in California.
Defendants' West Hollywood restaurant will imitate the Mr Chow restaurants in every way, and
defendants will try to pass off their new restaurant as associated with plaintiffs' famous and
successful "Mr Chow" restaurant a few minutes away in Beverly Hills.   Defendants are
continuing and will continue, in California, through Chau West Coast, every aspect and element
of their unfair, wrongful and fraudulent conduct alleged hereinabove.  In California, Chau West
Coast, Chau, Morfogen, Dumitrescu and Hailey will engage in the same acts of unfair
competition, false advertising and false and misleading uses of the tradename "Chow" and Mr
Chow" and unfair and unlawful acts committed by Defendants in New York and Florida, as
alleged hereinabove, such as hiring and paying others to post derogatory reports about Plaintiffs'
restaurants on the internet.

79.     Defendants have already announced the new California restaurant, owned and
operated by Chau West Coast, by prominently stressing the name "PHILIPPE CHOW."  As
alleged hereinabove, Chow is not even Defendant Chau's true last name and is used solely to

create the false impression that Defendant Chau is the "Chow" of the well known MR CHOW Restaurants and that Defendants' West Hollywood restaurant is or is associated with the MR CHOW Restaurants.  As a part of their pattern of unfair competition, defendants have, by the unlawful means alleged hereinabove, solicited chefs and other key employees of the MR CHOW Restaurant to leave plaintiffs' employ to work in defendants' copycat restaurant in West Hollywood and there to disclose trade secrets and confidential information and to violate their agreements with Plaintiffs and, on information and belief, Defendants have done so by offering chefs unlawful forms of compensation and benefits, as alleged hereinabove.

80.    Defendants' conduct, as alleged hereinabove, has caused and will continue to cause significant confusion among the public in the relevant market in California.  In addition, it will result in the false public perception in California that Chau is "Mr. Chow" of the Mr Chow restaurant and that Defendants' imitation in West Hollywood is a Mr Chow restaurant, or at least is associated with "the famed Mr Chow restaurants."  The public in California will also believe the many false and fraudulent claims in defendants' advertising as alleged hereinabove.

## Harassment and Threats

81.    Over the years since the opening of Defendants' first restaurant, and particularly escalating since the filing of the Florida action in 2009, Plaintiffs' employees have received harassing and even threatening phone calls, including large group reservations for no-shows, bogus calls purporting to place vast and expensive takeout orders which are never picked up, and calls threatening Plaintiffs' employees with violence.  In addition, over the years since Defendants' restaurants have been in business, "MR CHOW" restaurants have been subjected to suspicious acts of property damage.  Plaintiffs are informed and believe and, on that ground, allege that such harassment, threats and such property damage were the acts of agents of

Defendants other than Defendant Chefs, committed at said Defendants' instance and direction.

82.     Plaintiffs' bring this action to protect their rights, to enjoin the continued dissipation and devaluation of the MR CHOW brand, the continued wrongful use and benefit of the property of Plaintiffs, and the unfair competition and unlawful deception and confusion of the public and the prospective clients of the MR CHOW Restaurants, and to obtain from Defendants the damages incurred.

### V.  CONDITIONS PRECEDENT; ATTORNEY'S FEES

83.     All conditions precedent to the institution of this action have been waived, performed or have occurred.

84.     Plaintiffs have retained the undersigned counsel to represent them in this action and are obligated to pay them a reasonable fee for their services.

### VI. CAUSES OF ACTION

### Count I
### Federal Trademark Infringement

85.     Plaintiffs incorporate paragraphs 1 through 84 of this Second Amended Complaint as if fully set forth herein.

86.     This is an action for infringement of federally registered trademarks under 15 U.S.C. § 1114(1).

87.     MR CHOW ENTERPRISES is the valid owner of the MR CHOW Registered Marks.  The other MR CHOW Restaurants are related companies whose use of the MR CHOW Registered Marks inures to the benefit of MR CHOW ENTERPRISES.

88.     Prior to 2005, no third party used the MR CHOW Registered Marks or any confusingly similar marks.

89.     The MR CHOW Restaurants used the MR CHOW Registered Marks in restaurant

menus, displays, and through other methods of advertising and promotion, including print and on-line media.

90. MR CHOW qualifies as a strong trademark since it is the subject of an incontestable registration and since it represents a term used to identify and distinguish the services of the MR CHOW Restaurants from the services of others.

91. The MR CHOW Registered Marks were distinctive and famous prior to Defendants' adoption and use of: (a) the false identity "Mr. Chow," (b) the use of MR CHOW in key word searching and sponsored link advertising, and (c) all other unlawful uses of the MR CHOW name and mark, including confusingly similar variations thereof, to mislead consumers into believing that Defendants' restaurant services are sponsored by, affiliated with or associated with Mr. Chow and the MR CHOW Restaurants.

92. Defendants' actions have caused a likelihood of confusion and actual confusion in the marketplace due to the similarity of the marks and similarity of the services associated with the marks represent.

93. The MR CHOW Restaurants and Defendants compete for the same clients in the same relevant market.

94. Defendants adopted and use the MR CHOW name and marks, or confusingly similar variations thereof, willfully and with a bad faith intent to profit from the MR CHOW Registered Marks, and to damage the goodwill and reputation of Mr. Chow.

95. Defendants were well aware of the distinctiveness, growth and potential of the MR CHOW brand in infringing upon the distinctive and famous MR CHOW marks.

96. Defendants' infringement has been willful and deliberate, and designed specifically to trade upon the goodwill associated with the MR CHOW Registered Marks.

26

97.     Defendants' infringement constitutes a violation of 15 U.S.C. § 1114 and will continue unless enjoined by this Court.

98.     Defendants' acts of infringement have caused injury to Plaintiffs and as a direct and proximate result of Defendants' acts of infringement, Mr. Chow and the MR CHOW Restaurants have incurred substantial and material damages in an amount to be determined at trial.

99.     Mr. Chow and the MR CHOW Restaurants will continue to suffer irreparable injury unless Defendants are permanently enjoined by this Court.

WHEREFORE, Plaintiffs demand an accounting of profits Defendants wrongfully obtained from their trademark infringement, damages, treble damages, costs and attorneys' fees under 15 U.S.C. § 1117, unjust enrichment damages, permanent injunctive relief and such other relief as the Court may deem just and proper.

**Count II**
**Federal Trademark Infringement Based on Reverse Confusion and Reverse Palming Off**
**under 15 U.S.C. § 1125(a)**

100.    Plaintiffs incorporate paragraphs 1 through 84 of this Second Amended Complaint as if fully set forth herein.

101.    Defendants are the junior users of the MR CHOW Registered Marks (or their confusingly similar variations thereof) and have adopted similar or identical marks to profit from the reputation and goodwill of the MR CHOW Restaurants, the senior users of the MR CHOW marks.

102.    Consumers are likely to mistakenly associate Mr. Chow and the MR CHOW Restaurants with Defendant Chau and "Philippe by Philippe Chow" and are likely to mistakenly believe that the products and services of MR CHOW Restaurants are actually products and

27

services of Defendants or that Defendants' restaurants are associated with or sponsored by Plaintiffs.

103.    Defendants have saturated the South Florida market with false and deceptive advertising and promotions using confusingly similar marks to the MR CHOW Registered Marks.  Such advertising and promotions caused the MR CHOW Restaurants to lose the value of the MR CHOW brand, product identity and corporate identity, and to lose control over the goodwill and reputation associated with the brand, and the ability to enter into new markets.

104.    Defendants' false and misleading representations are likely to cause consumers to view the MR CHOW Restaurants as infringers of Defendants' marks and style of doing business, including the MR CHOW signature dishes, the noodle-pulling demonstration, and the culturally-significant Chinese cuisine presented in a refined designer restaurant environment.

105.    As a result of Defendants' actions, Plaintiffs have been damaged and are entitled to monetary damages, including Defendants' profits, costs and attorney's fees.

106.    Plaintiffs will continue to suffer irreparable injury unless Defendants are permanently enjoined by this Court.

WHEREFORE, Plaintiffs demand an accounting of profits Defendants wrongfully obtained from their trademark infringement, damages, treble damages, costs and attorneys' fees under 15 U.S.C. § 1117, unjust enrichment damages, permanent injunctive relief and such other relief as the Court may deem just and proper.

### Count III
### False Association/False Designation of Origin and Federal Unfair Competition
### under 15 U.S.C. § 1125(a)

107.    Plaintiffs incorporate paragraphs 1 through 84 of this Second Amended Complaint as if fully set forth herein.

28

108.    Defendants' use of the names Philippe Chow and "Mr. Chow," as well as other schemes, devices and false advertising, constitute a false designation of origin and/or a false description or representation, which is likely to deceive and mislead consumers, and has actually deceived and misled consumers, into believing that the Defendants' services originate with Plaintiffs, or are otherwise affiliated with, licensed, sanctioned or endorsed by Plaintiffs.

109.    Defendants' willful, intentional, and unauthorized acts of copying Plaintiffs' unique products and services, Defendants' naming of their products and services similarly to those of the MR CHOW Restaurants, and Defendants falsely describing the origins of their products and services, unfairly restrains Mr. Chow and the MR CHOW Restaurants from competing and is likely to deceive clients and prospective clients into mistakenly believing that Defendant Chau and the restaurants "Philippe by Philippe Chow" do not have any competing brands or products in the market.

110.    Defendants' unlawful actions constitute violations of 15 U.S.C. § 1125(a).

111.    Plaintiffs have no control over the nature and quality of the services offered by Defendants and any failure, neglect, or default by Defendants in providing their services will and does reflect negatively on Plaintiffs as the believed source or origin thereof, hampering efforts by Plaintiffs to continue to protect their reputation for high quality services, resulting in either a loss of sales, a diminution in Plaintiffs' reputation, and the need for considerable expenditures to promote their services and engage in corrective advertising, all to the irreparable harm of Plaintiffs.

112.    As a direct and proximate result of Defendants' false association, false designation and unfair competition, Mr. Chow and the MR CHOW Restaurants have incurred substantial and material damages in an amount to be determined at trial.

WHEREFORE, Plaintiffs demand an accounting of profits Defendants wrongfully obtained from their false association/false designation of origin, damages, treble damages, costs and attorneys' fees under 15 U.S.C. § 1117, unjust enrichment damages, permanent injunctive relief,  and such other relief as the Court may deem just and proper.

**Count IV**
**False Advertising under 15 U.S.C. §1125(a)**

113.    Plaintiffs incorporate paragraphs 1 through 84 of this Second Amended Complaint as if fully set forth herein.

114.    Defendants are direct competitors to the MR CHOW Restaurants.

115.    Defendants' advertisements and promotions, and their factual representations on-line, in print media, and in person, are false and misleading.

116.    The advertisements and promotions have deceived, or have the capacity to deceive, consumers.

117.    The deception likely had or likely may have a material effect on purchasing decisions.  The MR CHOW marks have been or will be weakened as a result of clients, prospective clients and the public seeing the MR CHOW Restaurants and the MR CHOW marks as copies of Defendants rather than as the unique, predominant and senior mark, brand and product.

118.    Defendants' misrepresentations and false advertising affects interstate commerce.

119.    Plaintiffs have been and will continue to be injured as a result of Defendants' false advertising.

120.    Defendants used and continue to use in commerce false or misleading descriptions of fact, or false and misleading representations of fact, which in commercial

advertising or promotion misrepresent the nature, characteristics, qualities, or origin of Defendants' services.

121.    Defendants' false advertising has caused the MR CHOW Restaurants to lose clients and prospective clients, and to incur increased promotional costs, as a result of Defendants' false and misleading representations.

122.    Mr. Chow and the MR CHOW Restaurants will continue to suffer irreparable injury unless Defendants are permanently enjoined by this Court.

WHEREFORE, Plaintiffs demand an accounting of profits Defendants wrongfully obtained from their false advertising, damages, treble damages, costs and attorneys' fees under 15 U.S.C. § 1117, unjust enrichment damages, permanent injunctive relief, and such other relief as the Court may deem just and proper.

**Count V**
**Common Law Tradename Infringement**

123.    Plaintiffs incorporate paragraphs 1 through 84 of this Second Amended Complaint as if fully set forth herein.

124.    Plaintiffs own and enjoy common law rights in connection with the MR CHOW tradename, which rights are superior to any rights which Defendants may claim therein.

125.    Defendants' use of the names Philippe Chow, Mr. Chow and other confusingly similar variations thereof, and other tradenames used by the MR CHOW Restaurants to promote their restaurant services is likely to, and has actually caused confusion as to source or origin, and consumers are likely to associate Defendants' services with, and as originating from, Plaintiffs.

126.    Defendants' infringement has damaged Plaintiffs and will continue unless enjoined by this Court.

127.    Plaintiffs have no plain, speedy or adequate remedy at law because as long as Defendants continue to use a confusingly similar name, mark and confusing advertising and promotion, the public will continue to be confused and Plaintiffs will continue to sustain damage and loss of goodwill.

128.    Plaintiffs will continue to suffer irreparable injury unless Defendants are permanently enjoined by this Court.

129.    As a direct and proximate result of Defendants' infringement, Plaintiffs have incurred substantial and material damages in an amount to be determined at trial.

130.    Defendants' conduct was wanton, willful, and malicious, so as to justify the imposition of punitive damages pursuant to § 768.72, Fla. Stat.

WHEREFORE, Plaintiffs demand judgment against Defendants for damages, unjust enrichment damages, punitive damages, permanent injunctive relief, costs and such other relief as the Court may deem just and proper.

**Count VI**
**Common Law Unfair Competition**

131.    Plaintiffs incorporate paragraphs 1 through 84 of this Second Amended Complaint as if fully set forth herein.

132.    Defendants compete in the restaurant business with Mr. Chow and the MR CHOW Restaurants.

133.    By committing the acts alleged herein, including without limitation the use of similar names to compete in a similar relevant market, and other deceptive, fraudulent and unlawful conduct, Defendants are guilty of unfair competition in violation of the common law of Florida.

134.     Defendants' unfair competition has been willfully performed with the actual and constructive knowledge of Plaintiffs' prior rights and prior use and registration of the federally registered and other MR CHOW marks.

135.     Defendants' actions have caused or are likely to cause consumer confusion.

136.     Mr. Chow and the MR CHOW Restaurants will continue to suffer irreparable injury unless Defendants are permanently enjoined by this Court.

137.     As a direct and proximate result of Defendants' unfair competition, Mr. Chow has incurred substantial and material damages in an amount to be determined at trial.

138.     Defendants' conduct was wanton, willful, and malicious, so as to justify the imposition of punitive damages pursuant to § 768.72, Fla. Stat.

WHEREFORE, Plaintiffs demand judgment against Defendants for actual damages, unjust enrichment damages, punitive damages, permanent injunctive relief, costs and such other relief as the Court may deem just and proper.

### Count VII
### Misappropriation of Trade Secrets under New York Law

139.     Plaintiffs incorporate paragraphs 1 through 84 of this Second Amended Complaint as if fully set forth herein.

140.     The business plans, business strategies, techniques, operational and management processes and procedures, and other confidential business information of Mr. Chow and the MR CHOW Restaurants constitute trade secrets protected by the common law of New York.

141.     These trade secrets give Plaintiffs an advantage over their competitors.

142.     Mr. Chow and the MR CHOW Restaurants have acted at all times to reasonably protect from disclosure these trade secrets, through policies, procedures, training and other appropriate means.

33

143.    By their actions, Defendants used improper means to acquire the trade secrets of Mr. Chow and the MR CHOW Restaurants in violation of New York law.

144.    Defendants have kept Plaintiffs' trade secrets confidential from third parties and yet make use of those trade secrets to their commercial advantage.

145.    Defendants' misappropriation of trade secrets is ongoing.

146.    Mr. Chow and the MR CHOW Restaurants will continue to suffer irreparable injury unless Defendants are permanently enjoined by this Court.

147.    As a direct and proximate result of Defendants' misappropriation of trade secrets, Mr. Chow and the MR CHOW Restaurants have incurred substantial and material damages in an amount to be determined at trial.

148.    Defendants' conduct was wanton, willful, and malicious, so as to justify the imposition of punitive damages pursuant to § 768.72, Fla. Stat.

149.    Because Defendants' misappropriation of trade secrets occurred initially through Defendants' wrongful actions in New York, New York trade secret law, and its attendant statute of limitations applies to this count.

WHEREFORE, Plaintiffs demand judgment against Defendants for damages, punitive damages, permanent injunctive relief, costs and such other relief as the Court may deem just and proper.

### Count VIII
### Violation of Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.*

150.    Plaintiffs incorporate paragraphs 1 through 84 of this Second Amended Complaint as if fully set forth herein.

151.    Defendants' actions as set forth above offend established public policy, are

unscrupulous or substantially injurious to consumers, and/or are in violation of statutes proscribing unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices, and Defendants' actions therefore constitute deceptive acts or unfair practices.

152.    Defendants have engaged in such deceptive and unfair trade practices in violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 – 501.213.

153.    Mr. Chow and the MR CHOW Restaurants have been aggrieved by Defendants unfair and deceptive acts.

154.    As a direct and proximate result of Defendants' deceptive and unfair trade practices, Mr. Chow and the MR CHOW Restaurants also have incurred substantial and material damages in an amount to be determined at trial.

155.    Mr. Chow and the MR CHOW Restaurants will continue to suffer irreparable injury unless Defendants are permanently enjoined by this Court.

WHEREFORE, Plaintiffs demand judgment against Defendants for damages, permanent injunctive relief, costs, attorneys' fees and such other relief as the Court may deem just and proper.

**Count IX**
**Conversion**

156.    Plaintiffs incorporate paragraphs 1 through 84 of this Second Amended Complaint as if fully set forth herein.

157.    Defendants have wrongfully and unlawfully asserted dominion over the intellectual property of Mr. Chow and the MR CHOW Restaurants, and other valuable confidential and proprietary information of Mr. Chow and the MR CHOW Restaurants.

158.  Defendants' acts of dominion are inconsistent with Mr. Chow and the MR CHOW Restaurants' ownership of the intellectual property of Mr. Chow, the MR CHOW marks and the MR CHOW Restaurants, and the other valuable confidential and proprietary information of Mr. Chow and the MR CHOW Restaurants.

159.  Defendants have obtained that intellectual property, proprietary information and other property of Mr. Chow and the MR CHOW Restaurants by unauthorized acts and conduct.

160.  Defendants' conduct was wanton, willful, and malicious, so as to justify the imposition of punitive damages pursuant to § 768.72, Fla. Stat.

161.  As a result of Defendants' wrongful conversion of the property of Mr. Chow and/or the MR CHOW Restaurants, Plaintiffs are entitled to damages in an amount to be determined at trial.

162.  Plaintiffs have no adequate remedy at law for the harm that would be inflicted by Defendants without judicial intervention, and Plaintiffs are therefore entitled to permanent injunctive relief.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory damages, punitive damages, permanent injunctive relief, costs and such other relief as the Court may deem just and proper.

### Count X
### Violation Of California Business And Professions Code

163.  Plaintiffs incorporate by reference paragraphs 1 through 84 hereinabove as though fully set forth herein.

164.  The acts of defendants in California alleged hereinabove will and do already constitute an unfair and fraudulent business practice and thus are unfair competition as defined in California Business and Professions Code Sections 17,200 et seq.

165.    Unless enjoined by this Court, defendants will engage in the wrongful conduct alleged hereinabove in California, as a result of which plaintiffs will suffer severe and irreparable harm for which they have no adequate remedy at law, in that, while some damages caused by that conduct are ascertainable, the full amount of the damages caused and that will be caused by defendants' conduct can never be fully ascertained.

166.    As a direct and proximate result of defendants misconduct so alleged, defendants will be unjustly enriched, and plaintiffs are entitled to restitution in a sum as yet unknown but which plaintiffs are informed and believe and, on that ground, allege will, to the extent ascertainable, exceed the sum of $10 million.

167.    Defendants' wrongful acts are and will be committed fraudulently, as alleged hereinabove, as well as maliciously and oppressively, deliberately intending such conduct to harm plaintiffs.  As a result, plaintiffs are entitled to punitive damages and their attorneys' fees.

WHEREFORE, Plaintiffs demand judgment against Defendants for restitution, punitive damages, permanent injunctive relief, costs of suit, prejudgment interest, attorneys' fees and such other relief as the Court may deem just and proper.

**Count XI**
**Tortious Interference**

168.    Plaintiffs incorporate by reference paragraphs 1 through 84 hereinabove as though fully set forth herein.

169.    Defendants' acts alleged hereinabove constitute tortious interference with the advantageous relationships between plaintiffs and their employees, carried out by means of unlawful and illegal conduct, as alleged hereinabove.

170.    As a direct and proximate result of defendants' misconduct, plaintiffs have suffered and will suffer substantial monetary damages in a sum as yet unknown.

171.   Defendants' wrongful acts were committed unlawfully, as alleged hereinabove, as well as maliciously and oppressively, deliberately intending such conduct to harm plaintiffs.  As a result, plaintiffs are entitled to punitive damages.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory damages, punitive damages, permanent injunctive relief, costs of suit and such other relief as the Court may deem just and proper.

### Count XII
### Breach Of Confidentiality Agreement

172.   Plaintiffs incorporate by reference paragraphs 1 through 84 hereinabove as though fully set forth herein.

173.   On information and belief, the Defendant Chefs disclosed and used for the benefit of the other Defendants the recipes and procedures that are trade secrets of the MR CHOW Restaurants as well as other confidential information concerning the MR CHOW Restaurants, all in violation of the Confidentiality Agreements alleged hereinabove.

174.   As a direct and proximate result of the foregoing acts of breach by the Defendant chefs, plaintiffs have incurred substantial damages in an amount to be determined at trial.

175.   Mr. Chow and the MR CHOW Restaurants will continue to suffer irreparable injury unless Defendants are permanently enjoined by this Court.

WHEREFORE, Plaintiffs demand judgment against Defendants for damages, permanent injunctive relief, costs, attorneys' fees and such other relief as the Court may deem just and proper.

## Count XIII
## Inducing Breach Of Contract

176.     Plaintiffs incorporate by reference paragraphs 1 through 84 and 172 hereinabove as though fully set forth herein.

177.     On information and belief Defendants other than Defendant Chefs were aware of the Confidentiality Agreements signed by Defendant Chefs, as alleged hereinabove, and knowing of such Agreements induced the Defendant Chefs' breach thereof by causing the Defendant Chefs to disclose and use for the benefit of the other Defendants trade secrets and confidential information of the MR CHOW Restaurants in violation of such Agreements.

178.     As a direct and proximate result of said wrongful conduct of the Defendants other than the Defendant Chefs, Plaintiffs have incurred substantial damages in an amount to be determined at trial.

179.     Defendants' wrongful acts were committed unlawfully, as alleged hereinabove, as well as maliciously and oppressively, deliberately intending such conduct to harm plaintiffs.  As a result, plaintiffs are entitled to punitive damages.

WHEREFORE, Plaintiffs demand judgment against Defendants for damages, permanent injunctive relief, costs, attorneys' fees and such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial as to all issues so triable.

Dated:  December 3, 2009

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS, LLP
JOAN CANNY, ESQ.
Fla. Bar No. 0492531
jcanny@morganlewis.com
200 South Biscayne Boulevard
5300 Wachovia Financial Center
Miami, FL  33131-2339
Telephone:     (305) 415-3422
Facsimile:      (305) 415-3001
By: *s/Joan Canny*
*Attorneys for Plaintiffs*


GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP
BERTRAM FIELDS, ESQ.
bfields@greenbergglusker.com
1900 Avenue of the Stars, 21st Floor
Los Angeles, CA  90067-4590
Telephone:     (310) 553-3610
Facsimile:      (310) 553-0687


PERETZ CHESAL & HERRMANN, P.L.
MICHAEL B. CHESAL, ESQ.
Fla. Bar No. 775398
mchesal@pc-iplaw.com
201 South Biscayne Boulevard
Suite 1750
Miami, FL  33131
Telephone:     (305) 341-3000
Facsimile:      (305) 371-6807

**CERTIFICATE OF ELECTRONIC FILING AND SERVICE**

I HEREBY CERTIFY that on this  3rd  day of December, 2009, I filed a true and correct copy of the foregoing document with the Clerk of the Court using the CM/ECF system.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

*s/Joan Canny*
Joan Canny

41

## SERVICE LIST

**Michael Chow, et. al. v. Chak Yam Chau, et. al.**

**Case No.: CASE NO. 09-21893-CIV-HOEVELER/GARBER**
**United States District Court, Southern District of Florida**

Lyle E. Shapiro, Esq.
lshapiro@richmangreer.com
Mark A. Romance, Esq.
mromance@richmangreer.com
Ethan J. Wall, Esq.
ewall@richmangreer.com
RICHMAN GREER P.A.
Miami Center – Suite 1000
201 South Biscayne Boulevard
Miami, Florida  33131
Telephone:    (305) 373-4000
Facsimile:    (305) 373-4099

*Attorneys for Defendants Chak Yam Chau,*
*Stratis Morfogen, PHILIPPE MIAMI LLC,*
*PHILIPPE NORTH AMERICA RESTAURANTS,*
*LLC, and PHILIPPE RESTAURANT CORP.*
**(VIA CM/ECF)**

Greg M. Herskowitz, Esq.
greg@pinecresttitle.com
GREG HERSKOWITZ, P.A.
9130 South Dadeland Boulevard
PH1A
Miami, Florida  33156
Telephone:    (305) 423-1258
Facsimile:    (305) 670-3884

*Attorneys for Defendants Chak Yam Chau,*
*Stratis Morfogen, PHILIPPE MIAMI LLC,*
*PHILIPPE NORTH AMERICA RESTAURANTS,*
*LLC, and PHILIPPE RESTAURANT CORP.*
**(VIA CM/ECF)**