UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-21893-CIV-HOEVELER/GARBER

MICHAEL CHOW known as "MR. CHOW" *et al.*,

     Plaintiffs,

v.

CHAK YAM CHAU *et al.*,

     Defendants.
_____

PHILIPPE CHOW *et al.*,

     Counterplaintiffs,

v.

MICHAEL CHOW known as "MR. CHOW" *et al.*,

     Counterdefendants.
_____/

**PLAINTIFFS' MOTION FOR SANCTIONS PURSUANT TO RULE 37
FOR DEFENDANTS' DELIBERATE DISOBEDIENCE OF THE COURT'S
<u>DISCOVERY ORDER WITH INCORPORATED MEMORANDUM IN SUPPORT</u>**

Pursuant to Fed. R. Civ. P. 37(b), Plaintiffs move the Court for sanctions for Defendants'

deliberate disobedience of the discovery order of the Court, ECF No. 191.

<u>**Introduction**</u>

Plaintiffs have brought this action against Defendants for unfair and deceptive trade

practices, misappropriation of trade secrets, unfair competition, trademark infringement, false

advertising, and other violations of the Lanham Act and statutory and common law.  Plaintiffs

allege that Defendants, collectively engaged in operating restaurants under the name "Philippe

Chow" and "Philippe by Philippe Chow", have acted to unlawfully mislead, confuse and deceive

the public and the clients of the Mr Chow restaurants in order to wrongfully misappropriate and convert to themselves, and profit from, the name, reputation and rights of the Mr Chow restaurants and the real Mr. Chow, as well as the unique, distinctive and special elements that have made the Mr Chow restaurants a success.  *See* ECF No. 134 (Third Am. Compl.).

Plaintiffs previously filed nine motions to compel discovery relevant to their claims in this action.  *See* ECF Nos 95, 97, 105, 106, 109, 110, 111, 112, 113. The Court granted these motions in all pertinent respects.  *See* ECF No. 191.   Defendants have knowingly and deliberately refused to comply with their production obligations as to certain of the critical discovery which Plaintiffs have sought and the Court has ordered produced.

By way of example, Plaintiffs have sought Defendants' complete payroll and compensation records – materials directly relevant to Plaintiffs' allegations of tortious interference and unfair competition predicated upon Defendants' compensation of employees through illegal cash payments.  Although Plaintiffs sought and the Court compelled production of these records dating back to the inception of Defendants' business in mid-2005, and there can be no doubt that Defendants in fact have payroll records for the first three years of their operations, with isolated exceptions Defendants have produced payroll records only from late 2008 and after – *i.e.*, commencing not at the outset of their business but only approximately six months prior to the bringing of this action. This disregard of the Court's order, as to three years of records for critical discovery that was compelled to be produced, evinces a clear-eyed and deliberate disobedience of the Court's discovery order that merits the imposition of sanctions.

In sum, because (1) Defendants have deliberately and intentionally failed to meet their production obligations as to critical discovery that is essential to certain claims and defenses, (2) Plaintiffs have made specific requests directed at that withheld evidence, (3) Plaintiffs have no

effective alternative means of securing the information, and (4) Defendants can offer no reason for their failure to produce the materials nor can they assert that the evidence sought does not exist, Plaintiffs hereby request sanctions which are both "just" and "commensurate" with Defendants' non-compliance consistent with Rule 37.  Specifically, in light of Defendants' non-production and/or production deficiencies, Plaintiffs seek the appropriate sanctions pursuant to Fed. R. Civ. P. 37(b)(2) that the Court deem established certain facts, and Defendants be precluded from submitting evidence or argument on related matters and from pursuing their related affirmative defenses, detailed more fully below.

### Pertinent Procedural History regarding Plaintiffs' Discovery Efforts

Plaintiffs' discovery requests concerning the matters which are the subject of this Motion were served upon Defendants in early December, 2009.  Following extended conferences regarding Defendants' responses to those requests, in March of 2010 Plaintiffs filed nine motions to compel addressed to Defendants' non-production and/or production deficiencies.  *See* ECF Nos. 95, 97, 105, 106, 109, 110, 111, 112, 113.

After certain depositions in April of 2010 and in advance of the hearing on Plaintiffs' motions to compel, Plaintiffs filed supplemental evidence and authorities in support of their pending motions relating to events at those April depositions.  *See* ECF No. 185 (redacted) and ECF Nos. 186 & 187 (docket references to corresponding unredacted filings under seal).  In particular Plaintiffs notified the Court that in their brief depositions in April of 2010, Defendants David Lee and Ping Ching Kwok, Defendants' CFO Michael Reda, and Defendants' employee Jason Lee collectively asserted the 5th Amendment privilege against self-incrimination 276

times,[1] and in light of this pervasive assertion of the Fifth Amendment in deposition, full and complete responses to Plaintiffs' written discovery were particularly necessary so that Plaintiffs could avoid undue prejudice and obtain by alternative means critical discovery withheld at these depositions by assertion of the 5th Amendment privilege.  *See* ECF Nos. 185-187.

The Court on June 11, 2010 conducted a hearing on Plaintiffs' nine motions to compel, and thereafter entered an order compelling production of the discovery at issue here.  The Court further ordered that the discovery compelled was to be produced within 10 days following the Court's order.  *See* ECF No. 191.  When the 10-day period had passed, Plaintiffs' counsel contacted Defendants' counsel about the status of the production, and was advised that Defendants sought a short extension as to paper production[2]; in addition, Defendants would require an extension of several weeks to produce the ESI ordered, as Defendants had retained a consultant and had substantial work yet to be performed to collect electronic evidence, search for potentially responsive materials, and review and produce the ESI deemed responsive and non-privileged.  In light of Defendants' counsel's good faith estimates as to the time needed to produce the ESI ordered, and Defendants' counsel's representations that the Defendants were working diligently to produce the materials as expeditiously as possible, Plaintiffs' counsel agreed in late June, and yet again in mid-August, not to go back to the Court for relief and sanctions due to Defendants' delay.

---

[1]  Defendant Chef Ping Ching Kwok was deposed for three and a half hours (prolonged by the use of an interpreter) and asserted the 5th Amendment and declined to answer 82 times; Defendants' CFO Michael Reda, was deposed for three hours and asserted the Fifth Amendment and declined to answer 76 times; Defendant and principal David Lee declined to answer on 41 occasions and his son Jason Lee, an employee with payroll-related duties, was disposed for two and a half hours and declined to answer 77 times, based upon the 5th Amendment privilege.

[2]  Defendants' "paper" production included materials produced in hard copy or paper format as well as materials produced in pdf format on CD but which apparently had been kept in hard copy or paper form.

Yet the initial estimates by Defendants' counsel for the anticipated complete production of responsive ESI and all remaining paper production -- estimates which Plaintiffs believe to have been made in good faith -- proved to be more optimistic than practicable. Thus the anticipated date for ESI production and for final production of all responsive paper materials dragged on from early July to late July, and then to August, until finally correspondence was received from Defendants' counsel on September 2, 2010 -- nearly three months after the production was ordered by the Court -- enclosing two CDs and stating "[t]his completes my clients' ESI and paper production."

In the interim, on June 28, 2010, Defendants served supplemental responses to certain of the requests for production that were the subject of the Court's order to produce, *see* Ex. A; however no supplemental responses have ever been provided for many of Plaintiffs' requests, and notably have never been provided for the requests that were the subject of Plaintiffs' motion to compel electronic discovery, ECF No. 97, to which Defendants' ESI production ostensibly was responsive at least in substantial part. Because Defendants' only supplementation of its written discovery responses occurred <u>prior</u> to any ESI production and prior to production of approximately 4000 additional pages of paper production, Defendants' limited supplemental responses do not identify which of the ESI items or additional pages of paper subsequently produced are responsive to which of Plaintiffs' written discovery to which supplemental responses were ordered.

In consequence, following Defendants' declaration that their production was "complete", Plaintiffs undertook a good faith search of Defendants' full production to attempt to find all of the responsive materials that had been ordered by the Court and which Plaintiffs implicitly had been assured by Defendants to be contained in their "complete" production. This search was

time-consuming, expensive and burdensome as Defendants' production was sizable, consisting of an estimated 30,000 items of ESI and over 13,000 bates-numbered pages of paper production. Unfortunately, as a result of this review, Plaintiffs ascertained that Defendants not only have failed to produce all of the relevant materials they were ordered to produce, but with respect to certain critical requests for production Defendants provided no responsive materials whatsoever. Having already obtained an order compelling production from the Court, now faced with the apparently deliberate and intentional disobedience by Defendants of the Court's discovery order, Plaintiffs bring this motion for sanctions.

## **Applicable Legal Principles**

Rule 37(b) provides that a court may issue just orders for not obeying a court's discovery order, that may include (1) directing that the matters embraced in the order or other designated facts be taken as established as the prevailing party claims for purposes of the action, (2) prohibiting a disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters into evidence, (3) striking pleadings in whole or in part, and/or (4) treating as contempt of court the failure to obey the order.  The sanctions listed in Rule 37(b)(2) are not mutually exclusive, and courts have broad discretion in imposing sanctions under Rule 37. *See National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639 (1976); *Guidry v. Continental Oil Co.*, 640 F. 2d 523, 533 (5th Cir. 1981), *cert. denied*, 454 U.S. 818 (1982).  Plaintiffs respectfully request that the Court impose sanctions, to the extent requested herein, as just and commensurate to the related non-compliance with the Court's discovery order as discussed below.[3]

---

[3]  By separate motion filed contemporaneously with this motion for sanctions, Plaintiffs are seeking that Defendants' noncompliance with the Court's  discovery order for materials relating

<u>**The Requested Sanctions are Just and Commensurate**</u>

**A.  Defendants' Disobedience of the Court's Discovery Order as to Production of Employee Records Merits certain Deemed Facts as Just and Commensurate Sanctions.**

Unlawful conduct specifically alleged in this action and asserted defenses to that conduct include that:

- Defendants lured employees of the MR CHOW Restaurants to leave MR CHOW to serve in the same capacity in Defendants' restaurants, and to disclose trade secrets and confidential information of the MR CHOW Restaurants, by offering unreported cash payments which lawfully operated restaurants like MR CHOW could not and would not do.  ECF No. 134 ¶ 60.

- Defendants surreptitiously engaged in providing illegal unreported cash payments to Defendants' employees, including kitchen staff, thereby unfairly competing by reducing the operating costs of their restaurants,  ECF No. 134 ¶ 72.

Based upon these explicit and specific allegations, Plaintiffs sought in discovery and the Court ordered produced, among other things: Defendants' payroll records and materials relating to any other compensation or remuneration to Defendants' employees or contractors in any form; personnel records and other documents or ESI reflecting the solicitation or recruitment, hiring or other engagement, and/or termination of Defendants' employees or contractors, specifically including employees or contractors that had been employed or engaged by Mr Chow; and materials relating to any contacts or communications by Defendants with Mr Chow current or former employees or contractors.[4]

After a careful search of Defendants' production, it is clear that Defendants have either entirely failed to produce materials responsive to these requests, or have made such a selective

---

to damages be treated as contempt of court and an appropriate daily fine or other relief to coerce production be imposed by the Court.

[4]  The specific requests for production covering these materials are set out in Plaintiffs' motions to compel, and include requests for production 2, 3, 4, 5, and 31 in  ECF No. 105, for which the motion to compel was granted and which are also reflected in Ex. A to this Motion.

and deficient production as to amount to a deliberate and intentional disobedience of the Court's order regarding this discovery. Thus a search of Defendants' production reveals that <u>no</u> personnel records or other materials reflecting dates of hire and termination were produced. In particular, <u>no</u> materials were produced relating to the solicitation, recruitment, hiring and, if applicable, termination of Defendant Chau, Defendant Dumitrescu, or any of the Defendant Chefs, nor were any such materials produced relating to the recruitment, hiring and/or termination of <u>any</u> of the numerous other persons (approximately 20 of whom having now been identified in Defendants' supplemental interrogatory responses) who were employed or engaged by Defendants after having first been employed or engaged by Mr Chow.

As to Plaintiffs' allegation regarding the unlawful luring away of its chefs specifically, the only Defendant Chef who has been deposed to date, Defendant Kwok, refused to answer questions relating to his own recruitment and employment by Defendants (including such basic questions as when and at what location he was employed) or relating to his communications with and solicitation and hiring of others from Mr Chow to work in Defendants' kitchens, instead asserting the Fifth Amendment privilege against self-incrimination in response to such questioning. *See* ECF No. 187 (excerpts of Kwok deposition filed under seal). In consequence, assuming the similar assertion of the Fifth Amendment at deposition by other witnesses with knowledge concerning such matters, it appears that Plaintiffs are left with no other means of obtaining evidence relevant and material to their contention that Defendants have wrongfully lured away Plaintiffs' employees by means of illegal payments, other than through document and ESI discovery. Yet Defendants now have declined to produce any responsive materials, despite such materials having been ordered produced by the Court.

Likewise Plaintiffs sought and the Court compelled production of complete payroll and compensation records from the Defendants, but Defendants have produced (with isolated exceptions)[5] weekly payroll records or other detailed records of payroll only for the period from approximately December of 2008 and later.  Thus Defendants have for the most part refused to produce detailed payroll records for the period from the inception of Defendants' business in 2005 until late 2008, essentially amounting to three years of withheld payroll records. Nor have Defendants produced all the records of compensation or remuneration to employees or contractors, including records of cash payments, that Defendants were ordered to produce and that Plaintiffs know to exist by the anecdotal evidence already before the Court regarding cash payments to Defendants' former employee Gee.[6]  Defendants also have produced no payroll records from Paychex, Defendants' payroll processing service, although references to the Paychex service in Defendants' production makes clear that such records plainly exist and are within the control of Defendants.

---

[5]  Even as to Defendant Philippe Miami, which opened in mid-2008, full production of the payroll records called for has not been made, as materials reflecting Defendant Miami's payroll back to the commencement of its operations are conspicuously missing from Defendants' production.

[6]  Defendant Lee filed with the Court, through counsel, a declaration attempting to call into question the evidence previously asserted by Plaintiffs pertaining to the voice message of Mr. Gee.  *See* DE 115.  However in light of Defendant Lee's refusal to answer questions regarding that voice message at deposition, based upon the assertion of the 5th Amendment privilege, Plaintiffs suggest that Defendants may not rely upon Defendant Lee's subsequent declaration or any related assertions pertaining to Mr. Gee's voice mail in contesting Mr Gee's voice mail as evidence of illegal cash payments by Defendants to their employees.  Where a defendant asserts the Fifth Amendment privilege in discovery, courts have held the defendant prohibited from asserting affirmative defenses, submitting evidence, or later testifying to matters related to the subjects as to which the privilege was asserted, and that should be the case here.  *See, e.g., In re Vitamins Antitrust Litigation*, 120 F. Supp. 2d 58, 72 (D.D.C. 2000) (striking affidavit in support of defendants 'motion to dismiss for lack of jurisdiction where defendant asserted the Fifth Amendment in response to jurisdictional discovery); *S.E.C. v. Cymaticolor Corp.*, 106 F.R.D. 545, 550 (S.D.N.Y. 1985) (precluding defendant from offering into evidence any matter relating to the factual basis for his denials and defenses as to which he had asserted his Fifth Amendment rights).

Just as Defendant Kwok's assertion of the Fifth Amendment as to inquiries at his deposition into the luring away of employees from Mr Chow by the promise of illegal cash payments, which reasonably must be anticipated to be the deposition stance of others with knowledge on such matters, has prejudiced Plaintiffs' ability to obtain evidence into such matters, Defendants' CFO Michael Reda and Defendants' employee with administrative payroll responsibilities, Jason Lee, likewise asserted the 5th Amendment and refused to answer questions at deposition regarding compensation to Defendants' employees and Defendants' payroll practices; *see* ECF No. 187 (deposition excerpts filed under seal), and Plaintiffs fairly anticipate that other witnesses with knowledge of Defendants' compensation or remuneration to employees and contractors and/or with knowledge regarding Defendants' pay practices would likewise assert the Fifth Amendment at deposition in response to such inquiries and thereby prevent Plaintiffs from obtaining discovery into such matters. Thus Plaintiffs appear to have no reasonable means of obtaining evidence of the scope and extent of those illegal cash payments and Defendants' pay practices more generally relating to Plaintiffs' tortious interference and unfair competition claims except through Defendants' responses to written discovery – responses already ordered by the Court.  Yet Defendants have made only a highly selective production of the required materials, which is nearly devoid of responsive materials for the first three years of Defendants' operations, a period of time particularly important to Plaintiffs' claims of tortious interference and unfair competition in this action as it includes the startup and earliest years of Defendants' business.

Moreover representations by Defendants in materials they have produced, to the effect that full payroll-related records for Defendants' 60th Street restaurant and Philippe Express were produced for inspection to the New York Department of Labor for the period from 2005 to May

2010, as sought in item 1 of an administrative subpoena from the agency to the Defendants, precludes Defendants from contending that the full and complete payroll and cash compensation records that have been sought and ordered to be produced here do not exist.  More specifically, subpoena item 1 sought any and all payroll records for all employees of both of Defendants' New York City locations, including their names, hours worked, classifications, wages and/or money paid as cash, and copies of New York quarterly payroll tax returns; Defendants' correspondence to the agency produced in discovery contains a representation that this subpoena item was fully complied with by a production for inspection to the agency on May 19, 2010.[7]

As to contacts or communications by Defendants with Mr Chow current or former employees or contractors, materials also directly relevant to Plaintiffs' tortious interference claims, once again Defendants have elected not to produce responsive materials, even those which are known to exist because excerpts of those communications previously were provided by Plaintiffs to Defendants discovery.  Thus although a limited and incomplete production was made of communications by Defendant Morfogen with <u>one</u> of Mr Chow's employees only, no production was made of any other communications by Morfogen or by any other Defendant (directly or through an agent for the corporate Defendants), with any of Mr Chow's current or

---

[7]  That such responsive materials clearly exist and yet were not produced here also violates the Court's order compelling a response to Plaintiffs' request for materials relating to government inspections, investigations or audits (request 5 addressed in ECF No. 105 and Ex. A) and further supports Plaintiffs' requested sanctions for non-compliance with the Court's discovery order as to employee records.  A very limited production of materials asserted to be responsive to this request was made by Defendants, but that production consisted for the most part of transmittal correspondence <u>without</u> the attached or enclosed materials that ostensibly were being transmitted, nor did the Defendants' production in this case even include all of the correspondence with the New York Department of Labor, as correspondence about the investigation which is referenced in the limited correspondence produced was not in turn provided. Once again Defendants have made a deliberately selective production of materials responsive to requests for production compelled by the Court relating to employee records, warranting sanctions.

former employees, even though once again such materials are known to exist.  In particular, no text messages were produced between Defendant Dumitrescu and Mr Chow's current or former employees although such communications are known to exist and such materials were ordered produced in response to Plaintiffs' requests.  In light of the denials or purported lack of recollection by Defendants Morfogen and Dumitrescu at deposition as to their solicitation of current Mr Chow employees, Defendants' failure to produce materials relating to contacts and communications with Mr Chow employees and contractors also deprives Plaintiffs of a meaningful opportunity to examine or cross-examine Defendants about Plaintiffs' allegations involving the luring of Mr Chow employees away from Mr Chow and the unfair competition with Mr Chow through Mr Chow's recruited former employees.

For all these reasons, Plaintiffs seek as sanctions for the non-production or deficient production of employee records the following deemed facts:

That the Court deem established that at all times pertinent to this action[8], Defendants' compensation to chefs and other employees in their restaurants included illegal cash payments, allowing defendants to pay lower total amounts to the employees while providing them with higher net earnings, since defendants did not report such cash payments to city, state or federal tax agencies and no taxes were withheld or paid in respect of such cash payments.

That the Court deem established that at all times pertinent to this action, Defendants lured employees away from Plaintiffs' Mr Chow restaurants by the promise and payment of some or all of their compensation at Defendants' restaurants in illegal cash payments.

Given that Plaintiffs specifically requested and the Court ordered production of these employee-related materials, that such materials are unequivocally relevant to the claims and defenses in this action, that Plaintiffs have no alternative means of obtaining this evidence particularly in light of Defendants' assertion of the Fifth Amendment privilege in deposition, and

---

[8]  Plaintiffs assert that this time period is appropriate with respect to the deemed facts requested, in light of the evidence submitted to the Court from the telephone message of Defendants' former employee Gee showing that illegal cash payments were being made as recently as April of 2010.

that Defendants must be found to have knowingly, deliberately and intentionally withheld the materials as such materials in substantial part must exist, these particular deemed facts are appropriate sanctions and should be entered by the Court. [9]   Specifically a sanction of the above-requested deemed facts is just and commensurate to Defendants' non-compliance with discovery, because the scope and duration – and thus the amount of evidence – of Defendants' conduct in luring away Plaintiffs' employees and unfairly competing by illegal cash payments can be expected to influence a jury on the question of appropriate damages.   Precisely because Defendants may argue that any items of evidence Plaintiffs may have (such as with respect to former employee Gee's voice message as evidence of illegal cash payments by Defendants to their employees, or the text messages to only one of Plaintiffs' employees attempting to lure him to Defendants), constitute an aberration or mistake or at most an isolated incident, in the absence of a full and complete production of the personnel, payroll and other compensation and communications materials withheld, Plaintiffs face a substantial hurdle in proving that the Defendants' conduct was deliberate and intentional and occurred over the full period of time at issue in this action from 2005 to the present.   In such circumstances, the deemed findings are both appropriate and necessary to restore the evidentiary balance.

---

[9]   Because Plaintiffs are not seeking the most severe sanctions available, no finding of bad faith is necessary here.   Deemed facts or preclusion orders are not "severe" sanctions, and the courts have held that willful or contumacious conduct is a prerequisite to dismissal or default sanctions but not less severe sanctions such as those sought here. To the extent the Court should consider the intent of the disobedient Defendants, however, bad faith fairly may be inferred under the circumstances. First, because Defendants had made two earlier unsuccessful attempts to avoid this same discovery, in their motion for protective order and motion to bifurcate, Defendants' non-compliance fairly must be viewed as not mere oversight or negligence but a reflection of Defendants' deliberate decision not to produce materials that they do not wish to provide despite three Court orders that they do so.  Also by their limited production as to certain requests, such as for payroll records, Defendants "ha[ve] decided when [they] will be cooperative, and when [they] will not be cooperative," which Defendants have no right to do and is further suggestive of bad faith.  *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1065 (2d Cir. 1979).

**B.  Defendants' Disobedience of the Court's Discovery Order as to Production of Materials regarding the relationship between Defendants and the real Mr Chow Merits certain Deemed Facts as Just and Commensurate Sanctions.**

Unlawful conduct specifically alleged in this action also includes that:

- Defendants have engaged in internet advertising and have purchased search engine sponsored links that deceive the public and Mr Chow clients and divert to Defendants the reputation, business, clients and prospective clients of the real Mr. Chow and the MR CHOW Restaurants. ECF No. 134 ¶ 52, 61.

- Defendants have fraudulently advertised and promoted Defendant Chau as the inventor of the signature dishes served at the MR CHOW Restaurants, as the creator of the distinctive and original MR CHOW menu, and as the "architect" and "mastermind" behind the unique dining experience associated with the MR CHOW Restaurants ECF No. ¶ 49, 53, 54.

- Defendants have wrongfully misappropriated the distinctive and original Mr Chow menu and the signature dishes from the MR CHOW Restaurants, specifically including the trade secret recipes, techniques and methods of preparation of the Mr Chow signature dishes, which Defendants in turn refrained from disclosing to third parties so that they could continue to profit from them through their continuing illegal conduct. ECF No. 134 ¶ 55-58, 62.

In light of these explicit and specific allegations, Plaintiffs sought to compel and the Court ordered produced certain relevant ESI and document discovery.  As with Defendants' employee records discussed above, Defendants have not produced at all, or have only selectively produced, critical evidence relating to the allegations that Defendants have misrepresented their relationship with Mr Chow and the source and origins of the Defendants' menu and "signature" dishes. Specifically Plaintiffs moved to compel and the Court ordered produced materials relating to or reflecting the contents of the philippechow.com website at any time; communications with or about the contents of any search engine, website or social media (including OpenTable.com, Google, Twitter, Facebook, and TMZ) by or on behalf of the Defendants; and materials relating to sponsored links or metatags of Defendants including

associated key words.[10]  Plaintiffs also sought and the Court ordered produced materials relating to the recipes, processes, methods and techniques used in preparation, interpretation and presentation of all dishes ever served by Defendants, including the source and origins of all recipes, techniques and interpretations.[11]

In Plaintiffs' motion to compel electronically-stored information, ECF No. 97, the internet and social media related contents and communications called for were explicitly noted to include all materials relating to representations about Defendant Chau, his relationship with Mr Chow, and the source, recipes, and techniques for Defendants' assertedly "signature dishes".[12] Yet none of these materials were produced: Defendants' website and Defendants' Facebook pages were not produced in full nor was all content over time provided.  Despite Defendant Chau having a twitter account referenced on his own Facebook page, no tweets at all have been produced, nor has any material been produced relating to Defendant Chau's twitter account.

---

[10]  These materials are called for by requests for production 16, 17, 18, 19 to the Defendant entities and request 25 to Defendant Chau, and are set out along with Defendants' written responses in ECF No. 97.

[11]  These materials are called for by requests for production 21, 22, 27 and 27 and are set out along with Defendants' written responses in ECF No. 105 and Ex. A.

[12]  Specifically in ECF No. 97, Plaintiffs went out of their way to specify how and why the initial written responses and limited initial production by Defendants were deficient with respect to these matters.  Thus as to websites and Facebook pages, Plaintiffs specifically noted that no postings, comments, or emails were produced (materials that fairly could lead to admissible evidence regarding confusion), nor was the content produced over time for the duration of the period at issue in this action.  As to Facebook in particular, Plaintiffs pointed out that important content was not produced from Defendant Chau and Defendant Morfogen's pages, specifically the materials relating to Defendants' purported "signature dishes" – content highly relevant to Plaintiffs' claims in this lawsuit; nor was any content produced for the Facebook pages of Defendants Dumitrescu and Halley. Plaintiffs also specifically pointed out that no materials had been produced about the creation, contents, and source of the contents of Defendants' website or Facebook pages or on OpenTable.com or Twitter. As to sponsored links and metatags, Plaintiffs specifically pointed out in their motion to compel that the requests called for internal communications and communications with those responsible for Defendants' websites about sponsored links and metatags as well as communications with search engines and websites about such matters, including associated payments.  *See* ECF No. 97.

Likewise Defendants have produced no communications with OpenTable about the contents of the OpenTable site, specifically the various descriptions provided by Defendants to OpenTable over time about Defendant Chau's history and his relationship with Mr Chow.  Full Facebook contents have not been provided as to Defendants Chau and Morfogen, and no Facebook contents have been provided for Defendants Halley and Dumitrescu, even though Facebook now has a feature allowing for the quick and easy downloading by a Facebook user of all contents of the user's account over time. As to sponsored links and metatags, no communications whatsoever were produced with any search engine or site, or any third party advertiser or public relations firm acting on Defendants' behalf, about sponsored links, metatags, or other internet advertising by Defendants, or about any key words purchased by Defendants.  Finally other than a handful of video demonstrations, no responsive materials were produced regarding any processes, methods or techniques used by Defendants in food preparation, Defendants' voluminous production appears to contain no recipes actually used by Defendants in the preparation of any dishes for their clients, and no materials whatsoever were produced relating to the source and origins of any of the dishes ever served by Defendants, including those dishes Defendants have asserted in electronic or other media to be Defendants' "signature" dishes.

Plaintiffs have no reasonable means of obtaining the information regarding Defendants' asserted relationship to Mr Chow and the source and origins of Defendants dishes other than from Defendants themselves.  In particular, obtaining the information at issue from the search engines or website hosting services directly by subpoena is not only burdensome but unlikely to prove successful.  *See*, e.g., *Crispin v. Christian Audigier Inc.*, 2010 WL 2293238 (C.D. Cal. May 26, 2010) (holding subpoena to Facebook for certain of plaintiff's Facebook contents violated the Stored Communication Act and thus Facebook prohibited from providing such

information in response to subpoena).   Information regarding the source and origins of Defendants' menu and dishes, and thus whether the menu and dishes are trade secrets, can only be obtained from Defendants.

In consequence, due to Defendants' non-production or deficient production of critical evidence, Plaintiffs also request that the Court deem established the following facts:

> That Defendants knowingly and intentionally caused internet sponsored links or ad-triggering key words to announce falsely to the public that Plaintiffs' Mr Chow restaurants in New York and Miami were located at specific addresses that were actually the addresses of Defendants' New York City and Miami restaurants.

> That at all times pertinent to this action, Defendants knowingly and intentionally represented falsely on OpenTable, Facebook, Twitter, and in other social media and internet communications that Defendant Chau created the Mr Chow menu and the Mr Chow restaurants' signature dishes (as have been identified by Plaintiffs in discovery in this action).

> That the recipes, techniques, and methods of preparation of Defendants' "signature dishes" as identified by Defendants in the media and of Defendants' dishes which correspond to Mr Chow restaurants' signature dishes are or are derived from in substantial and material part the recipes, techniques and methods of preparation for the corresponding dishes at Plaintiffs' Mr Chow restaurants.

As with the deemed facts requested above relating to Defendants' withheld employee records, without the evidence sought and ordered as to Defendants' asserted relationship to Mr Chow and the source and origins of Defendants' menu and "signature" dishes, Plaintiffs will be hard-pressed to show that the representations made by Defendants and conduct of Defendants in adopted Mr Chow's menu and dishes were not isolated, or aberrations, or mistakes, rather than knowing, deliberate and intentional.  Therefore without the requested deemed findings, Plaintiffs will suffer substantial prejudice from Defendants' incomplete production as to these matters.

**C. Related Sanctions as to Preclusion of Evidence and Argument, and as to Certain Defenses, are Merited in Order to Give Effect to the Requested Deemed Facts.**

In order that the deemed facts may be meaningful, Plaintiffs also request that Defendants be precluded from submitting evidence or argument as to any of the matters concerning which Plaintiffs seek deemed facts above, and further be precluded from offering any evidence regarding any other issue for which Defendants' production failures addressed herein impact Plaintiffs' ability to effectively cross-examine witnesses, and finally that Defendants be precluded from pursuing any defense which may be shown to be barred by the deemed facts or requested preclusion orders.

Related preclusion sanctions are necessary and appropriate to prevent Defendants from affirmatively profiting from gaps in the evidence that Defendants are solely responsible for creating, for example by presenting affidavits or witnesses that Plaintiffs would be unable to probe, test or impeach with reference to Defendants unproduced records at issue here.  Likewise the sanction of striking certain defenses is proper under Rule 37(b) as noted above.  Moreover when a party intentionally withholds properly requested information, courts have the authority to presume that the party's refusal to produce the information is "an admission of the want of merit in the asserted defense."  *Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 351 (1909).

As to particular evidence or argument that Defendants should be precluded from in order to give effect to the deemed facts and avoid profiting from their withheld evidence pertaining to the deemed facts, such evidence or argument may not be fully ascertained at this time, but will depend upon Defendants' subsequent assertions in this action.  However Defendants at minimum must be precluded from contesting that the recipes, techniques, and methods of preparation of Defendants' "signature dishes" as identified by Defendants in the media or Defendants' dishes which correspond to the Mr Chow restaurants' signature dishes, constitute protectable trade

secrets as a matter of law.

Likewise as to particular defenses that Defendants must be precluded from pursuing, Plaintiffs are unable to ascertain at this time the factual predicate for many of Defendants' 69 asserted defenses, and so Plaintiffs cannot identify specifically which of those defenses ultimately should be barred by the deemed facts and preclusion orders  but respectfully requests the opportunity to request specific defenses be barred based upon the sanctions sought here as the bases for Defendants' defenses become known and/or in motions in limine as appropriate. However at minimum Defendants' laches affirmative defense should be barred based upon the deemed facts sought and Defendants refusal to produce relevant and material discovery. Plaintiffs specifically sought materials which supported Defendants' factual allegations relating to the hiring of and commitments to employees (allegations quoted verbatim in the requests for production) upon which Defendants are assertedly relying in support of their laches defense as articulated in  Court filings to date.[13]   Yet as noted above, Defendants have produced <u>no</u> personnel records or other materials reflecting the dates of hire of Defendants' employees, nor have they produced detailed payroll or compensation records reflecting the asserted "great…expense" of such hiring, nor finally have they produced any records  or materials reflecting any commitments by Defendants to any of their employees.  By depriving Plaintiffs of such materials despite the Court's order of production, Defendants have interfered with Plaintiffs'

---

[13]  To establish the defense of laches Defendants have to establish not only that Plaintiffs delayed in asserting their claims and Plaintiffs' delay was not excusable; but also that the delay caused Defendants undue prejudice.  *See* ECF No. 16 p.4-5 (Defendants' motion to dismiss, setting forth elements of laches defense). In their motion to dismiss, Defendants set out as the asserted factual basis for their claim of undue prejudice to support their laches defense that, *inter alia*, "Since 2005, at great risk and expense,…Philippe…hired numerous employees to operate the business (wait staff, kitchen staff, management, etc.)", ECF No. 16 p. 2, and that "Philippe has spent an inordinate amount of time, money and energy investing in and growing Philippe's successful enterprise, and has committed itself to … employees …who all have an interest in the success of Philippe's business." ECF No. 16 p. 7.

ability to rebut Defendants' laches defense.  Defendants' defense that any marks at issue are functional also must be barred based upon the sponsored links deemed fact sought above.

## Conclusion

For the above-stated reasons Plaintiffs ask that the Court deem established the following facts:

- At all times pertinent to this action, Defendants' compensation to chefs and other employees in their restaurants included illegal cash payments, allowing defendants to pay lower total amounts to the employees while providing them with higher net earnings, since defendants did not report such cash payments to city, state or federal tax agencies and no taxes were withheld or paid in respect of such cash payments.

- At all times pertinent to this action, Defendants lured employees away from Plaintiffs' Mr Chow restaurants by the promise and payment of some or all of their compensation at Defendants' restaurants in illegal cash payments.

- Defendants knowingly and intentionally caused internet sponsored links or ad-triggering key words to announce falsely to the public that Plaintiffs' Mr Chow restaurants in New York and Miami were located at specific addresses that were actually the addresses of Defendants' New York City and Miami restaurants.

- At all times pertinent to this action, Defendants knowingly and intentionally represented falsely on OpenTable, Facebook, Twitter, and in other social media and internet communications that Defendant Chau created the Mr Chow menu and the Mr Chow restaurants' signature dishes (as have been identified by Plaintiffs in discovery in this action).

- The recipes, techniques, and methods of preparation of Defendants' "signature dishes" as identified by Defendants in the media and of Defendants' dishes which correspond to Mr Chow restaurants' signature dishes are, or are derived from, in substantial and material part the recipes, techniques and methods of preparation for the corresponding dishes at Plaintiffs' Mr Chow restaurants.

Plaintiffs also respectfully request that:

- Defendants be precluded from submitting evidence or argument as to any of the matters concerning which Plaintiffs seek deemed facts, and from offering any evidence or argument regarding  any other issue for which Defendants' production failures addressed herein impact Plaintiffs' ability to effectively cross-examine witnesses.

- The defenses asserted by Defendants of laches (no. 4) and that any marks at issue are functional (no. 28), and defenses barred by the deemed facts or preclusion orders requested be stricken based upon the non-production addressed herein.

### Rule  7.1  Conference Statement

Undersigned counsel respectfully states that she has communicated to Defendants' counsel that Defendants' production is deficient and that sanctions are therefore justified, to which Defendants' counsel has responded that there are no deficiencies.  Thus the parties have been unable to resolve the matters that form the basis for this motion.

Dated:  October 26, 2010

Respectfully submitted,

AKERMAN SENTERFITT
JOAN CANNY, ESQ.
Fla. Bar No. 0492531
joan.canny@akerman.com
One S.E. 3rd Avenue
Miami, FL  33131
Telephone:     (305) 982-5621
Facsimile:     (305) 374-5095

*/s/Joan M. Canny*
Joan M. Canny
*Attorneys for Plaintiffs*

GREENBERG GLUSKER FIELDS
CLAMAN & MACHTINGER LLP
BERTRAM FIELDS, ESQ.
bfields@greenbergglusker.com
1900 Avenue of the Stars, 21st Floor
Los Angeles, CA  90067-4590
Telephone:     (310) 553-3610
Facsimile:     (310) 553-0687

**<u>Certificate of Service</u>**

**I hereby certify** that on October 26, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/Joan M. Canny*_____
Joan M. Canny

**SERVICE LIST**
**Michael Chow, et. al. v. Chak Yam Chau, et. al.**
**Case No. 09-21893-Civ-Hoeveler/Garber**
**United States District Court, Southern District of Florida**

Lyle E. Shapiro, Esq.
lshapiro@richmangreer.com
Mark A. Romance, Esq.
mromance@richmangreer.com
Ethan J. Wall, Esq.
ewall@richmangreer.com
RICHMAN GREER P.A.
Miami Center – Suite 1000
201 South Biscayne Boulevard
Miami, Florida  33131
Telephone:      (305) 373-4000
Facsimile:      (305) 373-4099

*Attorneys for Defendants Chak Yam Chau,*
*Stratis Morfogen, David Lee, Philippe Miami*
*LLC, Philippe North America Restaurants, LLC,*
*and Philippe Restaurant Corp., Davé 60 NYC,*
*Inc., Philipe Express, LLC, Philippe West*
*Coast, LLC, Costin Dumitrescu, Manny Hailey,*
*Yao Wu Fang, and Ping Ching Kwok*
**Served via CM/ECF**

Greg M. Herskowitz, Esq.
greg@pinecresttitle.com
GREG HERSKOWITZ, P.A.
9130 South Dadeland Boulevard
PH1A
Miami, Florida  33156
Telephone:      (305) 423-1258
Facsimile:      (305) 670-3884

*Attorneys for Defendants Chak Yam Chau,*
*Stratis Morfogen, David Lee, Philippe Miami*
*LLC, Philippe North America Restaurants, LLC,*
*and Philippe Restaurant Corp., Davé 60 NYC,*
*Inc., Philipe Express, LLC, Philippe West Coast,*
*LLC, Costin Dumitrescu, Manny Hailey, Yao*
*Wu Fang, and Ping Ching Kwok*
**Served via CM/ECF**

Matthew A. Cuomo, Esq.
mcuomo@cuomollc.com
CUOMO, LLC
9 East 38th Street
New York, New York  10016
Telephone:      (212) 448-9933
Facsimile:      (212) 448-9943

*Attorneys for Defendants Chak Yam Chau,*
*Stratis Morfogen, David Lee, Philippe Miami*
*LLC, Philippe North America Restaurants, LLC,*
*and Philippe Restaurant Corp., Davé 60 NYC,*
*Inc., Philipe Express, LLC, Philippe West*
*Coast, LLC, Costin Dumitrescu, Manny Hailey,*
*Yao Wu Fang, and Ping Ching Kwok*
**Served via CM/ECF**

Mark Cheng, *Pro Se*
1795 Ribbon Fan Lane
Naples, Florida  34119
**Served via U.S. Mail**