UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-21893-CIV-HOEVELER/TURNOFF

MICHAEL CHOW,
known as "MR. CHOW" *et al.*,

    Plaintiffs,

v.

CHAK YAM CHAU *et al.*,

    Defendants.
_____/

**PLAINTIFFS' MEMORANDUM
REGARDING PROOF OF DAMAGES AT TRIAL**

Plaintiffs provide the Court with this trial memorandum to assist with issues that will arise during the course of this trial.

**PROOF OF DAMAGES AT TRIAL**

Plaintiffs will offer evidence of damages in the form of the expert testimony of accountant Sergio Negreira at trial. But expert opinion testimony is not the only acceptable evidence of damages. Plaintiffs will provide additional evidence in the form of Michael Chow's own testimony regarding lost sales and lost profits and the lost value of his assets. This form of proving damages has repeatedly been accepted by federal courts.

### A. Damages Based on Lost Sales and Lost Profits

It is textbook law that damages can be computed "on the basis of plaintiff's business experience (the 'before and after' method) and his business knowledge . . . or on the basis of expert opinion or by measuring what the plaintiff's financial position would have been 'but for' the defendant's violation." Callman, UNFAIR COMPETITION, TRADEMARKS AND MONOPOLIES (4th Ed.) §23.64, at pp. 23-702, 703 (emphasis added). For example, "plaintiff can estimate what its financial position would have been" if defendant had not engaged in the misconduct in issue. *Id.* at p. 23-703. "To determine what profits plaintiff would have made but for defendant's infringement, the court may use a pre-infringement 'base period' as the basis for predicting what plaintiff would have made during the period of infringement." McCarthy, TRADEMARKS AND UNFAIR COMPETITION (4th Ed.) §30.79, at p. 30-179.

This method of proving damages has been endorsed by the Supreme Court. See Bigelow v. RKO Radio Pictures, Inc., 327 U.S. 251, 258 (1946); Eastman Kodak Co. of New York v. Southern Photo Materials Co., 273 U.S. 359, 71 L.Ed. 687, 690-91 (1927); Story Parchment Co. v. Patterson Parchment Paper Co., 282 U.S. 555, 75 L.Ed. 544, 550 (1931).

It is also consistent with the Federal Rule of Evidence. The Advisory Committee Notes for Rule 701 specifically provide:

> [M]ost courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert. See, e.g., <u>Lightning Lube, Inc. v. Witco Corp.</u>, 4 F.3d 1153 (3d Cir. 1993) (no abuse of discretion in permitting the plaintiff's owner to give lay opinion testimony as to damages, as it was based on his knowledge and participation in the day-to-day affairs of the business). Such opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business. The amendment does not purport to change this analysis.

Fed. R. Evid. 701, Advisory Committee's Note (2000 Amendment).

These rules for introducing evidence of damages and computing damages are applicable to copyright, trademark and unfair competition cases as well. <u>See</u> 5 McCarthy, TRADEMARKS AND UNFAIR COMPETITION (4th Ed.) §30.76, at p. 30-178.2; <u>Bigelow</u>, 327 U.S. at 661; <u>Story Parchment</u>, 75 L.Ed. at 549.

In <u>Story Parchment</u>, for example, the plaintiff established damages in two ways. One was by showing what its sales would have been but for defendant's conduct. The other was by the testimony of the plaintiff's treasurer that the plaintiff's property had declined in value. <u>See Story Parchment</u>, 75 L.Ed. at 550.

Similarly, in <u>Borg-Warner Corp. v. York-Shipley, Inc.</u>, 136 U.S.P.Q. 255 (N.D. Ill. 1963), the issue was whether <u>the defendant</u> had proved its damages

3

in its counterclaim for unfair competition. The defendant's president testified to the company's sales and profits prior to plaintiff's wrongful conduct as a measure of what profits it lost once that conduct occurred. The Court held that this evidence provided even more than the "reasonable approximation" required by the case law and that "[the president's] testimony is of the type approved as adequate support for the computations."

Tingley Systems, Inc. v. Norse Systems, Inc., 49 F.3d 93, 97-98 (2nd Cir. 1995) was a copyright and tortious interference case, in which the Court again endorsed the kind of testimony the plaintiffs will provide here. In Tingley, the damages upheld by the Court were the difference between plaintiff's "expected annual profit" for the period June 1988 to June 1991 and plaintiff's "actual profit" for that period. Plaintiff's "expected annual profit" was based on its average revenues for the 18 months preceding June 1988 – what McCarthy's treatise calls the "base period."

In Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256, 265 (2d Cir. 1995), the Second Circuit held that the testimony of a company's president was properly admitted as lay opinion regarding "the company's sales over a period of years, noting a slow-down, and [] the estimated losses attributable to the [fraud]." Id. at 265. The president's testimony was supported by an established record of yearly sales growth and decreased sales following the allegedly fraudulent acts. Id. The court found that the president had

4

"'personal knowledge of his business . . . sufficient to make . . . [him] eligible under Rule 701 to testify as to how lost profits could be calculated.'"  Id. (internal citation omitted).

### B. Damages Based on Projected Sales and Projected Profits

Instead of measuring sales during the period of wrongful conduct against sales during a prior base period, the plaintiff can also prove damages by measuring <u>actual</u> sales in the period of misconduct against <u>projected</u> sales for the same period formulated in the ordinary course of business.  See, e.g., Alpo Pet Foods, Inc. v. Ralston Purina Co., 997 F.2d 949, 952 (D.C. Cir. 1993).

In Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153 (3d Cir. 1993), the Third Circuit found no abuse of discretion where the district court permitted a company's owner to testify under Rule 701 about lost profits and damages based upon his review of the company's records and his projection of what future earnings would have been.  The court found that the owner's reliance on the report of an accountant was proper as he testified that he personally participated in the generation of the report.  Id. at 1175.  Further, the court held:

> [G]iven [the owner's] knowledge and participation in the day-to-day affairs of his business, his partial reliance on the report, even if prepared by an outsider, does not render his testimony beyond the scope of Rule 701.  As the district court correctly noted, '[i]t is logical that in preparing a damages report the author may incorporate documents that were prepared by others, while still

5

>possessing the requisite personal knowledge or foundation to render his lay opinion admissible under Fed.R.Evid. 701.

Id. (internal citation omitted).

Similarly, in Securitron, the court noted that the company president "was entitled to prove damages through a projection of lost profits" and a "company president certainly is capable of projecting lost profits where the projection is based on evidence of decreased sales." 65 F.3d at 265.

Here, plaintiffs will provide the testimony of Michael Chow, their owner and principal. Mr. Chow has spent 43 years in the restaurant business. He will testify as to the actual and projected sales of his New York restaurant before and after the defendants' acts of unfair competition, as well as the value of his New York restaurant. Although not testifying as an expert witness, Mr. Chow's testimony is well within the type of damages testimony endorsed by the Federal Rules of Evidence, by the federal courts, and by the leading treatises on the subject–i.e., evidence based on the data kept in the ordinary course of business and plaintiff's business experience and knowledge, a form of proving damages as valid as "expert opinion." Callman, supra, at 23-702. Mr. Chow will testify to the differences in sales, profits and values before and after the defendants' misconduct. As the authorities permit, Mr. Chow will contrast actual results after defendants'

6

misconduct with the results that were projected in the ordinary course of business and also with results in a pre-misconduct "base period."

Plaintiffs are not required to negate the possibility that their lost sales were caused by factors other than defendants' misconduct. Plaintiffs are only required to provide prima facie evidence of its lost sales and values. It is the defendants' burden to prove any part of the loss was caused by such unrelated factors. "Plaintiff need only make a prima facie showing of reasonably forecast profits, whereupon defendant has the burden of proving, if it can, that plaintiff's losses were caused by something other than defendant's own wrongful conduct." 5 McCarthy, TRADEMARKS AND UNFAIR COMPETITION (4th Ed.) § 30.79, at p. 30-180; see also Borg-Warner, 136 U.S.P.Q. 255; Wawak & Co., 129 F.2d at 68.

Naturally, Mr. Chow's testimony will provide an estimate, rather than a precise number. Precision is impossible in such cases and is not required. Where there is harm in some amount, the plaintiff need not produce the precise amount. "Mathematical certainty is not required"; and "uncertainty in determining the proper amount of damages must be resolved against the wrongdoer." Callman, UNFAIR COMPETITION, TRADEMARKS AND MONOPOLIES (4th Ed.) at pp. 23-704, 705.

7

The Supreme Court has likewise clearly endorsed this principle:

> Damages are not rendered uncertain because they cannot be ascertained with absolute exactness.  It is sufficient if a reasonable basis of computation is afforded, although the result be only approximate.

Eastman Kodak, 273 U.S. 359, 71 L.Ed. 687, 691.

> The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of uncertainty which his own wrong has created . . . the constant tendency of the courts is to find some way in which damages can be awarded where a wrong has been done.  Difficulty of ascertainment is no longer confused with right of recovery.

Bigelow, 327 U.S. 251, 90 L.Ed. 652 at 661.

### C.     **Damages Based on Diminution in Value of Property**

In addition, there are other ways of supporting a monetary award for a defendant's wrongful conduct.  Recoverable damages may be based on the diminution in the value of the plaintiff's property.  And, an officer of the plaintiff may testify to such values.  See, e.g., Story Parchment, 282 U.S. 555, 75 L.Ed. at 550.  In Story Parchment, the property values were established by the testimony of the plaintiff's treasurer.  The Supreme Court ruled that even though the treasurer was "an interested party" and "not an expert," those factors went to the "weight" to be given his testimony, a matter up to the jury.  Id. at 550.

### D. <u>Damages Based on Defendants' Profits</u>

Finally, an award may also be based on <u>defendant's</u> profits under the Lanham Act.  <u>See</u> 15 U.S.C.A. § 1115(a).

> Because of the difficulties of proving an actual diversion of sales, the courts often assume that the infringer's profits consisted entirely of profits on sales that would have been made by plaintiff but for the infringing actions.  Where the parties are competitors, '[t]he defendant's profits . . . are a rough measure of the plaintiff's damages.'  Indeed, they are probably the best possible measure of damages available.

5 McCarthy, TRADEMARKS AND UNFAIR COMPETITION (4th Ed.) § 30.59, at p. 30-139.4, 138.5.

In showing defendant's profits, a plaintiff's burden is only to establish defendant's sales.  Defendant has the burden of proving any and all elements of cost or deduction it may claim.  <u>See</u> 15 U.S.C.A. § 1115(a).

Here, plaintiffs' claimed damages include the increased profits to defendants – and decreased profits to plaintiffs – flowing from defendants' illegal cash payments to its employees.  Defendants' profits claimed by plaintiffs already include the extra profits defendants made by offering and paying employees unreported cash.  This practice allowed defendants to pay lower total wages, while providing greater "after tax" dollars for their employees.

9

The defendants' profits are also greater by reason of the Medicaid and other medical benefits provided by the states of New York and California to employees reporting wages below a statutory figure, even though they received higher wages through unreported cash payments, which would render them ineligible for such medical benefits if truly reported. But for the payments of unreported cash, defendants would have had to provide such medical benefits, further reducing their profits. Thus, defendants' gain by paying "under the table" cash is built into the profits claimed by plaintiffs.

Just as defendants' payments of unreported cash increased their own profits, defendants' practice of making such payments decreased plaintiffs profits, thus increasing the damages the plaintiffs have claimed. Because they <u>did not</u> make unreported cash payments, plaintiffs had to pay greater total wages to match the "after tax" dollars offered to prospective employees by defendants; and plaintiffs had to provide medical care at their own expense, rather than that of the state, because their employees' full wages were truly reported, making them ineligible for Medicaid and other state medical programs.

Mr. Chow can and will estimate the amount of plaintiffs' losses attributable to defendants' illegal payments.

DATED: January 23, 2012

Respectfully submitted,

Bertram Fields, Esq. (*PRO HAC VICE*)
GREENBERG GLUSKER FIELDS
   CLAMAN & MACHTINGER LLP
1900 Avenue of the Stars, 21st Floor
Los Angeles, CA 90067-4590
Tel.  (310) 553-3610
Fax  (310) 553-0687

COLSON HICKS EIDSON, P.A.
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Tel.  (305) 476-7400
Fax  (305) 476-7444
E-Mail: curt@colson.com

By:   s/ Curtis B. Miner_____
     Curtis B. Miner
     (Florida Bar # 885681)

*Attorneys for Plaintiffs*

**CERTIFICATE OF ELECTRONIC FILING AND SERVICE**

I HEREBY CERTIFY that on January 23, 2012, I filed a true and correct copy of the foregoing document with the Clerk of the Court using the CM/ECF system. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

*s/ Curtis B. Miner*
Curtis B. Miner

**SERVICE LIST**
*Michael Chow, et al. v. Chak Yam Chau, et al.*
**Case No. 09-21893-CIV-HOEVELER/GARBER**

| | |
|---|---|
| Anthony Accetta, Esq.<br>aaesq6@aol.com<br>Suntrust International Center<br>One SE 3rd Avenue, Suite 2920<br>Miami, Florida 33131<br>Telephone: (305) 579-0100<br>Fax: (305) 579-0104<br><br>Vincent J. Ancona, Esq.<br>E-mail: vja@anconalaw.com<br>ANCONA ASSOCIATES<br>220 Old Country Road<br>Mineola, NY 11501<br><br>*Attorneys for Philippe Chow, et al.,* | |