UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-21893-CIV-HOEVELER

MICHAEL CHOW,
known as "MR. CHOW," *et al.,*

    Plaintiffs,

v.

CHAK YAM CHAU, *et al.,*

    Defendants.

_____/

**PLAINTIFFS' BRIEF ON JURY INSTRUCTIONS**

Plaintiffs Michael Chow, known as "Mr. Chow," *et al.,* submit this trial brief to aid the Court in connection with certain issues that may arise at trial and in the formulation of the jury instructions in this case.

    **A.**    **THE EQUITABLE DEFENSE OF LACHES IS FOR THE COURT – NOT THE JURY – TO DECIDE**

The Defendants have raised the equitable defense of laches to certain of Plaintiffs' claims. The Court denied the Defendants' motion for summary judgment on this issue. This equitable defense is now something that – if necessary – should be addressed by the Court in post-trial proceedings, and not by the jury.

The law is clear that the equitable defense of laches is something for the Court to decide – not the jury. "The affirmative defense of laches is an equitable issue on which there is no right to a trial by jury." 6 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 31:1 (4th ed. 2011). *See also Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 962 (9th Cir. 2001) ("[T]here is no right to a jury on the equitable defense of laches."); *Price v. Fox Entertainment Group, Inc.*, 2007 WL 1498321, at *1 (S.D.N.Y. May 22, 2007) ("A number of courts have held that those equitable defenses [estoppel and laches] are committed to the sound discretion of the court."); *Patsy's Italian Restaurant, Inc. v. Banas*, 575 F. Supp.2d 427, 456 (E.D.N.Y. 2008) ("Equitable defenses are for the Court to decide within its sound discretion."); *Schering Corp. v. Amgen Inc.,* 969 F. Supp. 258, 269 (D. Del. 1997) ("Laches and estoppel are equitable defenses, committed to the sound discretion of the trial court.").

As the Seventh Circuit's pattern jury instructions on trademark actions explain:

> The Lanham Act recognizes laches, acquiescence, and other equitable defenses to trademark infringement actions. 15 U.S.C. § 115(b)(9). No instructions are provided on the defense of laches or acquiescence because they are issues for the court, not the jury.

Seventh Circuit Pattern Jury Instructions No. 13.5.3 (Affirmative Defenses – Laches/Acquiescence)

2

Consequently, it is not surprising that it is improper for a defendant to seek to introduce evidence supporting a laches defense before a jury. *See, e.g., Price v. Fox Entertainment Group, Inc.*, 2007 WL 1498321, at *1 (S.D.N.Y. May 22, 2007) ("Because estoppel and laches are equitable defenses, "[t]hat simply means that any testimony regarding the equitable defenses would be heard by the Court, not a jury."); *Pioneer Hi-Bred International, Inc. v. Ottawa Plant Food, Inc.*, 219 F.R.D. 135, 149 (N.D. Iowa 2003) ("The court finds that evidence expressly related to, or express references to, the equitable defense of laches, estoppel, or waiver must be barred in front of the jury. Evidence or reference to such defenses poses a very real risk of unfair prejudice outweighing any probative value such evidence might have to matters properly before the jury, or a risk of misleading and confusing the jury.").

In sum, the defense of laches raised by the Defendants is something that should be addressed – if necessary – in post-trial proceedings after the jury has returned a verdict. If additional evidence is needed to supplement the record on this issue, that evidence can be presented to the Court.

B.  **THE "MR. CHOW" MARK IS "INCONTESTABLE" AS A MATTER OF LAW AND SO IS ENTITLED TO CERTAIN PRESUMPTIONS**

The "Mr. Chow" mark has attained the status of an "incontestable" mark as a matter of law under the Lanham Act. The "Mr. Chow" mark was federally registered on July 7, 1981 — over 30 years ago. *See* Plaintiffs' Exhibit 1. Under the Lanham Act, 15 U.S.C. § 1065, "the right of the owner to use such registered mark in commerce for the goods or services on or in connection with which such registered mark has been in continuous use for five consecutive years subsequent to the date of such registration and is still in use in commerce, shall be incontestable," provided that there has been no prior adverse decision to the owner's claim of ownership, there are no pending proceedings involving the ownership rights before the United States Patent and Trademark Office ("USPTO"), and a required affidavit has been filed with the USPTO (which was done by Mr. Chow, *see* Plaintiffs' Exhibit 2).

As the Eleventh Circuit explained in *Dieter v. B&H Industries of Southwest Florida, Inc.,* 880 F.2d 322 (11th Cir. 1989):

> Five years after registering a mark, the holder may file the affidavit required by § 1065 and have its mark declared "incontestable." 15 U.S.C. § 1065(3). Once a mark has become "incontestable," its validity is presumed, subject to certain enumerated defenses which are not applicable in this action. 15 U.S.C. § 1065. Once a mark has achieved "incontestable" status, its validity cannot be challenged on the

> grounds that it is merely descriptive, even if the challenger can show that the mark was improperly registered initially.

*Id.* at 328.

As a result, Plaintiffs are entitled to certain conclusive presumptions that should be included in the jury instructions, including the presumptions that (1) the "Mr. Chow" mark is at least descriptive and has acquired secondary meaning, and (2) the "Mr. Chow" mark is distinctive. *See Dieter v. B&H Industries of Southwest Florida, Inc.,* 880 F.2d 322, 329 (11th Cir. 1989) ("We hold that incontestable status is a factor to be taken into consideration in likelihood of confusion analysis. Because Dieter's mark is incontestable, then it is presumed to be at least descriptive with secondary meaning, and therefore a relatively strong mark."); s*ee also Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 117 (1st Cir. 2006) ("If the registered mark has become incontestable through the owner's compliance with the applicable statutory formalities, the presumption [of distinctiveness of the mark] is conclusive. 15 U.S.C. § 1115(b)."*)*; *Soweco, Inc. v. Shell Oil Company*, 617 F.2d 1178, 1184-85 (5th Cir. 1980) ("An 'incontestable' mark cannot be challenged as lacking secondary meaning; such marks are conclusively presumed to be nondescriptive or to have acquired secondary meaning.").

5

### C. PLAINTIFFS' CLAIMS FOR UNFAIR COMPETITION ARE BROADER THAN THEIR CLAIMS FOR TRADEMARK INFRINGEMENT

The Defendants have suggested at various stages of this trial that the Plaintiffs' claims for unfair competition under the common law are somehow identical to their claims for trademark infringement under the Lanham Act. And so, Plaintiffs have argued, if the claim for trademark infringement is defeated for any reason, the claims for unfair competition under the common law must likewise fail. That is simply not the law.

As the Eleventh Circuit put it in a case where a business brought both Lanham Act claims and unfair competition claims:

> Failure of the infringement claim would not automatically bar an unfair competition claim. . . . [T]he unfair competition claim is a "broader" one that requires the court to examine conduct by the defendant that would not be dispositive of an infringement claim.

*Freedom Savings and Loan Association v. Way*, 757 F.2d 1176, 1186 (11th Cir. 1985). The case law in this circuit has repeatedly made this point. *See Professional Golfers Association of America v. Bankers Life & Casualty Co.*, 514 F.2d 665, 671 (5th Cir. 1975) ("Unfair competition, however, is <u>a more broadly conceived tort</u> than its frequent litigation partner, trademark infringement, and there are some instances where a defendant is guilty of competing unfairly without having technically infringed."); *American*

6

*Heritage Life Ins. Co. v. Heritage Life Ins. Co.,* 494 F.2d 3, 14 (5th Cir.1974) (Under Florida common law, unfair competition is an "umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters."); *Dunkin' Donuts Franchised Restaurants LLC v. D & D Donuts, Inc.,* 566 F. Supp.2d 1350, 1360 (M.D. Fla. 2008) ("Although unfair competition is a broader claim than infringement [under the Lanham Act], it also calls on the plaintiff to show confusing similarity between the services.").

The elements that a Plaintiff must prove – and that should go in the instructions to the jury – on a claim for unfair competition under the common law are simply:

> **(1) deceptive or fraudulent conduct of a competitor; and**
> **(2) likelihood of consumer confusion.**

*Monsanto Co. v. Campuzano,* 206 F. Supp.2d 1252, 1267 (S.D.Fla.2002). *See M.G.B. Homes, Inc. v. Ameron Homes, Inc.,* 903 F.2d 1486, 1493, 1494 (11th Cir.1990) (to prevail on unfair competition claim under Florida law, party must show deceptive or fraudulent conduct by a competitor *and* the likelihood of customer confusion); *Donald Frederick Evans and Assoc. v. Continental Homes, Inc.,* 785 F.2d 897, 914 (11th Cir.1986) ("Florida law requires that

7

[plaintiff] establish deceptive or fraudulent conduct of a competitor and likelihood of consumer confusion [for claim of unfair competition].").

### D. CANCELLATION OF A TRADEMARK UNDER 15 U.S.C. § 1119 IS AN ISSUE FOR THE COURT -- NOT THE JURY

During opening statements, the defense suggested that it would ask the jury to "take away" the Mr. Chow trademark from the plaintiffs as part of its counterclaim. *See* 1/24/2012 Transcript at pp. 85-86 ("So at the end of this case, in my counterclaim, . . . I want you to say to yourselves, if you don't do what you're supposed to under the law, he abandoned his mark, and I want you to take that mark away from him, and that's what I ask you to do in my counterclaim."). The Defendants do indeed have a counterclaim (Count II) for cancellation of the Mr. Chow mark pursuant to 15 U.S.C. § 1119. However, this is a statutory power that belongs exclusively to the Court – not to a jury. Depending on the outcome of the trial, this is an issue that would be taken up – if necessary – in post-trial proceedings with the Court.

15 U.S.C. § 1119 ("Power of Court Over Registration") provides as follows:

> In any action involving a registered mark <u>the court</u> may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action. Decrees and orders shall be certified by the court to the Director, who shall make

> appropriate entry upon the records of the Patent and Trademark Office, and shall be controlled thereby.

By its own language, this is a power granted to the court. The case law likewise makes this clear:

> [T]he Lanham Act provides the Court with concurrent jurisdiction to correct or cancel trademark registrations. *See* Lanham Act § 37, 15 U.S.C. § 1119. <u>This is quintessentially equitable relief for the Court to grant</u>.

*Patsy's Italian Restaurant, Inc. v. Banas*, 575 F. Supp.2d 427, 452 (E.D.N.Y. 2008). *See also Empresa Cubana Del Tabaco v. Culbro Corp.*, 123 F. Supp.2d 203, 209 (S.D.N.Y. 2000) ("A claim for cancellation of a trademark registration pursuant to Section 37 of the Lanham Act, 15 U.S.C. § 1119, is equitable in nature and does not give rise to a jury trial right."); *Gilbert/Robinson, Inc. v. Carrie Beverage-Missouri, Inc.*, 989 F.2d 985, 993 (8th Cir. 1993) *(*"Because the Lanham Act provides that the court must 'determine the right to registration,' 15 U.S.C. § 1119, . . . ."); *Menper Distributors, Inc. v. Germa Products, Inc.*, 2011 WL 2983716, at *3 (S.D. Fla. July 22, 2011) (Altonaga, J.) ("The net effect of [15 U.S.C. § 1119] is to give <u>the courts</u> concurrent power with the Patent and Trademark Office to conduct cancellation proceedings." (emphasis added)); *Mystique, Inc. v. 138 International, Inc.*, 601 F. Supp.2d 1320, 1323 (S.D. Fla. 2009) (Torres, J.)

("Section 37 of the Lanham Act, 15 U.S.C. § 1119, empowers <u>the Court</u> to cancel a registration." (emphasis added)).

In short, there is no basis to submit this counterclaim to the jury. It is a statutory and equitable power that is provided only to the Court. This is an issue that should be taken up – if necessary – in post-trial proceedings with the Court.

### E. THE DOCTRINE OF "ABANDONMENT" DOES NOT APPLY IN THIS CASE.

The defense has made arguments and sought to adduce evidence that suggests it may argue that the Plaintiffs have somehow "abandoned" their rights to the "Mr. Chow" trademark. A registration of a mark may be cancelled under the Lanham Act at any time if it has been abandoned. *See* 15 U.S.C. § 1064. The determination of "abandonment" is governed by Section 1127 of the Lanham Act, which states, in pertinent part, that a mark shall be deemed abandoned "[w]hen its use has been discontinued with intent not to resume such use," which intent "may be inferred from circumstances." 15 U.S.C. § 1127. Use of a mark means "the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark." *Id.*

Here, the evidence is that the "Mr. Chow" mark was federally registered on July 7, 1981. *See* Plaintiffs' Exhibit 1. Plaintiffs have

continuously used the "Mr. Chow" mark since before the registration date in connection with their restaurants in Beverly Hills (since 1974) and New York City (since 1979) – as well as with their more recent restaurants in Tribeca (since 2006) and Miami Beach (2009). Under these circumstances, there is simply no factual or legal basis to apply the doctrine of "abandonment." *See Citibank, N.A. v. Citbanc Group, Inc.*, 724 F.2d 1540, 1545 (11th Cir. 1984) ("In order to prove abandonment, defendants must show that plaintiff actually abandoned the use of the mark, and, also, that plaintiff intended to abandon the mark. . . . In this case, however, the district court correctly concluded that defendants failed to meet the strict burden of proof applicable to abandonment claims.").

    Respectfully submitted,

    Bertram Fields, Esq. (*pro hac vice*)
    GREENBERG GLUSKER FIELDS
      CLAMAN & MACHTINGER LLP
    1900 Avenue of the Stars, 21st Floor
    Los Angeles, CA 90067-4590

    COLSON HICKS EIDSON, P.A.
    255 Alhambra Circle, Penthouse
    Coral Gables, Florida 33134
    Tel. (305) 476-7400
    Fax. (305) 476-7444

    By: s/ Curtis B. Miner
        Curtis B. Miner (FBN# 885681)
        E-Mail: curt@colson.com

## CERTIFICATE OF ELECTRONIC FILING AND SERVICE

I HEREBY CERTIFY that on February 7, 2012, I filed a true and correct copy of the foregoing document with the Clerk of the Court using the CM/ECF system. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

*s/ Curtis B. Miner*
Curtis B. Miner

## SERVICE LIST
*Michael Chow, et al. v. Chak Yam Chau, et al.*
Case No. 09-21893-CIV-HOEVELER/GARBER

| | |
|---|---|
| Anthony Accetta, Esq.<br>E-mail: aaesq6@aol.com<br>SunTrust International Center<br>One SE 3rd Avenue<br>Suite 2920<br>Miami, Florida 33131<br>Telephone: (305) 579-0100<br>Fax: (305) 579-0104<br><br>*Attorneys for Philippe Chow, Straits Morfogen, David Lee, Philippe Miami LLC, Philippe North America Restaurants, LLC, Philippe Restaurant Corp., Dave NY 60, Inc., Philippe Express LLC, Costin Dumitrescu, Manny Hailey, Philippe West Coast LLC, Yao Wu Fang, and Ping Ching Kwok*<br>**(Via CM/ECF)** | Vincent J. Ancona, Esq.<br>E-mail: vja@anconalaw.com<br>ANCONA ASSOCIATES<br>220 Old Country Road<br>Mineola, NY 11501 |