**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 09-21893 CIV HOEVELER/TURNOFF**

MICHAEL CHOW, et al.,

     Plaintiffs,

v.

CHAK YAM CHAU, et al.,

     Defendants.

_____/

**DEFENDANTS PROPOSED JURY INSTRUCTIONS**

     Pursuant to the Court's order dated January 27, 2012, Defendants submit the following

Proposed Jury Instructions:

**Defendants' Proposed Preliminary Instructions**

Ladies and Gentlemen:

     You have now been sworn as the Jury to try this case. By your verdict you will decide the

disputed issues of fact.

     I will decide all questions of law and procedure that arise during the trial, and, before you

retire to the jury room at the end of the trial to deliberate upon your verdict and decide the case, I

will explain to you the rules of law that you must follow and apply in making your decision.

     The evidence presented to you during the trial will primarily consist of the testimony of the

witnesses, and tangible items including papers or documents called "Exhibits."

     **Transcripts Not Available**. You should pay close attention to the testimony because it will

be necessary for you to rely upon your memories concerning what the testimony was. Although, as

you can see, the Court Reporter is making a stenographic record of everything that is said,

typewritten transcripts will not be prepared in sufficient time or appropriate form for your use during your deliberations and you should not expect to receive them.

**Exhibits Will Be Available**. On the other hand, any exhibits admitted in evidence during the trial will be available to you for detailed study, if you wish, during your deliberations. So, if an exhibit is received in evidence but is not fully read or shown to you at the time, do not be concerned because you will get to see and study it later during your deliberations.

**Notetaking**. If you would like to take notes during the trial you may do so. On the other hand, of course, you are not required to take notes if you do not want to. That will be left up to you, individually.

If you do decide to take notes, do not try to write everything down because you will get so involved in notetaking that you might become distracted from the ongoing proceedings. Just make notes of names, or dates and places -- things that might be difficult to remember.

Also, your notes should be used only as aids to your memory, and, if your memory should later differ from your notes, you should rely upon your memory and not your notes.

If you do not take notes, you should rely upon your own independent recollection or memory of what the testimony was and you should not be unduly influenced by the notes of other Jurors. Notes are not entitled to any greater weight than the recollection or impression of each Juror concerning what the testimony was.

During the trial you should keep an open mind and should avoid reaching any hasty impressions or conclusions. Reserve your judgment until you have heard all of the testimony and evidence, the closing arguments or summations of the lawyers, and my instructions or explanations to you concerning the applicable law.

Because of your obligation to keep an open mind during the trial, coupled with your obligation to then decide the case only on the basis of the testimony and evidence presented, you must not discuss the case during the trial in any manner among yourselves or with anyone else, nor should you permit anyone to discuss it in your presence; and you should avoid reading any newspaper articles that might be published about the case. You should also avoid seeing or hearing any television or radio comments about the trial.

From time to time during the trial I may be called upon to make rulings of law on objections or motions made by the lawyers. You should not infer or conclude from any ruling or other comment I may make that I have any opinions on the merits of the case favoring one side or the other. And if I should sustain an objection to a question that goes unanswered by a witness, you should not guess or speculate what the answer might have been nor should you draw any inferences or conclusions from the question itself.

During the trial it may be necessary for me to confer with the lawyers from time to time out of your hearing with regard to questions of law or procedure that require consideration by the court or judge alone. On some occasions you may be excused from the courtroom for the same reason. I will try to limit these interruptions as much as possible, but you should remember the importance of the matter you are here to determine and should be patient even though the case may seem to go slowly.

The order of the trial's proceedings will be as follows: In just a moment the lawyers for each of the parties will be permitted to address you in turn and make what we call their "opening statements." Plaintiffs will then go forward with the calling of witnesses and presentation of evidence during what we call the Plaintiffs' "case in chief." When Plaintiffs finish (by announcing "rest"), Defendants will proceed with witnesses and evidence, after which, within certain

limitations, Plaintiffs may be permitted to again call witnesses or present evidence during what we call the "rebuttal" phase of the trial. Plaintiffs proceed first, and may rebut at the end, because the law places the burden of proof or burden of persuasion upon Plaintiffs (as I will further explain to you as a part of my final instructions).

When the evidence portion of the trial is completed, the lawyers will then be given another opportunity to address you and make their summations or final arguments in the case, after which I will instruct you on the applicable law and you will then retire to deliberate upon your verdict.

Now, we will begin by affording the lawyers for each side an opportunity to make their opening statements in which they may explain the issues in the case and summarize the facts they expect the evidence will show.

I caution you that the statements that the lawyers make now (as well as the arguments they present at the end of the trial) are not to be considered by you either as evidence in the case or as your instruction on the law. Nevertheless, these statements and arguments are intended to help you understand the issues and the evidence as it comes in, as well as the positions taken by both sides. So I ask that you now give the lawyers your close attention as I recognize them for purposes of opening statements.

Source: 11th Circuit Pattern Jury Instructions (Civil Cases) 2005.

**Defendants' Proposed Jury Instruction No. 1**

<u>**Court's Instructions to the Jury**</u>

Members of the Jury:

I will now explain to you the rules of law that you must follow and apply in deciding this case.

When I have finished you will go to the jury room and begin your discussions -- what we call your deliberations.

In deciding the case you must follow and apply all of the law as I explain it to you, whether you agree with that law or not; and you must not let your decision be influenced in any way by sympathy, or by prejudice, for or against anyone.

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for any of the acts and statements of its employees that are made within the scope of their duties as employees of the company.

In your deliberations you should consider only the evidence -- that is, the testimony of the witnesses and the exhibits I have admitted in the record -- but as you consider the evidence, both direct and circumstantial, you may make deductions and reach conclusions which reason and common sense lead you to make. "Direct evidence" is the testimony of one who asserts actual knowledge of a fact, such as an eye witness. "Circumstantial evidence" is proof of a chain of facts and circumstances tending to prove, or disprove, any fact in dispute. The law makes no distinction between the weight you may give to either direct or circumstantial evidence.

Remember that anything the lawyers say is not evidence in the case. And, except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your decision concerning the facts. It is your own recollection and interpretation of the evidence that controls.

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 2**

**<u>Credibility of Witnesses</u>**

Now, in saying that you must consider all of the evidence, I do not mean that you must accept all of the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. Also, the number of witnesses testifying concerning any particular dispute is not controlling.

In deciding whether you believe or do not believe any witness I suggest that you ask yourself a few questions: Did the witness impress you as one who was telling the truth? Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome of the case? Did the witness seem to have a good memory? Did the witness have the opportunity and ability to observe accurately the things he or she testified about? Did the witness appear to understand the questions clearly and answer them directly? Did the witness' testimony differ from other testimony or other evidence?

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 3**

**<u>Impeachment of Witnesses Inconsistent Statement</u>**

You should also ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact; or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, which was different from the testimony the witness gave before you during the trial.

The fact that a witness has been convicted of a felony offense, or a crime involving dishonesty or false statement, is another factor you may consider in deciding whether you believe the testimony of that witness.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people naturally tend to forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was simply an innocent lapse of memory or an intentional falsehood; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 4**

**<u>Expert Witnesses</u>**

When knowledge of a technical subject matter might be helpful to the jury, a person having special training or experience in that technical field is permitted to state an opinion concerning those technical matters.

Merely because such a witness has expressed an opinion, however, does not mean that you must accept that opinion. The same as with any other witness, it is up to you to decide whether to rely upon it.

When a witness has been or will be paid for reviewing and testifying concerning the evidence, you may consider the possibility of bias and should view with caution the testimony of such a witness where court testimony is given with regularity and represents a significant portion of the witness' income.

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 5**

**Interest in Outcome**

In evaluating the credibility of the witnesses, you should take into account any evidence that a witness may benefit in some way from the outcome of the case. Such interest in the outcome creates a motive to testify falsely and may sway a witness to testify in a way that advances his own interests. Therefore, if you find that any witness whose testimony you are considering may have an interest in the outcome of this trial, then you should bear that factor in mind when evaluating the credibility of his testimony, and accept it with great care.

Source: Matthew Bender's Modern Federal Jury Instructions (Civil), Witness Credibility, Instruction No. 76-3 (2009); Davis v. Alaska, 415 U.S. 308, 94 S. Ct. 1105 (1974); Eleventh Circuit Pattern Civil Jury Instruction 3 (2005).

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 6**

**Discrepancies in Testimony**

You have heard evidence of discrepancies in the testimony of certain witnesses, and counsel has argued that such discrepancies are a reason for you to reject the testimony of those witnesses.

You are instructed that evidence of discrepancies may be a basis to disbelieve a witness' testimony. On the other hand, discrepancies in a witness' testimony or between his testimony and that of others do not necessarily mean that the witness' entire testimony should be discredited.

People sometimes forget things and even a truthful witness may be nervous and contradict himself.   It is also a fact that two people witnessing an event will see or hear it differently. Whether a discrepancy pertains to a fact of importance or only to a trivial detail should be considered in weighing its significance; but a willful falsehood always is a matter of importance and should be considered seriously.

It is for you to decide, based on your total impression of the witness, how to weigh the discrepancies in his or her testimony. You should, as always, use common sense and your own good judgment.

Source: Matthew Bender's Modern Federal Jury Instructions (Civil), Witness Credibility, Instruction No. 76-4 (2009); Quock Ting v. United States, 140 U.S. 417, 11 S. Ct. 851 (1891).


GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 7**

**<u>Burden Of Proof</u>**

In this case each party asserting a claim or a defense has the responsibility to prove every essential part of the claim or defense by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that a claim or contention is more likely true than not true.

When more than one claim is involved, and when more than one defense is asserted, you should consider each claim and each defense separately; but in deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence you should find against the party making that claim or contention.

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 8**

**<u>Deposition Testimony</u>**

During the trial of this case, the testimony of certain witnesses may have been read to you by way of deposition transcripts, which consist of sworn recorded answers to questions asked of the witness in advance of the trial by one or more of the attorneys for the parties in the case. The testimony of a witness who, for some reason, cannot be present to testify from the witness stand may be presented in writing under oath, in the form of a deposition. Such testimony is entitled to the same consideration, and is to be judged as to credibility, and weighed, and otherwise considered by the jury, in so far as possible, in the same way as if the witness had been present, and had testified from the witness stand.

Also during the trial of this case, testimony of the Parties may have been presented to you in writing under oath, in the form of depositions or answers to interrogatories. You are instructed that such testimony is entitled to the same consideration, and is to be judged as to credibility, and weighed, and otherwise considered by the jury, in so far as possible, in the same way as if the parties had testified from the witness stand.

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 9**

**<u>Interrogatories</u>**

You have heard and seen evidence in this case which is in the form of interrogatories.

Interrogatories are written questions posed by one side which call for written answers under oath from the other side. Both the questions and answers are made prior to trial after the case has begun in what is called pretrial discovery, and each side is entitled to seek such discovery from the other.

You may consider a party's answers to interrogatories as evidence against a party who made the answer, just as you would any other evidence which has been admitted in this case.

In this regard, you are not required to consider a party's answers to interrogatories as true nor are you required to give them more weight than any other evidence. It is up to you to determine what weight, if any, should be given to the interrogatory answers which have been admitted as evidence.

One cautionary word on this subject: while you may consider the interrogatory answers as evidence against the party who gave the answers, you may not consider the answers against any other party, nor may you consider the answers as evidence against the party who posed the interrogatory questions. You may only consider the interrogatory answer as evidence against the party who gave the answer.

Source: Matthew Bender's Modern Federal Jury Instructions (Civil), General Evidence Instructions No. 74-13 (2009).

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 10**

**<u>Inference Defined</u>**

During the trial you have heard the attorneys use the term "inference" and in their arguments they have asked you to infer, on the basis of your reason, experience, and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess. It is a reasoned, logical conclusion that a disputed fact exists on the basis of another fact which has been shown to exist.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence. The plaintiff asks you to draw one set of inferences, while the defense asks you to draw another. It is for you, and you alone, to decide what inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a deduction or conclusion which you, the jury, are permitted to draw - but not required to draw - from the facts which have been established by either direct or circumstantial evidence. In drawing inferences, you should exercise your common sense.

So, while you are considering the evidence presented to you, you are permitted to draw, from the facts which you find to be proven, such reasonable inferences as would be justified in light of your experience.

Source: Matthew Bender's Modern Federal Jury Instructions (Civil), Inferences and Presumptions, Instruction No. 75-1 (2009); <u>Daniels v. Twin Oaks Nursing Home, 692 F.2d 1321 (11th Cir. 1982)</u>.

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 11**

**Rebuttable Presumption Defined**

You have heard arguments by counsel which call on you to make certain presumptions.

What is a presumption? A presumption requires you to find one fact from the existence of another fact.

Before you may find the presumed fact to exist, you must, therefore, determine whether the underlying or basic fact has been proved. Only if you find the basic fact to exist will the presumption operate to require you to find that the presumed fact also was proved.

One word of caution. The mere existence of a presumption never shifts the burden of proof. In this case, even if you find the basic fact that compels you to find the presumed fact, the burden of proof still remains on the plaintiff to provide all the elements of its claim The presumptive fact, therefore, would only be a circumstance to be considered along with all of the other circumstances in this case in deciding the issue of liability.

Source: Matthew Bender's Modern Federal Jury Instructions (Civil), Inferences and Presumptions, Instruction No. 75-8 (2009), modified; Ulster County Court v. Allen, 442 U.S. 140, 99 S. Ct. 2213 (1979)

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 12**

**Stipulated Facts/Judicial Notice**

Statements and arguments of counsel are not evidence in the case. When, however, the attorneys on both sides stipulate or agree as to the existence of a fact, the jury must, unless otherwise instructed, accept the stipulation and regard that fact as proved.

The Court may take judicial notice of certain facts or events. When the Court declares that it will take judicial notice of some fact or event, the jury must, unless otherwise instructed, accept the Court's declaration as conclusive of any fact judicially noticed, and regard as proved the fact or event which has been judicially noticed.

Source: Arrington v. State of Florida, 233 So.2d 634 (Fla. 1970); and Rule 201(g), Federal Rules of Evidence.

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 13**

**The Claims and Defenses at Issue**

Plaintiffs have sued Defendants.  Plaintiffs have accused all Defendants of Trademark Infringement under the Lanham Act, Trademark Infringement Based on Reverse Confusion and Reverse Palming Off under the Lanham Act, of False Association/False Designation of Origin under the Lanham Act, of Unfair Competition under the Lanham Act, of False Advertising under the Lanham Act, of Trademark Dilution under the Lanham Act, of Tradename Infringement under the Common Law, of Unfair Competition by Misappropriation and Reverse Passing Off under the Common Law, Unfair Competition by Passing Off under the Common Law, of Unfair Competition under the Common Law, of Misappropriation of Trade Secrets under New York state law, of Deceptive and Unfair Trade Practices under Florida state law, of Tortious Interference, Breach of Confidentiality Agreement, and of Inducing Breach of Contract.

Plaintiffs assert that it owns common law trademarks: "MR. CHOW."  Plaintiffs assert that it owns a Federal trademark registration for the mark, "MR. CHOW," of which Plaintiffs asserts is a famous trademark within the meaning of the Lanham Act. Defendants dispute that Plaintiffs are the owners of these trademarks or registrations, that registrations are valid, and that the trademarks are famous.  Defendants assert that Plaintiffs have abandoned the "MR. CHOW" mark by not using the seven characters of the mark, as registered.  Plaintiffs use "MR CHOW" without the registered punctuation mark not "MR. CHOW."

Plaintiffs contend that Defendants have violated their rights to these trademarks by using the name "PHILIPPE BY PHILIPPE CHOW" and by using Plaintiffs' claimed trademarks in commerce in connection with restaurants associated with this trademark.  With respect to trademark rights, Plaintiffs contends that Defendants are liable to them on eleven related theories.

Many of these claims are very similar, in that the Plaintiffs must prove that it owns a valid mark and that there is a likelihood of confusion as to source or sponsorship of the services at issue.

Defendants have denied all of Plaintiffs' claims and in addition have asserted certain affirmative defenses to Plaintiffs' claims.

I will give you more detailed instructions on each of the parties' claims and defenses. Plaintiffs have the burden of proving by a preponderance of the evidence its claims against Defendants. Defendants have the burden of proving by a preponderance of the evidence their defenses.

As I instructed you earlier, a preponderance of the evidence simply means an amount of evidence which is enough to persuade you that a claim or a defense is more likely true than not true.

Source: Plaintiffs' Third Amended Complaint; Defendants' Answer and Affirmative Defenses.

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 14**

**Definition of Trademark**

The term "trademark" includes any word, name, symbol or device or any combination thereof, adopted and used by manufacturer or merchant to identify and distinguish its goods or services from those manufactured, sold or offered by others and to indicate the source of the goods or services, even if that source is unknown.

The main function of a trademark is to identify and distinguish goods or services as a product of a particular manufacturer or merchant and to protect its goodwill against the sale of another's product or services as its own.

A trademark is also a merchandising symbol that helps a prospective purchaser to select the goods or services the purchaser wants. A trademark signifies that all goods or services bearing the mark derive from a single source and are equivalent in quality. There is therefore a public interest in the use of trademarks.

Source: 15 U.S.C. § 1129; Matthew Bender's Modern Federal Jury Instructions (Civil), Trademark, General Instruction No. 86A-1 (2009) (modified).

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 15**

**<u>Types of Trademarks</u>**

Trademarks can be classified according to their degree of distinctiveness. Arranged in an increasing order of distinctiveness, there are four classifications of marks, which are:

(1) Generic - A generic mark is one that answers the question "what is the product being sold?" In other words, the mark's principal significance to prospective purchasers is as the common name for a type of product, and not as identification of the source of the product. For example, the term "BRICK OVEN" is the common name for pizza cooked in a brick oven. No one can own trademark rights or exclude others from using a generic mark. Such marks are not distinctive at all. In other words, a person cannot seek to protect "Brick Oven" brand pizza. Generic marks remain in the public domain as part of our language. As a matter of law, the term "Milk" is generic for products consisting of the beverage milk, the term "Apple" is generic for products consisting of the fruit apple, and the term "Home" is generic for products consisting of residential buildings.

(2) Merely Descriptive - A merely descriptive mark is one that draws attention to the ingredients, characteristics, purpose, quality or nature of the product. Thus, a term can be descriptive in two ways. It can literally describe the products or ingredients, or it can describe the purpose or utility of the product. For instance the word "apple" is descriptive when used in the trademark "CranApple" to designate a cranberry-apple juice. It directly describes ingredients of the juice. Other common types of descriptive trademarks identify where a product or service comes from, or the name of the person who makes or sells the product or service. Thus, the words "Apple Valley Juice" affixed to cider from the California town of Apple Valley is a descriptive trademark because it geographically describes where the cider comes from.

A merely descriptive mark is ordinarily not distinctive and may only be eligible for protection under certain circumstances. Plaintiffs would need to prove that its merely descriptive mark had acquired distinctiveness (i.e., acquired "secondary meaning") among consumers of its products. I will instruct you on what "secondary meaning" means and how to determine if a mark has acquired it in a moment.

(3) Suggestive - A suggestive mark is one that suggests what the product is without actually being descriptive of it. It requires an effort of the consumers' imagination to be understood as descriptive. In general, the imagination required to link a suggestive mark with the corresponding product refers to the mental process required to connect a name that is incongruous or figurative with the product. For example, "Roach Motel" with an insect trap or "Tide" with soap.

Due to this effort of imagination, a suggestive mark is inherently distinctive at the time of its first use and, thus, does not need to acquire secondary meaning to be protectable.

(4) Arbitrary or Fanciful - An arbitrary or fanciful mark bears absolutely no relationship to the products being sold or their characteristics. For example, the mark "Apple" is arbitrary in relation to selling computers, and the mark "Exxon" is fanciful in relation to selling gasoline because it is entirely made-up.

Arbitrary and fanciful marks are also inherently distinctive at the time of its first use and, thus, do not need to acquire secondary meaning to be protectable.

"Secondary Meaning" means that a word through usage has acquired a special meaning as indicating the goods or business of a particular person or company as distinguished from a common or general meaning.

Source : 3A Fed. Jru Prac & Instr. § 159.61, 159.63, 159.76, and 159.77 (modified); 9th Cir. Civ. Jury Instr 18.16 (2001); Gift of Learning Foundation, Inc. V. TGC, Inc., 329 F.3d 792, 797-98 (11th Cir. 2003); Schwan's IP, LLC v. Kraft Pizza Co., 379 F.Supp.2d 1016, 1021 (D.Minn. 2005); Pizzazz Pizza & Restaurant v. Taco Bell Corp., 642 F. Supp. 88, 91 (N.D. Ohio 1986); 20th Century Wear, Inc. V. Sanmark-Stardust, Inc., 747 F.2d 81, 87-88 (2nd Cir. 1984); G. Heileman Brewing Co., Inc. V. Anheuser-Busch, Inc., 873 F.2d 985, 997 (7th Cir. 1989); Custom Vehicles, Inc. V. Forest River, Inc., 476 F.3d 481, 486 (7th Cir. 2007); NBA Properties, Inc. v. Dahlonega Mint, Inc., 41 F. Supp. 2d 1341 (N.D. Ga. 1998).

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 16**

**<u>Owner of Trademark</u>**

The law entitles the owner of a trademark to permit or exclude others from using that trademark. The owner of a trademark may enforce the right to exclude others in an action for trademark infringement.

Source: <u>15 U.S.C. § 1114(1)</u>; Matthew Bender's Modern Federal Jury Instructions (Civil), Trademark, General Instruction No. 86A-2 (2009).

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 17**

**<u>Right of Exclusive Use versus Third Party Use of Trademarks</u>**

When a manufacturer or merchant has established a trademark right with respect to a product before anyone else, the right to use it becomes an exclusive right, and the trademark becomes the property of the manufacturer or merchant. No other person may then use the same or similar words, symbols, designs, or devices in any manner likely to cause consumer confusion regarding the source or origin of those goods. The manufacturer or merchant may enforce the right to exclude others in an action for trademark infringement.

However, Courts have consistently recognized the goal of preventing our trademark laws from substituting for patent law and becoming a tool by which a party gains a monopoly and effectively extinguishes competition. Indeed, the United States Supreme Court has explained that: "there are two rules which are not to be overlooked. No one can claim protection for the exclusive use of a trademark or tradename, which would practically give him a monopoly in the sale of any goods other than those produced or made by himself. If he could, the public would be injured rather than protected, for competition would be destroyed. Nor can a generic name, or a name merely descriptive of an article of trade, of its qualities, ingredients, or characteristics, be employed as a trademark and the exclusive use of it be entitled to legal protection."

Accordingly, you should consider third parties' rights, if any, to use the trademark at issue in this case. Likewise, third-party use of a mark must be considered in assessing the strength of Plaintiffs' claim to ownership of exclusive rights in the mark and the level of protection, if any, to afford Plaintiffs' mark. If you find that there is evidence of extensive third-party use of the mark or similar marks, Plaintiffs' claim to ownership of exclusive rights (or to trademark distinctiveness) in the mark is weakened.

Source: 15 U.S.C. §§ 1114(1), 1115(a), 1065; Matthew Bender's Modern Federal Jury Instructions (Civil), Trademark, General Instruction No. 86A-6 (2009); Canal Co. v. Clark, 80 U.S. 311, 323 (1871); Michael Caruso and Co., Inc. v. Estefan Enterprises, Inc., 994 F.Supp. 1454, 1459-60 (S.D.Fla. 1998) (common nature of the term "bongo" along with extensive third party use of the term weakened plaintiff's ability to demonstrate any trademark significance); World Triathlon Corp., Inc. v. Dawn Syndicated Productions, Slip Copy, 2007 WL 2875456, *4 (M.D.Fla.); See Nartron Corp. v. Stmicroelectronics, Inc., 305 F.3d 397, 405 (6th Cir. 2002); A.J. Canfield Co. v. Honickman, 808 F.2d 291, 305 (3d Cir. 1986) ("trademark law seeks to provide a producer neither with a monopoly over a functional characteristic it has originated nor with a monopoly over a particularly effective marketing phrase").

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 18**

**How Trademark Rights Obtained; Effect of Registration**

A manufacturer or merchant may obtain trademark rights through actual use of any word name, symbol or device or any combination thereof, to identify and distinguish its goods or by registration of the trademark coupled with a bona fide intention to use the trademark as to goods in commerce.

A manufacturer or merchant that has obtained trademark rights through use of any word, name, symbol or device or any combination thereof, to identify and distinguish its goods, may apply for and obtain a certificate of registration of the trademark issued by the United States Patent and Trademark Office. A certificate of registration of a trademark is evidence of the validity of the registration, the registrant's ownership of the trademark, and of the registrant's exclusive right to use the trademark in connection with the goods specified in the certificate, subject to any conditions or limitations stated in the certificate.

However, registration of a trademark is not conclusive as to the validity of the trademark. You may also consider any evidence offered by the opposing party that the registered trademark is invalid. From such evidence, you are free to find that a registered trademark is not valid, in accordance with the instruction on the defenses asserted by the defendants, if you find that Defendants have proved by a preponderance of the evidence that the mark is invalid. Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that the registered trademark is invalid.

Source: 15 U.S.C. §§ 1115(a), 1127, 1129, 1057(b); Matthew Bender's Modern Federal Jury Instructions (Civil), Trademark, General Instruction No. 86A-7 (2009).

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 19**

**Federal Trademark Infringement - Effect of Federal Registration**

Federal registration of a trademark does not conclusively determine the validity of the mark; rather, it merely creates a rebuttable presumption of validity.

Source: Carnival Corp. v. SeaEscape Casino Cruises, Inc., 74 F.Supp.2d 1261 (S.D. Fla. 1999); Educational Dev. Corp. v. The Economy Co., 562 F.2d 26, 27 (10th Cir. 1977).

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

## Defendants' Proposed Jury Instruction No. 20

### <u>Notice of Registration Required</u>

For Plaintiffs to recover damages for infringement of a registered trademark, you must find that Plaintiffs have proven by a preponderance of the evidence that Defendants had either statutory or actual notice that Plaintiffs' trademark was registered.

You may find that Defendants had statutory notice if:

(1) Plaintiffs displayed with the "MR. CHOW" mark the words "Registered in U.S. Patent and Trademark Office";

(2) Plaintiffs displayed with the "MR. CHOW" mark the words "Res U.S. Pat. & Tm. Off."; or

(3) Plaintiffs displayed with the "MR. CHOW" mark the letter "R" enclosed within a circle, thus: ®.

Source: 15 U.S.C. § 1111; Matthew Bender's Modern Federal Jury Instructions (Civil), Trademark, Instruction No. 86A-21 (2009).

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 21**

**Trademark Infringement Elements and Burdens of Proof**

In Count I of its Third Amended Complaint, Plaintiffs allege that Defendants have infringed on its use of "MR. CHOW."  On Plaintiffs' claim for trademark infringement, Plaintiffs have the burden of proving each of the following elements by a preponderance of the evidence that:

1. "MR. CHOW" is a valid, protectable trademark;

2. Plaintiffs owns the Federal trademark registrations for "MR. CHOW"; and

3. Defendants used a substantially similar mark to Plaintiffs' trademark without the consent of Plaintiffs;

4. Defendants used the substantially similar mark in a manner that was and is likely to cause confusion among the reasonable and ordinary customers and consumers of Defendants' services as to the source or origin of Defendants' services; and

5. Plaintiff was damaged by Defendants' use of the substantially similar mark.

Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true.

If you find that Plaintiffs have failed to prove any one of the elements on which Plaintiffs have the burden of proof, then your verdict should be for Defendants and against Plaintiffs on Plaintiffs' claims. If, on the other hand, you find that Plaintiffs have proven all of the elements on which Plaintiffs have the burden of proof, then you should proceed to consider the affirmative defenses asserted by Defendants against Plaintiffs' claims.

Source: Ninth Circuit Model Civil Jury Instructions, 15.5. Source: (modified); McCarthy on Trademarks, § 30:74.

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 22**

**<u>Likelihood of Confusion</u>**

Plaintiffs must also prove there is a likelihood of confusion. In determining whether a consumer is likely to be confused, likely to make mistakes, or likely to be deceived, you should consider ordinary consumers who are neither overly careful nor overly careless.

You are instructed that it is not necessary to find actual confusion in order to find a likelihood of confusion. However, evidence of actual confusion is the best evidence of a likelihood of confusion.

In answering whether there was a likelihood of confusion in the mind of the consumer, you may draw on your common knowledge and experience as citizens of the community, and you may also consider the following factors:

**1. Strength or weakness of Plaintiffs' marks**. Strong marks receive a broad level of protection under the trademark laws; weak marks receive a narrower range of protection. A mark's strength is measured by its distinctiveness. Fanciful and arbitrary marks are inherently distinctive and therefore inherently strong and typically entitled to a greater range of protection. On the other end of the spectrum, descriptive marks and geographically descriptive marks may not be distinctive at all, and therefore, may be weak and entitled to a narrower range of protection, if any.

**2. Degree of similarity or dissimilarity between the two marks**. In evaluating the similarity or dissimilarity of the respective marks, each mark must be considered as a whole. Likelihood of confusion cannot be based on dissection of a mark, that is, on only part of a mark. The mere fact that both marks share a common term does not by itself make the marks similar enough to establish likelihood of confusion. There is nothing improper in giving more or less weight to a particular feature of a mark, if that particular feature is highly distinctive and is the

dominant portion of the mark. Ultimately, however, any conclusion as to the similarity or dissimilarity of the marks must rest on consideration of the marks in their entireties. You must consider the overall impression created by the marks, keeping in mind all the things that the general buying public will likely perceive and remember about the marks, including their similarities in sight, sound, and meaning, as well as designs, fonts, colors, and other elements.

**3. Competitive proximity or similarity of the parties' products or services**. If both parties use their marks to market the same, related, or complementary types of products or services, then the likelihood of confusion increases. If the parties' respective goods or services are unrelated, then the likelihood of confusion decreases. Likewise if the parties are not actually in competition, that is, they are not offering similar products or services in competition against with each other in the same market or industry, even if the respective marks are similar or identical, the likelihood of confusion decreases because the public would be less likely to attribute the products or services of the parties to a single source.

**4. Similarity of the parties' retail outlets, trade channels, and customers**. The likelihood of confusion may increase if the parties' goods and services are sold in the same types of restaurants or through the same agents or distributors. The likelihood of confusion may also increase if the parties' goods and services are sold and promoted to the same type of customers. On the other hand, if the parties do not have their products in the same restaurants and do not have the same kinds of customers, then this factor would lessen the likelihood of confusion. Even if there is some overlap between the parties' restaurants and customers, the ultimate question is whether overlap is significant enough that consumers are likely to be confused.

**5. Similarity of advertising media**. If the parties have similar methods of advertising or use similar media for advertising - for instance, the parties advertise in the same newspaper or with

the same type of direct mailing leaflets - then their target audiences may be similar, which could make it more likely that confusion will occur. On the other hand, if the parties do not have similar advertising media, or if one party does not advertise at all, this would tend to lessen any potential for confusion among consumers. Again, even if there is some overlap between the parties' methods of advertising, the ultimate question is whether overlap is significant enough that consumers are likely to be confused.

**6. Sophistication of Consumers**. More sophisticated buyers, or purchasers of more sophisticated goods or services, are likely to be more careful and discriminating when purchasing those goods or services. Consequently, such consumers may be less likely to be confused by similarities in the parties' marks. Conversely, if the potential buyers are less sophisticated, or if the products in question are common commodity items, the likelihood of confusion may increase.

**7. Actual confusion**. Actual confusion among customers is the best evidence of likelihood of confusion. If Defendants' use of a mark has led to instances of actual confusion among relevant consumers, this may be a strong indication that confusion is likely. However, even if there are instances of actual confusion, you may conclude that there is no likelihood of confusion if, for example, the instances of actual conclusion were rare and infrequent, or if the evidence of actual confusion is vague or self-serving to the party presenting such evidence.

**8. Defendants' Intent**. Proof of Defendants' intent to confuse or deceive consumers by adopting and using a mark that is the same or similar to Plaintiffs' marks is not necessary to establish a likelihood of confusion, but is relevant to determining whether or not confusion is likely. Conversely, proof of the Defendants' good faith may also be considered.

**9. Other factors**. Any other factors that bear on likelihood of confusion may also be considered by you.

No one factor or consideration should be considered conclusive, but each aspect should be weighed in light of the total evidence presented at trial.

If Plaintiffs have not proved by the preponderance of the evidence that there is a likelihood of confusion, then you must find for Defendants.

Source: Model Jury Instructions, Copyright, Trademark and Trade Dress Litigation Instruction 2.4.4 (modified); Custom Manufacturing and Engineering, Inc v. Midway Services, Inc., 508 F.3d 641, 648-49 (11th Cir. 2007); Frehling Enters., Inc v. Int'l Select Group, Inc., 192 F.3d 1330 (11th Cir. 1999).

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 23**

**Senior Use of the Mark**

The first to use a mark on a product or service in a particular geographic market acquires rights in the mark in that market. Thus, to determine whether Plaintiffs is the senior user of its trademark, you must determine whether Plaintiffs used its mark "MR. CHOW" in connection with its products and services prior to Defendants' use of their accused mark in connection with their products and services.

In making this determination, you are instructed that "use" of a trademark does not mean merely incorporating under a name, or conceiving of a name, or otherwise deciding to use a name in a manner that is not public and in connection with the actual sales of goods or services.

In this case, the parties claim respective trademark rights to their marks in connection with restaurant services and associated food items. With respect to establishment of trademark rights in a service, sometimes called a "service mark," all that is necessary to establish proper use is to prove that the mark is used or displayed in the sale or advertising of services in such a way as to identify the services of one person or business and distinguish them from the services of others. Proper usage of a mark to identify restaurant services would include, but would not necessarily be limited to, use on menus, signage and advertising, such as newspaper advertising. Even use of a term in advertisements for related products may be sufficient evidence of service mark usage if you determine that Plaintiffs have established that Plaintiffs used "MR. CHOW" before Defendants used "PHILIPPE BY PHILIPPE CHOW," then you have determined that Plaintiffs have priority.

Source: Popular Bank v. Banco Popular, 9 F. Supp. 2d 1347, 1353 (S.D. Fla. 1998); McCarthy v.2, sec. 16:33.

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 24**

**<u>Concurrent Use of Marks</u>**

It is legally possible to have two companies using the same or similar trademarks for competing products, concurrently (i.e., at the same time), without having any liability to each other.

Source: 3A Fed. Jury Prac. & Instr. § 159.73 (5th ed.).

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 25**

**Federal Trademark Infringement Based on Reverse Confusion**

**and Reverse Palming Off under 15 U.S.C. 1125(a)**

In Count II of its Third Amended Complaint, Plaintiffs allege that Defendants have infringed on its use of "MR. CHOW" by Reverse Confusion.  On Plaintiffs' claim for trademark infringement, Plaintiff has the burden of proving each of the following elements by a preponderance of the evidence that:

1. "MR. CHOW" is a valid, protectable trademark;

2. Plaintiffs owns the Federal trademark registrations for "MR. CHOW"; and

3. Defendants used a substantially similar mark to Plaintiffs' two trademarks without the consent of Plaintiffs;

4. Defendants used the substantially similar mark in a manner that was and is likely to cause confusion among the reasonable and ordinary customers and consumers of Defendants' services as to the source or origin of Defendants' services; and

5. Plaintiffs were damaged by Defendants' use of the substantially similar mark.

Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true.

If you find that Plaintiffs have failed to prove any one of the elements on which Plaintiffs have the burden of proof, then your verdict should be for Defendants and against Plaintiffs on Plaintiffs' claims. If, on the other hand, you find that Plaintiffs have proven all of the elements on which Plaintiffs have the burden of proof, then you should proceed to consider the affirmative defenses asserted by Defendants against Plaintiffs' claims.

Reverse confusion occurs when: 1. A senior user of a mark seeks to protect its business identity from being overwhelmed by a larger junior user that has saturated the market with publicity and/or advertising and 2. Consumers doing business with the senior user mistakenly believe that they are dealing with the larger junior user.

Source: 11th Circuit Pattern Jury Instructions (Civil Cases) 2005; Ninth Circuit Model Civil Jury Instructions, 15.5. Source: (modified); McCarthy on Trademarks, § 30:74.

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 26**

**<u>False Designation of Origin</u>**

In Count III of its First Amended Complaint, Plaintiffs allege Defendants falsely represented the services offered by "PHILIPPE BY PHILIPPE CHOW" by creating a deceptively and confusingly similar name to Plaintiffs' "MR. CHOW" mark.

The primary function of the federal "false designation" law is to prevent persons from creating and marketing new products or services that are confusingly similar to existing products and create confusion amongst consumers.

To recover on the claim for false designation, Plaintiffs must prove by a preponderance of the evidence that Defendants adopted a mark confusingly similar to the "MR. CHOW" mark such that there was a likelihood of confusion as to the origin of the goods and services.

The factors relevant to establishing a "false designation" are identical to the factors relevant to establishing a likelihood of confusion with respect to trademark infringement. Thus, in determining the likelihood of confusion, you must consider all of the following factors:

(1) The degree of similarity between the "MR. CHOW" mark and the "PHILIPPE BY PHILIPPE CHOW" name;

(2) The manner and method in which Plaintiffs and Defendants used their respective symbols, including the similarity of the products sold and whether they were sold in the same or similar outlets;

(3) The strength of the "MR. CHOW" mark;

(4) The price of the goods and other factors indicative of the degree of care and attention likely to be used by consumers when making a purchase;

(5) The length of time Defendants used the "PHILIPPE BY PHILIPPE CHOW" name without evidence of actual confusion;

(6) The intent of Defendants in adopting the "PHILIPPE BY PHILIPPE CHOW" name, i.e., did Defendants know its name was similar to Plaintiffs, and did Defendants intend to confuse or deceive;

(7) Evidence, if any, of actual confusion amongst actual or potential consumers;

(8) Other factors about Plaintiffs and Defendants respective symbols that would tend to reduce any tendency to confuse the purchaser about the source or origin of their products;

(9) The extent to which the target of the parties' sales or marketing efforts is the same; and

(10) Other facts suggesting that the consuming public might expect Plaintiffs to manufacture a product in Defendants' market.

If you find by preponderance that Defendants did not adopt a tradename confusingly similar to the "MR. CHOW" mark, you must find for Defendants on Plaintiffs' claim for false designation. However, if the greater weight of the evidence does support Plaintiffs' false designation claim, then you should consider the affirmative defenses raised by Defendants. I will instruct you on those affirmative defenses later.

Source: Ross Bicycles, Inc. Cycles USA, Inc., 765 F.2d 1502, 1503 (11th Cir. 1985); Univ. of Florida v. KPB, Inc., 89 F.3d 773, 776-777 (11th Cir. 1996); Monsanto Co. v. Campuzano, 206 F.Supp.2d 1239, 1246-1248 (S.D. Fla. 2002).

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 27**

**False Advertising under 15 U.S.C. 1125(a)**

In Count IV of its Third Amended Complaint, Plaintiffs allege false advertising.  To establish its claim for false advertising, Plaintiffs must prove by the greater weight of the evidence that:

(1)  Defendants' advertisements or promotions were literally false, or literally true but misleading;

(2)  Defendants' advertisements or promotions deceived, or had the capacity to deceive, consumers;

(3) Defendants' deception has a material effect on purchasing decisions;

(4)  Defendants' advertisements or promotions would have affected interstate commerce; and

(5) Plaintiffs are likely to be injured as a result of the false advertising.

To find that any item of commercial advertising or promotion at issue in this case constitutes false advertising, you must find that such item is "literally false" as a purely factual matter. If you find that such item is not literally false and is, instead, literally true or otherwise ambiguous, the item may constitute false advertising only if it is "misleading." That means that, even if literally true or ambiguous, the item conveys a false impression or is misleading in context.

If you find that the commercial advertisements or promotions at issue in this case are not literally false, but you also find that they are misleading, then you may only find for Plaintiffs on the false advertising claim if you find that Plaintiffs have shown evidence of actual consumer confusion, in the form of consumer surveys, market research, expert testimony, or other evidence of actual consumer confusion. On the other hand, if Plaintiffs can show that Defendants

intentionally set out to deceive the public, and Defendants deliberate conduct in this regard is of an egregious nature, then you shall presume that consumers are or were, in fact, actually being confused and deceived. In that case, it shall be Defendants burden to show you by the greater weight of the evidence that consumers were not or could not have been confused.

Source: 15 U.S.C. § 1125.

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 28**

**Unfair Competition under 15 U.S.C. 1125(a)**

In Count III of its Third Amended Complaint, Plaintiffs allege that Defendants engaged in unfair competition against Plaintiffs by using the "PHILIPPE BY PHILIPPE CHOW" name to offer goods and services in commerce that was deceptively and confusingly similar to the services offered under Plaintiffs "MR. CHOW" mark.

To recover on the claim for unfair competition, Plaintiffs must prove by a preponderance of the evidence:

1. Defendants used the "PHILIPPE BY PHILIPPE CHOW" name on or in connection with services;

2. The use of the "PHILIPPE BY PHILIPPE CHOW" name is likely to cause confusion or mistake or deceive as to:

      (a) The origin of Defendants' services;

      (b) The affiliation, connection, or association of Defendants with Plaintiffs; or

      (c) The sponsorship or approval of Defendants' services by Plaintiffs; and

3. Plaintiffs were damaged or are likely to be damaged by Defendants' alleged actions.

In considering the likelihood of confusion between the services offered under Plaintiffs' "MR. CHOW" mark and those offered under Defendants' "PHILIPPE BY PHILIPPE CHOW" name, you must consider Defendants' specific activities. For example, you may consider:

1. Whether Defendants used representations or references to "MR. CHOW" in its advertisements or on its website;

2. Whether Defendants evaded consumer inquiries regarding its connection with Plaintiffs; and

3. Whether Defendants' activities, taken as a whole, evinced a likelihood of confusion.

If the preponderance of the evidence does not show that Defendants' use of the "PHILIPPE BY PHILIPPE CHOW" name was likely to lead consumers to confuse Defendants' services offered under that name with Plantiffs' services offered under its "MR. CHOW" mark, you must find for Defendants on Plaintiffs' claim for unfair competition. However, if the preponderance of the evidence does support Plaintiffs' claim, then you should consider the affirmative defenses raised by Defendants. I will instruct you on those affirmative defenses later.

Source: Junior Food Stores of West Florida, Inc. v. Jr. Food Stores, Inc., 226 So.2d 393, 397 (Fla. 1969); Kentucky Fried Chicken Corp v. Diversified Packaging Corp., 549 F.2d 368, 381-383 (5th Cir. 1977); Chassis Master Corp. v. Borrego, 610 F. Supp. 473 (S.D. Fla. 1985); Contemporary Restaurant Concepts, Ltd. v. Las Tapas-Jacksonville, Inc., 753 F. Supp. 1560, 1565 (M.D. Fla. 1991); American Bank of Merritt Island v. First Am. Bank and Trust, 455 So.2d 443, 445-46 (Fla. 5th DCA 1984); PetMed Express, Inc. v. MedPets.com, Inc., 336 F.Supp.2d 1213, 1219 (S.D. Fla. 2004); American United Life Ins. Co. v. American United Ins. Co., 731 F.Supp. 480, 486 (S.D. Fla. 1990).

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 29**

**Dilution of Famous Trademark under 15 U.S.C. 1125(c)**

In Count V of its Third Amended Complaint, Plaintiffs allege that its mark is famous and that Defendants diluted it.  To prevail on a claim for trademark "dilution" under the Lanham Act, Plaintiffs must demonstrate that:

1)      Its trademark/service mark is famous; and

2)      Defendants adopted the name after the Plaintiffs' mark became famous; and

3)      The Defendants' name diluted the Plaintiff's mark; and

4)      Defendants' use was commercial and in commerce.

"Dilution" occurs when unauthorized use of a trademark/service mark diminishes or whittles away the value of the trademark/service mark. The following factors determine the fame and distinction of the mark:

(1)      The degree of inherent or acquired distinctiveness of the mark;

(2)      The duration and extent of use of the mark in connection with the goods and services with which the mark is used;

(3)       The duration and extent of advertising and publicity of the mark;

(4)      The geographical extent of the trading area in which the mark is used;

(5)      The channels of trade of the goods or services with which the mark is used;

(6)      The degree of recognition of the mark in the trading areas and channels of trade used by the mark's owner and the person against whom relief is sought;

(7)      The nature and extent of use of the same or similar marks by third parties; and

(8)      Whether the mark was registered under Federal law.

If you find Plaintiffs' trademark/service mark is famous, you may find that Defendants have caused "dilution" of Plaintiffs' trademark/service mark if you find that Defendants' use of Plaintiffs' trademark/service mark has either:

(1)     Weakened   the   connection   in   consumers'   minds   between   Plaintiffs' trademark/service mark and Plaintiffs' goods and services; or

(2)     Tarnished   the   trademark/service   mark   because   Defendants'   use   was   unsavory, unwholesome or used in conjunction with inferior products or services.

Source: 15 U.S.C. § 1125.

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 30**

**Common Law Tradename Infringement**

In Count VI of its Third Amended Complaint, Plaintiffs allege that it owns common law rights in connection with "MR. CHOW," which rights it alleges are superior to any rights Defendants claim.  Defendants deny infringing the tradename and argue that there is no likelihood of confusion between Defendants and Plaintiffs tradenames.

A tradename owner may enforce the right to exclude others in an action for infringement. The term "tradename" means any word or words used by a person to identify that person's business. A tradename symbolizes the reputation of a person's business as a whole.  A person may acquire the right to exclude others from using a tradename by being the first to use it in the marketplace. Rights in a tradename are obtained only through commercial use of the tradename. The owner of a tradename has the right to exclude others unless the tradename has been abandoned.

Furthermore, any corporation who, on or in connection with any goods or services, uses in commerce any word, term, or name, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such corporation with another corporation, or as to the origin, sponsorship, or approval of its goods, services, or commercial activities by another corporation shall be liable in a civil action to any corporation who believes it is likely to be damaged by such act.

In proving infringement of Plaintiffs' tradename, Plaintiffs have the burden of proving each of the following by a preponderance of the evidence:

(1)    Plaintiffs began use of the term "MR. CHOW" as a tradename for goods and services;

(2)      Defendants began to use the tradename "PHILIPPE BY PHILIPPE CHOW" after Plaintiffs in an area where Plaintiffs were already selling goods and services;

(3)      Defendants' use of the tradename was without the consent of Plaintiffs;

(4)      The tradename, "MR. CHOW," is inherently distinctive; and

(5)      Defendants' use of the "PHILIPPE BY PHILIPPE CHOW" name is likely to cause confusion among ordinary purchasers as to the source of the goods and services.

In determining whether there is or will be a likelihood of confusion caused by the use of Plaintiffs' tradename "MR. CHOW" and Defendants' tradename "PHILIPPE BY PHILIPPE CHOW" in connection with the goods and services that each company provides, you may draw on your common experience as citizens of the community.  In addition to the general knowledge you have acquired throughout your lifetimes, you may also consider:

1.      The strength of Plaintiffs' tradename;

2.      The similarity between Plaintiffs' tradename and the allegedly infringing name;

3.      The similarly between the products and services offered by Plaintiffs and Defendants;

4.      The similarly of the sales methods;

5.      The similarity of the advertising methods;

6.      Defendants' intent; and

7.      Proof of actual confusion.

In light of these considerations and your common experience, you must determine if ordinary consumers, neither overly careful nor overly careless, would be confused as to the origin of the goods and services. No one factor or consideration is conclusive, but each aspect should be weighed in light of the total evidence presented at trial.

Tradename law protects distinctive or strong tradenames. On the other hand, tradenames that are not as distinctive or strong are referred to as "weak" names and receive less protection from infringing uses. Tradenames that are not distinctive are not entitled to any tradename protection.

The strength of a tradename is an important factor to consider in determining whether the name used by Defendants creates a likelihood of confusion with Plaintiffs' tradename.

Tradenames can be grouped into four categories according to their relative strength or distinctiveness. These four categories are, in order of their strength or distinctiveness: arbitrary, suggestive, descriptive and generic trade names.

The first category is arbitrary tradenames. Arbitrary tradenames are inherently distinctive. They are considered strong tradenames and are clearly protectable. Arbitrary tradenames involve the arbitrary, fanciful or fictitious use of a word to designate the source of a product. An arbitrary tradename is a word that in no way describes the particular product it is meant to identify. An arbitrary trade name may be a common word used in an unfamiliar way. An arbitrary tradename may be a newly created or coined word or parts of common words that are applied in a fanciful, fictitious, or unfamiliar way, solely as a tradename.

The second category of tradenames is suggestive tradenames. These tradenames are also inherently distinctive but are considered weaker than arbitrary tradenames. Unlike arbitrary tradenames, suggestive tradenames suggest some characteristic or quality of the product to which they are attached.

The third category of tradenames is descriptive tradenames. These tradenames directly identify or describe some aspect, characteristic, or quality of the product to which they are affixed.

The fourth category of tradenames is generic tradenames. These tradenames are not entitled to any protection at all. These tradenames are part of our common language that we use to identify all such similar products. These generic tradenames are the common tradename for the products to which they are affixed.  If the term answers the question "what is the product being sold?" the term is generic. If the average relevant consumer would identify the term with all such similar products, regardless of the manufacturer or provider, the term is generic and not entitled to protection as a tradename.

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

## Defendants' Proposed Jury Instruction No. 31

### Common Law Unfair Competition by Misappropriation and Reverse Passing Off

In Count VII of its Third Amended Complaint, Plaintiffs alleged that Defendants have engaged in unfair competition by misappropriation and reverse passing off.  Plaintiffs have presented no evidence to support its claim that Defendants have misappropriated Plaintiffs alleged "trade secrets."

The provisions of Florida's Trade Secrets Act: "displace conflicting tort, restitutory, and other law of this state providing civil remedies for misappropriation of a trade secret."  Thus, the Trade Secrets Act preempts any common law claims based upon alleged misappropriation of proprietary information.

 "Trade secret" is defined as follows: (4) "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process that: (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

In order to establish the existence of a "trade secret," Plaintiffs in a trade secrets action have the burden of proving both: (a) that the information it seeks to protect is a trade secret; and (b) that Plaintiffs have taken reasonable steps to protect its secrecy.  Information that is generally known or readily accessible to third parties does not qualify for protection as a trade secret.  Moreover, an employer may not preclude its former employees from "utilizing contacts and expertise gained during his former employment."

Source: §688.008(a), Fla. Stat. (2001); §688.002(4), Fla. Stat. (2001); Allegiance Healthcare Corp. v. Coleman, 232 F.Supp.2d 1329 (S. D. Fla. 2002); Lee v. Cercoa, Inc., 433 So.2d 1, 2 (Fla. 4th DCA 1983); Bestechnologies, Inc. v. Trident Environmental Systems, Inc., 681 So.2d 1175, 1176 (Fla. 2d- DCA 1996); American Red Cross v. Palm Beach Blood Bank, Inc., 143 F. 3d 1407 (11th Cir. 1998); Templeton v. Creative Loafing Tampa, Inc., 552 So.2d 288 (Fla. 2d DCA 1989).

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 32**

**Common Law Unfair Competition by Passing Off**

In Count VIII of its Third Amended Complaint, Plaintiffs have sued Defendants for Unfair Competition by Passing Off.  Unfair competition occurs when one business entity "palms off" its products as those of another. The central inquiry is whether Defendants are "passing off" their goods as those of Plaintiffs. In order to find that Defendants have violated Florida common law of unfair competition, Plaintiffs must establish by a preponderance of the evidence that Plaintiffs' "MR. CHOW" trademark has acquired a secondary meaning and that there is a likelihood of confusion.

Therefore, if you find that Defendants have not infringed on Plaintiffs' "MR. CHOW" mark, then you must find that Defendants have not unfairly competed with Plaintiffs with respect to the trademark.

Source: Nexxus Products Co. v. Gentle Concepts, Inc., 1993 WL 496824, at *11 (M.D. Fla. 4/30/93); Tally-Ho, Inc. v. Coast Community College District, 889 F.2d 1018, 1026, n. 14 (11th Cir. 1989); Burger King Corp. v. Pilgrim's Pride Corp., 12 U.S.P.Q.2d 1526, 1533 (S.D. Fla. 1988), aff'd., 894 F.2d 412 (1990); American Television v. American Communications, 810 F.2d 1546, 1548 (11th Cir. 1987); Sun Banks of Florida v. Sun Federal Savings & Loan, 651 F.2d 311 (5th Cir. 1981); B.H. Bunn v. AAA Replacement Parts Co., 451 F.2d 1254 (5th Cir. 1971); Chemical Corp. of America v. Anheuser-Busch, Inc., 306 F.2d 443, 438 (5th Cir. 1962).

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 33**

**Common Law Unfair Competition Claims**

In Count IX of its Third Amended Complaint, Plaintiffs have sued Defendants for Unfair Competition under the Common Law.  In Florida, "[t]he analysis of the … statutory and common law claims of trademark infringement and unfair competition is the same as under the federal trademark infringement claim."  Therefore, to prove a violation of common law unfair competition laws, Plaintiffs must prove the same elements as for a Federal Unfair Competition Claim. Therefore, if Plaintiffs fail to prove the Federal Unfair Competition Claim, the common law claim must also fail.

Plaintiffs must prove by the preponderance of the evidence that:

(1)      Plaintiffs first adopted and used the term "MR. CHOW" in a certain market as a means of establishing good will and reputation

(2)      Plaintiffs adopted and used the term "MR. CHOW" to describe, identify or denominate particular services rendered or offered by it and to distinguish them from similar services offered by others, and

(3)      Through its association with such services the term "MR. CHOW" has acquired a special significance as the name of the services rendered by Plaintiffs in its trade area because the term "MR. CHOW", while generic, descriptive, or geographic, has, by actual usage, acquired in a certain trade area, a secondary, special or trade meaning as indicating, describing, identifying or denominating Plaintiffs as the source of certain services (or goods), and

(4)      Defendants have used an identical or confusingly similar tradename to indicate or identify similar services rendered by it in competition with Plaintiffs in the same trade areas in which Plaintiffs has already established its tradename, and

(5)     As a consequence of Defendants' actions, customer confusion of source or as

to the sponsorship of the services offered by Defendants is probable (likely) or inevitable.

Source: Custom Mfg. and Engineering Inc. v. Midway Services, Inc., 508 F.3d 641 (11th Cir. 2007); Bavaro Palace, S.A. v. Vacation Tours, Inc., 203 Fed. Appx. 252, 256 (11th Cir. 2006); Tally-Ho, Inc. v. Coast Community College Dist., 889 F.2d 1018, 1026 (11th Cir. Fla. 1989) (citing American Bank of Merritt Island v. First American Bank & Trust, 455 So. 2d 443, 446 (Fla. Dist. Ct. App. 5th Dist. 1984).

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 34**

**<u>Misappropriation of Trade Secrets under New York Law</u>**

In Count X of its Third Amended Complaint, Plaintiffs have sued Defendants for Misappropriation of Trade Secrets under New York Law. Plaintiffs must show by a preponderance of the evidence that information it identified meets the following definition of trade secrets. A trade secret is any formula, pattern, device, or compilation of information used in a business that affords a demonstrable competitive advantage to the person who knows the secret. The subject matter of a trade secret must, of course, be secret. Matters of general knowledge, skill or experience in an industry cannot be a trade secret. The alleged trade secrets must also be subject to reasonable measures to protect their secrecy and must derive value from the fact that they are not generally known or readily ascertainable from public sources. Trade secret protection is also lost if the secret is disclosed to the public.

In determining whether Plaintiffs have established by a preponderance of the evidence that the identified information meets this definition of trade secret, you may consider the following factors:

(1)     The extent to which the information was known outside of Plaintiffs' business;

(2)     The extent to which it was known by employees and others involved in Plaintiffs' business;

(3)     The extent of measures taken by Plaintiffs to guard the secrecy of the information;

(4)     The value of the information to Plaintiffs and its competitors;

(5)     The amount of effort or money expended in developing the information; and

(6)     The ease or difficulty with which the information could be properly acquired or duplicated by others.

Based upon these factors, certain classes of information do not meet the above definition of trade secret. For example, the information is not a trade secret if you determine that the information is generally known or readily ascertainable by others in the industry, such as by reviewing documents filed with government agencies, reviewing web sites, reviewing industry literature, or reviewing Plaintiffs' sales literature. Similarly, information one can learn by asking customers or insurers is not a trade secret.  If you determine that Defendants already knew information alleged to constitute Plaintiffs' trade secrets before it worked at Plaintiffs, that information cannot by definition, be a trade secret.  Also, information that a sales person learns about his or her customers and remembers after leaving employment without "studied memorization" before leaving employment is not a trade secret.

If you determine that Plaintiffs have established by a preponderance of the evidence that the identified information meets the definition I have given you of trade secrets, it must next establish by a preponderance of the evidence that Defendants knew those specific trade secrets. The fact that some employees somewhere in the company may be privy to this information does not necessarily mean that Defendants knew those specific trade secrets.

If Plaintiffs establishes by a preponderance of the evidence that Defendants knew the specific trade secrets, it must also show by a preponderance of the evidence that Plaintiffs have a protectable interest in those secrets superior to the interest of any third parties. If third parties have superior rights in the information, the third parties are entitled to authorize Defendants or others to use it, and that information is not a protectable interest of Plaintiffs.

Lastly, to establish that it has a protectable trade secret Plaintiffs must show by a preponderance of the evidence it has implemented and followed reasonable measures to maintain the secrecy of that information. If Plaintiffs initially took some measures to maintain secrecy of

information but thereafter disclosed that information to third parties, such as customers, insurers, contractors, government agencies or attendees of conferences without imposing obligations of secrecy, Plaintiffs did not take reasonable measures to maintain the secrecy of that specific information. By the same token, if third parties such as carriers or customers chose to make information available to the public, to third parties, or to Defendants, even though Plaintiffs took reasonable measures to maintain that information as a trade secret, the information is no longer a trade secret.

The mere fact that Plaintiffs say that particular information is a trade secret or confidential or took measures to try to keep particular information secret does not make it a secret if, in fact, the information is generally known or readily ascertainable by others in the industry.

To find Defendants liable for misappropriation of trade secrets, you must find by the preponderance of the evidence that Plaintiffs had specific, identifiable trade secrets that were acquired by Defendants as a result of a confidential relationship and that Defendants used these secrets in developing or making its product.

Source: Ashland Management v. Janien, 82 N.Y.2d 395, 407, 624 N.E.2d 1007, 1013, 604 N.Y.S.2d 912, 918 (1993) ( citing Restatement (Second) of Torts § 757, cmt. b)); Ashland, 82 N.Y.2d at 407, 624 N.E.2d at 1013, 604 N.Y.S.2d at 918; Jay's Custom Stringing, Inc. v. Yu, No. 01 Civ. 1690 (WHP), 2001 WL 761067, at *6 (S.D.N.Y. July 6, 2001); Tactica Int'l, Inc. v. Atlantic Horizon Int'l, Inc., No. 01 Civ. 1234 (SAS), 2001 WL 434496, at *16 (S.D.N.Y. Apr. 27, 2001); Savannah Bank, N.A. v. Savings Bank of the Fingerlakes, 261 A.D.2d 917, 918, 691 N.Y.S.2d 227, 229 (4th Dep't 1999); Business Networks of New York, Inc. v. Complete Network Solutions, Inc., No. 605463/98, 1999 WL 126088, at *9 (N.Y. Sup. Ct. Feb. 19) aff'd, 265 A.D.2d 194, 696 N.Y.S.2d (1st Dep't 1999); see also 1 Roger M. Milgrim, Milgrim on Trade Secrets, § 1.07 [1] (2001); Jay's Custom Stringing, Inc. v. Yu, No. 01 Civ. 1690 (WHP), 2001 WL 761067 (July 6, 2001); Arnold K. Davis & Co. v. Ludemann, 160 A.D.2d 614, 615, 559 N.Y.S.2d 240, 241 (1st Dep't 1990) ("An insurance company's customer list is generally not considered to be a trade secret" and "the use of information about an employer's customers which is based on casual memory" is not actionable); Levine v. Bochner, 132 A.D.2d 532, 517 N.Y.S.2d 270 (2d Dep't 1987) (affirming grant of summary judgment for former employee against plaintiff insurance brokerage firm; while brokerage firm claimed broker had misappropriated "extensive knowledge of their clients' insurance needs", the court held that use of customer information based on casual memory is not actionable, and concluded that plaintiff had not established that the information the

broker used was anything that could not be obtained by any insurance agent reviewing the clients' policies); Tactica International, Inc. v. Atlantic Horizon International, Inc., No. 01 Civ. 1234 (SAS), 2001 WL 434496 (S.D.N.Y. Apr. 27, 2001); 3 Fed. Jury Prac. & Instr. § 127.10 (5th ed.); Arthur Murray Dance Studios of Cleveland, Inc. v. Witter, 105 N.E.2d 685, 710 (Ohio 1952) ("In self-serving 'Whereas' clauses an employer cannot state that he is going to confide something unique and hush-hush, and then merely disclose the A. B. Cs or Mother Goose Rhymes, and make that the basis of irreparable injury"); Jay's Custom Stringing, Inc. v. Yu, No. 01 Civ 1690 (WHP), 2001 WL 761067 (July 6, 2001); S.D.N.Y.; Earthweb, Inc. v. Schlack, 71 F.Supp. 2d 299, 308 (S.D.N.Y. 1999), remanded, 208 F.3d 1322, aff'd, No. 99-9302, 2000 WL 1093320 (2d Cir. May 18, 2000), Ivy Mar Co. v. C.R. Seasonals, Ltd., 907 F. Supp. 547, 556 (E.D.N.Y. 1995) (all holding that trade secret protection will not attach to customer information that easily can be recalled or obtained from the customers themselves); Rollins Agency, Inc. v. Forbes, Index No. 10026/98 (Sup. Ct. Westchester Co., July 29, 1998) (defendants cannot be prevented from doing something that other members of the public, including other insurance agents, are able to do, namely using publicly available information); Ivy Mar Co., Inc. v. C.R. Seasonals, Ltd., 907 F. Supp. 547, 556 (E.D.N.Y. 1995) (all holding that trade secret protection will not attach to customer information that easily can be recalled or obtained from the customers themselves).

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 35**

**Florida Unfair Competition/Deceptive and Unlawful Trade Practices**

In Count XI of its Third Amended Complaint, Plaintiffs have sued Defendants for unfair competition and deceptive and unlawful trade practices under the law of the State of Florida. The elements of the unfair competition claim are identical to those in Plaintiffs' claim for Federal trademark infringement and false designation of origin which I have just discussed, and therefore, your findings on these claims should be similarly applied to the claim for Florida unfair competition.

If you find that Plaintiffs have failed to prove any of the elements of its claims against Defendants for Federal trademark infringement or false designation of origin then your verdict should be for the Defendants on the unfair competition claim as well. If, however, you find that Plaintiffs have proven all of the elements of its claims for Federal trademark infringement or false designation of origin against Defendants, then you should next consider the affirmative defenses which Defendants have raised to Plaintiffs' claim.

Source: Investacorp, Inc. v. Arabian Inv. Banking Corp., 931 F. 2d 1519, 1521 (11th Cir. 1991) (the analysis of the Florida statutory and common law claims of trademark infringement and unfair competition is the same as under the federal trademark infringement claim."). See also Custom Manufacturing and Engineering, Inc v. Midway Services, Inc., 508 F.3d 641, 652 (11th Cir. 2007) (analysis of Florida statutory and common law claims of trademark infringement and unfair competition is the same as under Federal trademark infringement statute); Planetary Motion, Inc., v. Techsplosion, Inc., 261 F.3d 1188, 1193 n.4 (11th Cir. 2001) ("Courts may use an analysis of federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims of unfair competition."); Florida Statutes' 501.204; Victoria's Cyber Secret v. Secret Catalogue, 161 F. Supp. 2d 1339 (S.D. Fla. 2001); Third Party Verification v. Signaturelink, 492 F. Supp. 2d 1314 (M.D. Fla. 2007); Airflo A/C and Heating v. Pagan, 929 So. 2d 739 (2006).

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 36**

**Conversion**

In Count XII of its Third Amended Complaint, Plaintiffs have sued Defendants for Conversion. To prevail on this claim, Plaintiffs must prove by a preponderance of the evidence each of the following:

1)      Defendants took possession of or exercised control over Plaintiffs' property, so as to deprive Plaintiffs of this property, or the ability to use or enjoy the property, either permanently or for an indefinite period of time;

2)      At the time Defendants took possession of or exercised control over the property, Plaintiffs owned and were entitled to the immediate possession or enjoyment of the property; and

3)      Defendants' conduct towards Plaintiffs' property was without Plaintiffs' permission and without any other lawful authority.

Plaintiffs have to prove, by a preponderance of the evidence, the elements I have previously instructed you on. If you find that Plaintiffs have not proven their claim for conversion, you must return a verdict for Defendants on this claim. If, however, you find that Plaintiffs have proven the elements of the claim for conversion, then you must return a verdict for Plaintiffs on this claim and then consider what damages, if any, to award Plaintiff in connection with this claim. Again, I will instruct you on damages later.

Source: Gemb Lending, Inc. v. RV Sales of Broward. Inc., 2010 WL 3385343, *6 (S.D. Fla. 2010) (listing elements of a conversion claim); Jerue v. Holladay, 945 So. 2d 589, 590 (Fla. 2d DCA 2006) (plaintiff who alleged defendant marked up goods and overcharged through invoices stated claim for conversion).

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 37**

**Violation of California Business and Professions Code**

In Count XIII of its Third Amended Complaint, Plaintiffs allege that Defendants have violated California's Business and Professions Code.  To succeed on this claim, Plaintiffs must prove that Defendants engaged in an unlawful, unfair, or fraudulent business act or practice. Statutory unfair competition embraces anything that can be called a business practice and that at the same time is forbidden by law, unfair, or fraudulent.

Source: Cal. Bus. and Prof. Code § 17200; Vess v. Ciba-Geigy Corp., 317 F.3d 1097, 1102 (9th Cir. 2003); State Farm Fire & Casualty Co. v. Superior Court, 45 Cal. App. 4th 1093, 1103-1104 (1996); Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1135 (Cal. 2003); Klein v. Earth Elements, 59 Cal. App. 4th 965, 970 (1997).

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 38**

**<u>Tortious Interference</u>**

In Count XI of its Third Amended Complaint, Plaintiffs have sued Defendants for Tortious Interference.  In order to recover on this claim, Plaintiffs must prove each of the following facts by a preponderance of the evidence:

       1)     Defendants enticed or induced Plaintiffs' employer to terminate or rescind an offer of employment;

       2)     Defendants did so with the wrongful intent to injure or destroy Plaintiffs' employment opportunity; and

       3)     Plaintiffs suffered injury or damage in its business as a proximate result of the Defendants' wrongful acts.

The theory of the tort or wrong of interference is that the law draws a line between lawful competition and vindictive destruction of someone else's employment opportunity. So, a systematic effort to induce employers to terminate their employees or rescind offers of employment is unlawful when the purpose of such enticement or solicitation is to cripple or destroy employees or prospective employees rather than to engage in acts in furtherance of one's own business enterprise.

If you find that Plaintiffs have failed to prove its claim of tortious interference as defined in these instructions, then, of course, your verdict will be for Defendants. On the other hand, if you find for Plaintiffs on this claim, you will then consider the issue of the amount of pecuniary or monetary damages to be awarded. In that respect you should award Plaintiffs an amount of money shown by a preponderance of the evidence in the case to be fair and adequate compensation for such loss or damage, if any, as proximately resulted from the tortious interference. For damage to

be the proximate result of such interference, it must be shown that, except for the tortious

interference, such damage would not have occurred.

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 39**

**Breach of Confidentiality Agreement**

In Count XV of its Third Amended Complaint, Plaintiffs have sued Defendants for Breach of Confidentiality Agreement.  In order to prevail on this claim, Plaintiffs must prove each of the following facts by a preponderance of the evidence:

    1)  That a valid contract existed between Plaintiffs and the Defendants; and

    2)  Defendants breached the contract between the parties; and

    3)  Plaintiffs suffered damages from Defendants' breach of the contract.

If you find that Defendants breached their contract with Plaintiffs and Plaintiffs suffered damages as a result of Defendants' breach, you should award Plaintiffs the amount of money you find to be justified by a preponderance of the evidence as full, just, and reasonable compensation for all of Plaintiffs' damages. In considering this issue you are instructed that the general rule is that anticipated profits of a commercial business are too speculative and dependent upon changing circumstances to warrant a judgment for their loss. An exception to the general rule is that the loss of profits may be recovered where Plaintiffs makes it reasonably certain by competent proof as to actual loss.

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 40**

**<u>Inducing Breach of Contract</u>**

In Count XVI of its Third Amended Complaint, Plaintiffs have sued Defendants for Inducing Breach of Contract.  To sustain a claim for tortious interference with contractual relations, Plaintiffs' must prove the following elements: 1) existence of a contract; 2) Defendants' knowledge of that contract; 3) Defendants' intentional procurement of the breach of that contract; 4) the absence of justification; and 5) damages resulting therefrom. Plaintiffs must establish that Defendants "conduct caused or induced the breach that resulted in [Plaintiffs'] damages."

Actual damages are an essential element of a claim for tortious interference. "Proof of nominal damages will not suffice." The damages must be actually and proximately caused by Defendants' conduct.

Plaintiffs have to prove, by a preponderance of the evidence, the elements I have previously instructed you on. If you find that Plaintiffs have not proven their claim for tortious interference, you must return a verdict for Defendants on this claim. If, however, you find that Plaintiffs have proven the elements of the claim for tortious interference, then you must return a verdict for Plaintiffs on this claim and then consider what damages, if any, to award Plaintiffs in connection with this claim. Again, I will instruct you on damages later.

Source: Smith v. Ocean State Bank, 335 So.2d 641, 643 (Fla. Dist. Ct. App. 1976); Chicago Title Ins. Co. v. Alday-Donalson Title Co., 832 So.2d 810, 814 (Fla. Dist. Ct. App. 2002); Imperial Majesty Cruise Line, LLC v. Weitnauer Duty Free, Inc., 987 So.2d 706, 708 (Fla. Dist. Ct. App.); Eclipse Medical Inc. v. American-Hydro Surgical Instruments, Inc., 262 F.Supp.2d 1334, 1356-57 (S.D.Fla. 1999); Chicago Title Ins. Co. v. Alday-Donalson Title Co., 832 So.2d 810, 814 (Fla. Dist. Ct. App. 2002); Ethyl Corp. v. Balter, 386 So.2d 1220, 1223-24 (Fla. Dist. Ct. App. 1980).

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 41**

**<u>Affirmative Defenses</u>**

In response to Plaintiffs' claims, Defendants have asserted affirmative defenses. As I explained earlier, each party asserting a claim or a defense has the responsibility to prove each essential part of its contention by a "preponderance of the evidence."

I will explain each of Defendants' affirmative defenses to you. You are instructed that you only need to proceed to a consideration of Defendants' affirmative defenses if you have first determined that Plaintiffs have proved all the elements of at least one claim in this case.

However, Defendants need only succeed on one of its affirmative defenses relevant to a particular claim in order for you to decide the case in Defendants' favor. Therefore, if you find that the evidence in this case produces in your mind a belief that any one of Defendants' affirmative defenses is more likely true than not true, then you must find in favor of Defendants on all the claims to which that defense relates.

Source: Pattern Jury Instructions - Basic 6.2; 3A Fed. Jury Prac & Instruc, § 159.49; and Model Civil Jury Instr. 8th Cir. (2007) (modified).

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

## Defendants' Proposed Jury Instruction No. 42

### **Affirmative Defense - Trademark Invalidity**

As an affirmative defense to Plaintiffs' claims, Defendants contend that Plaintiffs' mark is invalid as a trademark. A trademark is invalid if:

(1) It is or has become a generic term;

(2) It is merely a descriptive term;

(3) It is a deceptively misdescriptive term;

(4) It is a primarily geographically descriptive term; or

(5) It is primarily a surname.

Generic Terms. A term is generic if its primary significance or meaning to prospective purchasers is the product itself and not its manufacturer or merchant. A generic term can never have trademark protection. Terms that originated as trademarks may, over time, be adopted by the public as the common name for the product and become generic. "Thermos" and "aspirin" are examples of terms that originated as trademarks, but later became generic. If the term becomes generic, trademark rights are lost, so that the former owner cannot exclude others from using the mark nor recover damages.

Merely Descriptive Terms. A term is merely descriptive if it is understood by prospective purchasers to describe only the use, functions, characteristics, or ingredients of the product. For example, "TENDER VITTLES" is a descriptive term for cat food. To obtain trademark protection, a merely descriptive term must have acquired "secondary meaning," as that term has been defined for you in these instructions.

Deceptively Misdescriptive Terms. A term is deceptively misdescriptive if it does not accurately describe the use, functions, characteristics, or ingredients of the product and prospective

purchasers are both likely to believe that the term accurately describes the product and likely to base their purchasing decision in part on that belief. To obtain trademark protection a deceptively misdescriptive term must have acquired "secondary meaning," as that term has been defined for you in these instructions.

Geographically Descriptive Terms. A geographically descriptive term is one used to indicate the location or origin of the product. "CALIFORNIA APPAREL," as applied to clothing product in that State, is geographically descriptive. To obtain trademark protection, a geographically descriptive term must have acquired "secondary meaning," as that term has been defined for you in these instructions.

Plaintiffs have the burden of proving the validity of the trademark by a preponderance of the evidence.

Source: 15 US.C. §§ 115(b)(2), (4), 1052(e), 1064(3); Matthew Bender's Modern Federal Jury Instructions (Civil), Trademark, Instruction No. 86A-17 (2009) (modified).

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 43**

**Affirmative Defense - Trademark Invalidity Due to Third-Party Use**

      As an affirmative defense, Defendants contend Plaintiffs' mark is invalid as a trademark due to extensive third-party use of the mark. Defendants further allege Plaintiffs have failed to control the use of its mark or to police the use of its mark as evidenced by extensive third-party use of the mark or its terms. Under the law, a trademark owner's failure to control use of its mark or to otherwise police its mark can rebut any presumption of validity created by its federal registration.

Source: Carnival Corp. v. SeaEscape Casino Cruises, Inc., 74 F.Supp.2d 1261, 1265-66 (S.D. Fla. 1999); Educational Dev. Corp. v. The Economy Co., 562 F 2d 26 (10th Cir. 1977).

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 44**

**Affirmative Defense – Laches and Acquiescence**

Defendants have asserted as additional affirmative defenses the defenses of laches and acquiescence.

To make out a defense of laches, Defendants must prove, by a preponderance of the evidence, that: 1) Plaintiffs had knowledge of Defendants' accused conduct; 2) Plaintiffs inexcusably delayed in taking action; and 3) Defendants will be "prejudiced" by permitting Plaintiffs to assert its rights now after delaying in bringing suit.

To make out a defense of acquiescence Defendants must prove, by a preponderance of the evidence, that: 1) Plaintiffs represented that it would not assert a right or claim against Defendants for Defendants' accused conduct; 2) the delay between the representation and Plaintiffs' assertion of a claim against Defendants was not excusable; and 3) the delay caused Defendants undue "prejudice."

One of the factors you may consider in support of a finding of "prejudice" to Defendants is whether Defendants invested significant monies in its use of Plaintiffs' trademarks or content.

If you find, that Defendants have proven by a preponderance of the evidence that Plaintiffs are guilty of laches or acquiescence, you must find for Defendants even if Plaintiffs have otherwise proven its claims.

Source: Kason Indus., Inc. v. Component Hardware Group, Inc., 120 F.3d 1199, 1203 (11th Cir. 1997); Conagra, Inc. v. Singleton, 743 F.2d 1508, 1517(11th Cir. 1984); Comedy Hall of Fame v George Schlatter Prods., Inc., 847 F. Supp. 378, 383 (M.D. Fla. 1994); General Conference Corp. Of Seventh-Day Adventists v. Perez, 97 F. Supp2d 1154 (S.D. Fla. 2000)

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

## Defendants' Proposed Jury Instruction No. 45

### Affirmative Defense – Failure to Protect Mark Usage by Others

Defendants have asserted the additional affirmative defense of Plaintiff's failure to protect its mark.

Prior registration of a mark is only prima facie evidence of exclusive ownership of a particular mark. Timely bona fide use by others of a similar mark may materially affect a claimed right of "exclusiveness" and such diverse use may be a valid defense in an infringement suit.

It is Defendants' position that multiple other persons and businesses in the restaurant industry have been repeatedly and continuously using trademarks containing words in which Plaintiffs have claimed an exclusive right in this suit, such that Plaintiffs do not have an exclusive right to the use of such words and has not sought to protect any exclusive right it may claim to such words.

If you find that Defendants have proven by a preponderance of the evidence that Plaintiffs have failed to protect its marks and that the marks are being used by multiple other parties, you must find for Defendants even if Plaintiffs have otherwise proven its claims.

Source: Abner's Beef House Corp. v. Abner's Intern., Inc., 227 So.2d 865 (Fla. 1969); Ocean Bio-Chem, Inc. v. Turner Network Television, Inc., 741 F. Supp. 1546 (S.D. Fla. 1990).


GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 46**

**<u>Affirmative Defense - Waiver</u>**

Defendants claim that it is not liable for infringement because Plaintiffs' infringement claims are barred by waiver. Waiver is the intentional and voluntary relinquishment of a known right or privilege. To be effective, Plaintiffs' waiver must have been made with knowledge of the existence of his rights, and with the intent to waive those rights.

Waiver can be implied from conduct if the acts, conduct, or circumstances relied upon to show waiver make out a clear case.

Defendants have the burden to prove by a preponderance of the evidence that Plaintiffs' claims are barred by waiver. If you find that Defendants have satisfied this burden, then you must find in favor of Defendants.

Source: <u>Bruce v. Heiman, 392 So.2d 1026 (Fla. 5th DCA 1981)</u>.

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 47**

**Affirmative Defense - Right to Compete**

As an additional defense to Plaintiffs' claims, Defendants claim it is privileged and justified in competing with Plaintiffs. Defendants further contend its use of "PHILIPPE BY PHILIPPE CHOW" was undertaken to further its business and safeguard or promote its own financial or economic interest. Under the law, Defendants are entitled to establish its own business and to safeguard and promote its own financial or economic interest. If you find that Defendants' conduct in using "PHILIPPE BY PHILIPPE CHOW" was undertaken to further its business and safeguard or promote its own financial or economic interest, you must find for Defendants on Plaintiffs' claims.

If a preponderance of the evidence does not support the right to compete defense raised by Defendants, you must consider their other affirmative defense.

Source: Bruce III v. American Dev. Corp., 408 So. 2d 857, 858 (Fla. 3d DCA 1982).

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 48**

**Business Justification**

"Exclusionary behavior includes practices which tend to impair the opportunities of rivals and which either do not advance competition or unnecessarily restrict it." Defendants contend that it has legitimate business purposes for its acts, and you have heard Defendants' explanations for its practices. First you must determine whether such evidence shows a legitimate business purpose or whether it is merely pretextual -- that is, that Defendants' stated purpose is not the real reason for the practice. If you find that one or more of Defendants' explanations is not merely pretextual, then you must decide whether Plaintiffs have shown, by a preponderance of the evidence, that Defendants' practices are unnecessary or that the harm that it does outweighs any benefits that it may bring about.

Source: Aspen Skiing Co. v. Aspen Highlands Skiing Corp., 472 U.S. 585, 603, 605 n.32 (1985); United States v. Microsoft Corp., 253 F.3d 34, 47-49 (D.C. Cir. 2001), and cases cited therein.

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

## Defendants' Proposed Jury Instruction No. 49

### Affirmative Defense – Fair Use

The owner of a trademark cannot exclude others from making a fair use of that trademark. One makes fair use of a mark when one uses it as other than a trademark, to accurately describe the goods.

Defendants have the burden of proving their fair use of the mark by clear and convincing evidence, which is again evidence that is precise, explicit, lacking in confusion, and of such weight that it produces a firm belief or conviction, without hesitation, about the matter in issue.

Defendants make fair use of the claimed mark when it:

1.    Uses the mark in connection with a product not readily identifiable without use of the mark;

2.    Uses only so much of the mark as was reasonably necessary to identify the product in question; and

3.    Does not do anything that would, in conjunction with the mark, suggest sponsorship or endorsement by Plaintiffs.

A product is not readily identifiable without use of a mark when there are no equally informative words describing the product. A product cannot be effectively identified without use of a mark when there would be no other effective way to compare, criticize, refer to, or identify it without using the mark.

A reasonably necessary use of a mark occurs when no more of the mark's appearance (such as, for a mark which is a word, the distinctive color, logo, abbreviation, or graphics used in displaying the mark) is used than is necessary to identify the product and make the reference intelligible to the consumer.

A use of the mark does not suggest sponsorship or endorsement by the mark's owner when Counter-Plaintiffs do not attempt to deceive, or mislead, or to capitalize on consumer confusion, or appropriate the cachet of one product for another.

The fact that Defendants' use of the mark may bring them a profit or help in competing with the mark owner does not mean the use was not a fair use.

If clear and convincing evidence does not support the fair use defense of Defendants and the greater weight of the evidence does support the infringement claim of Plaintiffs, then your verdict should be for Plaintiffs.

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 50**

**Affirmative Defense and Counterclaim – Abandonment**

Defendants claim that Plaintiffs have abandoned the trademark. The owner of a trademark may be considered to have abandoned its right to exclusive use of that mark if it discontinues its use with an intent not to resume it. Whether or not the use of the mark has been discontinued with the intent not to resume is a fact to be determined by you from all the circumstances in the case. Non-use of the mark for three consecutive years is presumed to be abandonment.

Source: 11th Circuit Pattern Jury Instructions (Civil Cases) 2005

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 51**

**<u>Affirmative Defense – Standing</u>**

If you find that Plaintiffs lack a protectable ownership interest in the "MR. CHOW" mark, you should find that Plaintiffs do not have standing to enforce the "MR. CHOW" mark.

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

## Defendants' Proposed Jury Instruction No. 52

### Affirmative Defense – Doctrine of Setoff

Any damages awarded to Plaintiffs should be setoff and recouped based on damages suffered by Defendants.

Source: MCI WorldCom Network Servs. v. Mastec, Inc., 995 So. 2d 221, 224 (Fla. 2008), citing, Hanna v. Martin, 49 So. 2d 585, 587 (Fla. 1950) ("The fundamental principle of the law of damages is that the person injured by breach of contract or by wrongful or negligent act or omission shall have fair and just compensation commensurate with the loss sustained in consequence of the defendants act which give[s] rise to the action. In other words, the damages awarded should be equal to and precisely commensurate with the injury sustained."); See In re New River Shipyard, Inc., 355 B.R. 894 (Bankr. S.D. Fla. 2006) (quoting Poinsettia Dairy Prods. Inc. v. Wessel Co., 166 So. 306, 310 (Fla. 1936)); See Whitby v. Infinity Radio, Inc., 951 So.2d 890, 898 (4th D.C.A. 2007) ("Difficulty in proving damages or uncertainty as to the amount will not prevent recovery as long as it is clear that substantial (rather than nominal) damages were suffered as a result of the wrong, and the competent evidence is sufficient to satisfy the mind of a prudent, impartial person as to the amount."); See Center Chemical Co. v. Avril. Inc. 392 F.2d 289, 291 (5th Cir. 1968) (The well established common law rule is that all damages recovered for a breach of contract must be proven with certainty, and not left to speculation or conjecture."); see also Neptune Equities, Inc. v. Bearden Oil Co., 2008 U.S. App. LEXIS 9285, *4 (11th Cir. Apr. 24, 2008) ("The evidentiary showing must be done by evidence which will furnish the jury with data sufficient to enable damages with reasonable certainty. The jury cannot be left to speculation, conjecture and guesswork."); Koplowitz v. Girard, 658 So.2d 1183, 1184 (4th D.C.A. 1995) (citing Campbell v. Rawls, 381 So.2d 744, 746 (1st D.C.A. 1980) (as cited with approval in Grossman Holdings, Ltd. v. Hourjan 414 So.2d 1037, 1039 (Fla. 1982) ("A party can neither receive more than it bargained for nor should it be put in a better position that it would have been in had the contract been properly performed.").

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 53**

**<u>Affirmative Defense – Innocent Infringement</u>**

Taking the evidence in the light most favorable to [Defendants], the innocent infringer defense, if valid, affects Plaintiffs' available remedies. Pursuant to 15 U.S.C. § 1117(b), Plaintiffs are only entitled to an award of treble damages and attorneys' fees, unless [Defendants] can prove extenuating circumstances, such as lack of knowledge or intent, to mitigate the damages.

Source: 15 U.S.C. § 1117(b) Playboy Enterprises v. Frena, 839 F. Supp. 1552, 1560 (M.D. Fla. 1993).

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 54**

**Affirmative Defense – Invalid Trademark**

In this case, Plaintiffs seeks to recover money damages from Defendants for what Plaintiffs claim to be trademark infringement.  Defendants deny infringing the trademark and contend that the trademark is invalid. The legal principles regarding the law of trademark infringement discussed in these instructions result from attempts to balance the following conflicting policy objectives:

(1) The need to protect the public from being misled about the nature and source of the goods or services they buy;

(2) The need to protect the property rights of a business to identify itself and its goods or services to the public; and

(3) The need to try to achieve these goals while encouraging fair competition among those providing goods in our free-market economy.

In short, fair competition among those manufacturing and selling goods is encouraged but unfair competition, including trademark infringement, is destructive of this competitive process and is illegal. Because of the conflicting policy objectives involved in cases of this type each case must be decided largely on its specific facts. You, the jury, are the judge of the facts.

Source: Matthew Bender's Modern Federal Jury Instructions (Civil), Trademark Trademark Infringement, General Instruction No. 86A-8 (2009) (modified).

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 55**

**<u>Duty to Mitigate</u>**

You are instructed that any person who claims damages as a result of an alleged wrongful act on the part of another has a duty under the law to "mitigate" those damages -- that is, to take advantage of any reasonable opportunity that may have existed under the circumstances to reduce or minimize the loss or damage.

So, if you should find from a preponderance of the evidence that the Plaintiffs failed to seek out or take advantage of a business or employment opportunity that was reasonably available under all the circumstances shown by the evidence, then you should reduce the amount of Plaintiffs' damages by the amount that could have been reasonably realized if Plaintiffs' had taken advantage of such opportunity.

Source: 11th Circuit Pattern Jury Instructions (Civil Cases) 2005.

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 56**

**Consider Damages Only If Necessary**

If you find that Plaintiffs have proven by a preponderance of the evidence that Defendants are liable on any of Plaintiffs claims, and you find that Defendants have failed to prove by a preponderance of the evidence any of their affirmative defenses then you must determine the damages, if any, to which Plaintiffs are entitled.

However, you should not infer that Plaintiffs are entitled to recover damages merely because I am instructing you on the elements of damages. It is exclusively your function to decide upon liability, and I am instructing you on damages only so that you will have guidance should you decide that Plaintiffs are entitled to recovery.

Source: MFJI P 77.01, Instruction 77-1 (modified).

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 57**

**<u>Proof of Causation and Actual Confusion</u>**

If you find that Defendants have infringed Plaintiffs' marks or unfairly competed with Plaintiffs, then you must determine whether Plaintiffs are entitled to recover damages, and, if so, the amount of those damages. There are certain kinds of damages intended to compensate Plaintiffs that you may consider: direct and indirect economic losses, Defendants' profits, the cost to Plaintiffs for bringing the action, exemplary damages, and punitive damages, which I will discuss in a moment.

Direct economic losses are losses such as lost sales and out-of-pocket expenses that Plaintiffs suffered as a result of proof that some consumers were actually confused or deceived.

Indirect economic losses, sometimes known as general compensatory damages, are the amount of money necessary to compensate Plaintiffs for indirect losses caused by actual confusion to consumers. These may include compensation for injury to or the loss of Plaintiffs' reputation or goodwill, the expense of preventing customers from being deceived, and the cost of the advertising necessary in the future to erase or repair the effects of the infringement. Although this type of damage may be difficult to measure, you should use your best judgment in determining the amount of such damages to Plaintiffs, if any, based on the relevant evidence.

Plaintiffs may be entitled to Defendants' profits should you find that the Defendants have infringed Plaintiffs' trademark or committed acts of unfair competition. In assessing profits, Plaintiffs need only prove Defendants sales by a preponderance of the evidence. Defendants must then prove all elements of cost or claimed deductions.

Damages may not be based on speculation, guesswork or conjecture, but must have some reasonable basis in fact as well as a causal relationship to the infringement and unfair competition complained of.

Source: 15 U.S.C. § 1117; United Feature Syndicate v. Sunrise Mold Co., 569 F. Supp. 1475, 1481 (S.D. Fla. 1983); McCarthy, § 30.74; Burger King Corp. v. Mason, 710 F.2d 1480, 1494.

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

## Defendants' Proposed Jury Instruction No. 58

### **Compensatory Damages**

If, after considering all of the evidence that has been presented, you find that Plaintiffs have not proven all of the elements of any of its claims as I have explained them in these instructions, then your verdict should be for Defendants, and you need not consider the matter of damages. If, on the other hand, you find that Plaintiffs have sufficiently proven each of the elements of any claim as I have explained them, and that Defendants have not sufficiently proven any of their affirmative defenses, then your verdict should be in favor of Plaintiff on that claim or claims and you should consider the amount of monetary damages to be awarded.

The purpose of the law of damages is to award a party, as far as possible, just and fair compensation for the loss it suffered, if any, which resulted from the violation of its rights. Accordingly, if you render a verdict in favor of Plaintiffs, you should award Plaintiffs an amount of money which you find justified by a preponderance of the evidence as full, just, and reasonable compensation for its damages, no more and no less. This amount of money is called "compensatory damages." Compensatory damages are not allowed as punishment and must not be imposed or increased to penalize Defendants. Also, compensatory damages must not be based on speculation or guesswork because it is only actual damages that are recoverable. In determining the amount of compensatory damages, you should consider all of the evidence concerning harm to Plaintiffs.

Source: Source: MFJI P 77.01, Instruction 77-3(modified); 11th Circuit Pattern Jury Instructions (Civil), Federal Claims Instructions 4.1 - 4.3

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

## Defendants' Proposed Jury Instruction No. 59

### Recovery of Defendants' Profits

As an additional category of compensatory damages, Plaintiffs are entitled to any profits earned by Defendants that are attributable to its misconduct. You may not, however, include in any award of such profits any amount that you already took into account in assessing compensatory damages under prior instructions.

Profit is determined by deducting all expenses from gross revenue. Gross revenue is all of Defendants' receipts from using "PHILIPPE BY PHILIPPE CHOW" in the sale of its products or services. Plaintiffs have the burden of proving Defendants' gross receipts by a preponderance of the evidence.

Expenses are all costs incurred in producing the gross revenue. Defendants have the burden of proving the expenses. Defendants also bear the burden of proving that any portion of the profit is attributable to factors other than its misconduct. Defendants must prove each of these by a preponderance of the evidence.

Unless you find that a portion of the profit from the sale of the products and services using the "PHILIPPE BY PHILIPPE CHOW" name is attributable to other factors, you shall find that the total profit is attributable to Defendants' misconduct.

Source: Matthew Bender's Modern Federal Jury Instructions (Civil), Instruction 86A-24 (2009) (modified).

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 60**

**<u>Damages within Jury's Discretion</u>**

The amount of damages to be awarded Plaintiffs, if, and only if, you find that Defendants have infringed Plaintiffs' marks or unfairly competed with Plaintiffs, is within your discretion. Guided by the principal's of equity you should award an amount which seems fair. You may but are not required to award as damages the amount of Defendants' profits.

Source: <u>15 U.S.C. § 1117</u>; <u>Burger King Corp. v. Mason, 710 F.2d 1480, 1494</u>.

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 61**

**<u>Trademark Damages - Intentional Infringement</u>**

If you find that Defendants infringed Plaintiffs' trademark, you must also determine whether each Defendant intentionally or willfully used the infringing trademark to trade on the goodwill and/or reputation of Plaintiffs. You are to enter a finding on this issue on the verdict form, but only if you find that Plaintiffs have met their burden of proving the claims asserted against Defendants.

Source: Model Jury Instructions, Copyright, Trademark and Trade Dress Litigation Instruction 2.8.5.

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

## Defendants' Proposed Jury Instruction No. 62

### <u>Punitive Damages Not Available</u>

Although punitive damages may be recoverable under certain state laws, punitive damages are not recoverable under either the Federal Lanham Act for trademark infringement or under Florida's trademark infringement laws. Indeed, under both United States and Florida trademark law, a plaintiff's recovery "shall constitute compensation and not a penalty."

The intent of Florida law is to provide a system of state trademark registration and protection substantially consistent with the federal system of trademark registration and protection and, to that end, the construction given the federal act is persuasive authority for interpreting and construing the Florida trademark laws.

Source: <u>15 U.S.C. § 1117(a)</u>; <u>Fla. Statute § 495.141</u>; <u>Fla. Stat. § 495.181</u>; 3A Fed. Jury Prac. & Instruc. Ch. 159 Intro (5th ed.).

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 63**

**Attorneys Fees and Court Costs**

You must not take into account any consideration of attorneys' fees or court costs in deciding the amount of Plaintiffs' damages. The matter of attorney's fees and court costs will be decided later by the Court.

Source: 11th Circuit Pattern Jury Instructions (Civil Cases) 2005

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 64**

**<u>Duty to Deliberate</u>**

Of course, the fact that I have given you instructions concerning the issue of Plaintiffs' damages should not be interpreted in any way as an indication that I believe that Plaintiffs should, or should not, prevail in this case.

Any verdict you reach in the jury room must be unanimous. In other words, to return a verdict you must all agree. Your deliberations will be secret; you will never have to explain your verdict to anyone.

It is your duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case do not hesitate to re-examine your own opinion and change your mind if you become convinced that you were wrong. But do not give up your honest beliefs solely because the others think differently or merely to get the case over with.

Remember, that in a very real way you are judges -- judges of the facts. Your only interest is to seek the truth from the evidence in the case.

Source: 11th Circuit Pattern Jury Instructions (Civil Cases) 2005.


GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 65**

**Election of Foreperson Explanation of Verdict Form**

When you go to the jury room you should first select one of your members to act as your foreperson. The foreperson will preside over your deliberations and will speak for you here in court.

A form of verdict has been prepared for your convenience.

You will take the verdict form to the jury room and when you have reached unanimous agreement you will have your foreperson fill in the verdict form, date and sign it, and then return to the courtroom.

If you should desire to communicate with me at any time, please write down your message or question and pass the note to the marshal who will bring it to my attention. I will then respond as promptly as possible, either in writing or by having you returned to the courtroom so that I can address you orally. I caution you, however, with regard to any message or question you might send, that you should not tell me your numerical division at the time.

Source: 11th Circuit Pattern Jury Instructions (Civil Cases) 2005.

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 66**

**<u>Right to See Exhibits and Hear Testimony Communications in Court</u>**

You are about to go into the jury room and begin your deliberations. If during those deliberations you want to see any of the exhibits, you may request that they be brought into the jury room. You may also request any of the testimony read back to you. Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can in requesting exhibits or portions of the testimony.

Your requests for exhibits or testimony - in fact any communication with the court -- should be made to me in writing, signed by your foreperson, and given to one of the marshals. In any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

Source: Matthew Bender's Modern Federal Jury Instructions (Civil), Jury Deliberations, Instruction No. 78-1 (2009); Eleventh Circuit Pattern Jury Instructions (Civil), Basic Instructions, Instruction No. 8 (2005).

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 67**

**<u>Counterclaim – Defamation Per Se</u>**

In Count I of its Amended Counterclaim, Counter-Plaintiffs assert that Counter-Defendants statements constitute Defamation Per Se.  A written or oral false publication to the prejudice of a person in his business or profession is libelous or slanderous per se.

There are two distinct types of types of compensatory damages recoverable in a defamation case under Florida law: general and special. General damages are those which the law presumes must naturally, proximately and necessarily result from publication of the libel or slander. They are allowable whenever the immediate result is to impair Counter-Plaintiffs' reputation although no actual pecuniary loss is demonstrated. Words which are actionable per se necessarily import general damages and need not be pleaded or proved but are conclusively presumed to result. Moreover, malice is presumed as a matter of law from the publication of defamatory statements that are actionable per se.

General damages awardable for harm inflicted by a defamatory falsehood include impairment of reputation in the community, personal humiliation and mental anguish and suffering.

Special damages, consisting of direct or indirect pecuniary loss, do not result by implication of law from a wrongful publication, and unlike general damages, it is necessary for Counter-Plaintiffs to show its special damages resulted from the defamation.

A company, just as an individual, can be injured by a false publication concerning its trade or business and is likewise entitled to recover damages for such injury. Just as an individual, where a defamatory statement contains an imputation upon a company's business, its ability to do business, and its methods of doing business, the statement is actionable per se, and pecuniary loss

need not be shown. In such a case the law presumes that some damage will flow from the mere invasion of the plaintiff's rights and business reputation.

Where the defamation is actionable per se, Counter-Plaintiffs are also entitled to recover punitive damages even if the amount of actual damages is neither found nor shown, since, in such a case the requirement of a showing of actual damages as a basis for awarding exemplary damages is satisfied by the presumption of injury arising from libel or slander that is actionable per se.

Punitive damages are awardable in a defamation action where Counter-Defendants maliciously publish the defamatory statements with knowledge of its falsity and with intent to harm Counter-Plaintiffs.

Source: Hartley & Parker, Inc. v. Copeland, 51 So.2d 789, 791 (Fla. 1951);. Axelrod v. Califano, 357 So.2d 1048, 1505 (Fla. 2nd DCA 1978); Bobenhausen v. Cassat Ave. Mobile Homes, Inc., 344 So.2d 279, 281 (Fla. 1st DCA 1977); Lundquist v. Alewine, 397 So.2d 1148, 1150 (Fla. 5th DCA 1981); Rety v. Green, 546 So.2d 410, 420 (Fla. 3rd DCA 1989); Diplomat Elec., Inc. v. Westinghouse Elec. Supply Co., 378 F.2d 377, 383 (5th Cir. 1967); Thompson v. Orange Lake Country Club, 224 F. Supp. 2d 1368 (M.D. Fla. 2002); Rety v. Green, 546 So.2d 410, 420 (Fla 3rd DCA 1989); Finch v. City of Vernon, 877 F.2d 1497, 1504 (11th Cir. 1989); Miami Herald Pub. Co. v. Brown, 66 So.2d 679, 680 (Fla. 1953); Diplomat Elec., Inc. v. Westinghouse Elec. Supply Co., 378 F.2d 377 (5th Cir. 1967); Saunders Hardware Five & Ten, Inc. v. Low, 307 So.2d 893 (Fla. 3rd DCA).

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

**Defendants' Proposed Jury Instruction No. 68**

**Counterclaim – Cancellation of Counter-Defendants' Registration**

In Count II of its Amended Counterclaim, Counter-Plaintiffs assert it is likely to be damaged by continued registration of the "MR. CHOW" trademark, which was obtained by Counter-Defendants' fraud on the United States Patent and Trademark Office.  Counter-Plaintiffs must prove, by a preponderance of the evidence, Counter-Plaintiffs are the owners of the "PHILIPPE BY PHILIPPE CHOW" name.  Counter-Plaintiffs used its name "PHILIPPE BY PHILIPPE CHOW" before Counter-Plaintiffs began to use the mark "MR. CHOW."  The use of the mark "MR. CHOW" is likely to damage Counter-Plaintiffs.

You must next determine whether Counter-Plaintiffs made any false or fraudulent representations or declarations when it obtained its Florida registration. In making this determination you may consider any representations Counter-Plaintiffs made verbally or in writing, or by any other fraudulent means. If you find that Counter-Plaintiffs knowingly made any such representations, then you have determined that Counter-Plaintiffs' Florida registration was fraudulently obtained.

If you have found that Counter-Plaintiffs' mark was fraudulently obtained, then you have determined that Counter-Plaintiffs' Florida registration must be cancelled. However, even if you have not made these determinations, Counter-Plaintiffs' registration must still be cancelled if you find that it was granted improperly or has been abandoned.

Source: Fla.Stat. §495.101; Fla. Stat. §495.121.

GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

## Defendants' Proposed Jury Instruction No. 69

## <u>Counterclaim – Damages for False or Fraudulent Registration</u>

In Count III of its Amended Counterclaim, Counter-Plaintiffs assert that it has been damaged by said false and fraudulent statements and registrations by Counter-Defendants.  If you find for Counter-Defendants, you may also consider whether, in addition to compensatory damages, Counter-Defendants are entitled to punitive damages. Such damages may be appropriate if you determine that Counter-Plaintiffs fraudulently obtained its Florida registration or engaged in any other actions that merit punitive damages. In assessing punitive damages you must consider the harm that has actually occurred due to Counter-Plaintiffs actions. The purpose of punitive damages is not to further compensate Counter-Defendants but to punish Counter-Plaintiffs for any wrongful conduct and to deter any similar misconduct by Counter-Plaintiffs and other actors in the future.

The parties may present additional evidence related to whether punitive damages should be assessed and, if so, in what amount. In making your decision, you should consider this additional evidence along with the evidence already presented. You may assess punitive damages against one Counter-Defendant and not the others, or against more than one Counter-Defendant. Punitive damages may be assessed against different Defendants in different amounts.

Obviously what might be a significant punishment to a party with relatively small financial means would not be felt by a party with large means. Thus, in determining the amount of punitive damages, the financial circumstances of Counter-Defendants are to be considered.

Source: Fla. Stat. § 495.121; Fla. Stat. § 768.72; Florida Standard Jury Instructions - Civil Cases, PD 2; Miami Beach Lerner Shops, Inc. v. Walco Mfg. of Florida, Inc., 106 So. 2d 233, 266 (F. 3rd DCA 1958); W. R. Grace & Co.-Conn. v. Waters, 638 So. 2d 502, 504 (Fla. 1994); Owens-Corning Fiberlas Corp. v. Ballard, 749 So. 2d 483 (Fla. 1999).


GIVEN:

REFUSED:

MODIFIED:

WITHDRAWN:

OBJECTED TO:

Respectfully submitted on this 7th day of February, 2012.

Counsel for Defendants CHAK YAM CHAU, STRATIS MORFOGEN, DAVID LEE, PHILIPPE MIAMI, L.L.C., a Florida Limited Liability Company, PHILIPPE NORTH AMERICA RESTAURANTS, L.L.C., a New York Limited Liability Company and PHILIPPE RESTAURANT CORP., a New York Corporation, DAVÉ 60 NYC, INC. a New York Corporation, PHILIPPE EXPRESS, L.L.C. a New York Corporation, PHILIPPE WEST COAST, L.L.C., a California Limited Partnership, COSTIN DUMITRESCU, MANNY HAILEY, YAO WU FANG, SUN CHUN HUI, MARK CHENG and PING CHING KWOK.

Law Offices of Anthony Accetta, P.A.
*Counsel for the Defendants*
South East Financial Center
200 S. Biscayne Boulevard, Suite 2930
Miami, FL 33131
Telephone: (305) 579-0100
Facsimile: (305) 579-0104
Email: aaesq6@aol.com

By:   /s/Anthony Accetta
      ANTHONY ACCETTA, ESQUIRE
      Florida Bar No: 148318

## CERTIFICATE OF ELECTRONIC FILING AND SERVICE

I HEREBY CERTIFY that on this 7th day of February, 2012 ; I filed a true and correct copy of the foregoing document with the Clerk of the Court using the CM/ECF system.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

By:   /s/Anthony Accetta
      **ANTHONY ACCETTA, ESQUIRE**
      Florida Bar No: 148318
      aaesq6@aol.com