UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-21893-CIV-HOEVELER/TURNOFF

MICHAEL CHOW known as "MR. CHOW", *et al.*,

Plaintiffs/Counter-Defendants,

v.

CHAK YAM CHAU, *et al.*,

Defendants/Counter-Plaintiffs.

_____/

## ORDER ON POST-TRIAL MOTIONS

THIS CAUSE comes before the Court on the parties' post-trial motions.  The
Court heard argument from counsel on May 9, 11, and 16, 2012, and has considered
all relevant portions of the record.  As addressed in more detail below, the Court
has determined that there is no basis for disturbing the jury's verdict, with the
exception of one item: the jury's award of $500,000 to Plaintiff Chow individually,
which the Court has determined must be set aside.  The Court also finds that this
case is not the type of "exceptional" case to justify attorneys' fees under the Lanham
Act for any party, and the Court denies, without prejudice to renew at the
appropriate time, the Defendants' request for attorneys' fees pursuant to Florida
statute.  Costs will be awarded to Plaintiff TC Ventures, Inc., as to the false
advertising claims, and as to Defendants on all Counts as to which they prevailed
and as to which costs are taxable.

## PROCEDURAL BACKGROUND

Plaintiffs filed this case in 2009, alleging multiple counts of trademark

infringement and other acts relating to Defendants' operation of competing restaurants which allegedly copied aspects of the "Mr Chow" restaurants.[1] Defendants included the original investors who started the competing restaurants in 2005, including the founding chef, Defendant Chak Yam Chau, who formally changed his name in 2006 to Philippe Chow Chau, and whom previously had been employed for 25 years in Plaintiffs' New York restaurant. Other Defendants included the corporations operating the restaurants, a recent investor in the Defendants' California restaurant, and other chefs and a maitre d' employed by the Defendants' restaurants. The original complaint included nineteen claims.

Three weeks after the original complaint was filed, Plaintiffs amended their complaint, adding specific claims for civil trespass and corporate espionage, alleging that "an Asian male disguised in a chef's jacket entered the premises of the Mr Chow Restaurant [in Miami Beach] without authorization and proceeded into the Mr Chow kitchen." ECF No. 15, ¶ 79.[2] On November 19, 2009, the Court dismissed

---

[1] The Court has endeavored to refer to the Plaintiffs' restaurants consistently as "Mr Chow" restaurants, as the evidence indicated that the restaurants' name is styled "Mr" instead of "Mr." (similarly, Plaintiff <u>Mr</u> Chow Enterprises, Ltd.). The original trademark registration, effective July 7, 1981, was as to "Mr. Chow," <u>see</u> United States Patent and Trademark Office ("USPTO"), Reg. No. 1,160,402, and that is the only trademark as to which Plaintiffs elected to pursue their claims at trial. Plaintiffs' Third Amended Complaint also sought to prosecute claims as to other trademarks, Dkt. No. 134, ¶ 74, e.g., the mark "Mr Chow" was registered on January 6, 2009, <u>see</u> Reg. No. 3,558,956, but Plaintiffs ultimately elected not to pursue any claims related to those trademarks.

[2] According to the First Amended Complaint, the alleged trespasser conducting "covert and other surveillance activity" was an acquaintance of one of Plaintiffs' longtime chefs and asked for that chef by name; Plaintiffs alleged that the person was sent there for the "sole purpose of spying on behalf of the Defendants' Miami Beach restaurant. ECF No. 15, ¶¶ 83. The Court references

the specific claims of trespass and espionage, without prejudice to refile the specific claims with sufficient support - which Plaintiffs failed to do.[3]

A Second Amended Complaint was filed on December 3, 2009, adding, *inter alia*, claims for tortious interference with Plaintiffs' employee relationships, and breach by Defendants' Chefs of alleged "written Confidentiality Agreements" purportedly signed by those Chefs. ECF No. 42, ¶¶ 43, 173. Defendants then filed a Counterclaim for defamation against the Plaintiffs and also against Eva Chow (wife of Michael Chow) and Michelle Chun (an employee of the Plaintiffs' restaurants and the sister of Eva Chow), ECF No. 119; the Court dismissed, without prejudice, the Counterclaim as to Mrs. Chow and Ms. Chun in an Order entered on April 5, 2010.

Finally, on April 13, 2010, a Third Amended Complaint was filed, with sixteen claims against a total of fifteen defendants. ECF No. 134. This Court had jurisdiction over the federal and state claims, pursuant to 28 U.S.C. §§ 1331, 1338, and 1367. Defendants answered the complaint and some Defendants filed counterclaims against some of the Plaintiffs, including another claim for defamation against Mrs. Chow and Ms. Chun – similar to the previously filed claim but

---

these allegations as a demonstration of the extremely adversarial posture of these parties since at least the beginning of this litigation.

[3]The Third Amended Complaint - the operative complaint - does not include a specific claim of espionage but includes allegations of corporate espionage as a type of common law unfair competition (along with misrepresentation, false advertising, unlawful methods of compensation, etc., ECF No. 134, ¶ 154), and alleges that Defendants' "agent or apparent agent" engaged in "undercover surveillance" (ECF No. 134, ¶ 77).

supported by additional factual allegations.  Dkt. Nos. 170, 195.[4]

After extensive discovery disputes (some of which were resolved only after the parties' counsel were ordered by Magistrate Judge William Turnoff to spend several hours in the court's jury room to resolve their differences), and unsuccessful motions to dismiss and for summary judgment (brought by Defendants and by Counter-Defendants), the case was tried to a jury over a period spanning five weeks in January and February 2012.  The Court entered several rulings before and during trial which eliminated certain claims and counterclaims,[5] and other claims were abandoned by Plaintiffs, such that a total of twelve claims were before the jury, as to ten Defendants.

The jury found Defendants Davé 60 NYC, Inc., and Stratis Morfogen

---

[4]Interestingly, the Defendants' latest-filed Answer and Affirmative Defenses does not include the Counterclaims (which ultimately were tried before the jury). According to the record, Defendants filed an Amended Answer and Affirmative Defenses and Amended Counterclaim (ECF No. 170), and then filed a "Corrected" Amended Answer and Affirmative Defenses (ECF No. 195), which removed Affirmative Defense 69 so that it could be filed under seal.  The Corrected filing also omitted the Counterclaims, but Plaintiffs already had responded to the Counterclaims as stated in the earlier-filed Amended Answer and Amended Counterclaim, and have not argued that the omission of the Counterclaims in the Corrected filing was critical.

[5]The Court granted the Defendants' motion for summary judgment as to any alleged tortious interference with the relationship between Plaintiffs and Plaintiffs' employees (Count XIV).  See Order dated January 20, 2012.  (Plaintiffs had claimed that Defendants "solicited chefs and other key employees" of Plaintiffs' restaurants "to leave Plaintiffs' employ to work in Defendants' copycat restaurant."  ECF No. 134, ¶ 79.)  The Court also granted the motion for summary judgment filed by Eva Chow and Michelle Chun as to Defendants' Counterclaim for Defamation (Counterclaim I), and granted the Plaintiffs'/Counter-Defendants' motion for summary judgment as to Counterclaim III (damages for false or fraudulent registration of the trademark).  See Order dated January 20, 2012.

responsible for false advertising and unfair competition by deceptive conduct as to

Plaintiffs TC Ventures, Inc. (owner of the Mr Chow restaurant on 57th Street in

New York City), and Michael Chow, individually, but rejected all other claims and

counterclaims.  The jury awarded $520,451 to TC Ventures, Inc., and awarded

$500,000 to Michael Chow, individually.  The Court deferred entering final

judgment - as agreed to by the parties - until resolution of the multiple post-trial

motions.

## ANALYSIS

This case involves a relatively straightforward dispute which was

aggressively litigated, between two sets of restaurant companies and their

principals, regarding allegedly unfair business practices.  Claims were brought for

federal and common law trademark, trade name, and trade dress infringement, as

well as for false advertising, conversion, and deceptive business practices.  Plaintiffs

ultimately prevailed only on the question of false advertising (both under the

Lanham Act, 15 U.S.C. § 1125(a), and the common law) and unfair competition by

deceptive conduct in New York.[6]  Defendants did not prevail on their Counterclaims

---

[6]Although Plaintiffs TC Ventures, Inc., and Michael Chow, individually,
assert that they prevailed not only on the Lanham Act claim for false advertising
but also on all of the common law claims, the Court disagrees with that
interpretation of the jury's verdict. Although the Jury Instructions and Verdict
Form, consistent with the parties' agreement, combined the four common law
claims (Counts VI - IX) into a single claim of "Unfair Competition" or "Unfair
Competition by Deceptive Conduct," the jury specifically did not find for the
Plaintiffs as to trademark, trade name or trade dress infringement and that verdict
must be read in conjunction with the jury's verdict for Plaintiffs as to the generally
stated claim for "Unfair Competition." A review of the Third Amended Complaint

which were before the jury (for defamation, and a request that the "Mr. Chow" trademark be de-registered).  Before addressing the parties' post-trial motions, the Court lists the parties and the specific claims which were at issue.

The parties at trial

The Plaintiffs include Michael Chow (known as "Mr. Chow"), Mr Chow Enterprises, Ltd., a California Limited Partnership, (operator of a Mr Chow restaurant in Beverly Hills, California, and owner of the "Mr. Chow" trademark[7]); MC Miami Enterprises, LLC, a Florida Limited Liability Company (operator of a Mr Chow restaurant in Miami Beach, Florida); MC Tribeca, LLC, a New York Limited Liability Company (operator of a Mr Chow restaurant in Tribeca in New York City); and TC Ventures, Inc., a New York Corporation (operator of a Mr Chow restaurant on 57th Street in New York City).

---

reveals that the sole basis for the common law claim stated in Count VI was trade name infringement - the jury's finding for Defendants as to trade name infringement compels the conclusion that Plaintiffs did not prevail on Count VI. Similarly, the alleged trade name or trade dress infringement was included, among other allegations, as a basis for the common law claims stated in Counts VII, VIII, and IX and the jury's finding for Defendants as to the claims of trade name and trade dress infringement suggests that Plaintiffs did not prevail as to those allegations - or at least did not completely succeed - as to those common law Counts. Moreover, as the jury rejected the Plaintiffs' claims for deceptive conduct under Florida or California law, the verdict suggests that the jury found deceptive conduct only as to the Defendants' activities in New York. The Court concludes that, at most, Plaintiffs TC Ventures, Inc., and Michael Chow, individually, prevailed on only those aspects of the common law allegations in Counts VII, VIII, and IX relating to false advertising and unfair competition by deceptive conduct in New York.

[7]United States Patent and Trademark Office ("USPTO") Reg. No. 1,160,402.

Defendants are Chak Yam Chau (known as Philippo Chau during his employment by Plaintiffs), whose legal name since August 2006 has been Philippe Chow Chau; Stratis Morfogen (investor who opened restaurants with Defendant Chau in New York, Miami, East Hampton, and Mexico City under the name of "Philippe by Philippe Chow"); David Lee (an original investor who helped open the Defendants' restaurants in New York and California); Philippe Miami LLC, a Florida Limited Liability Company (operator of the Defendants' restaurant in Miami Beach); Philippe North America Restaurants, LLC, a New York Limited Liability Company; Philippe Restaurant Corp., a New York Corporation; Davé 60 NYC, Inc., a New York Corporation (operator of Defendants' restaurant on 60th Street in New York City); Philippe Express LLC, a New York Corporation; Philippe West Coast LLC, a California Limited Partnership (operator of Defendants' restaurant in West Hollywood, California); and Manny Hailey (investor in the Defendants' restaurant in California).  On the eve of trial, Plaintiffs abandoned their claims which had been brought against four of Defendants' Chefs[8] and a Maitre d',[9] and the Court issued corresponding orders of dismissal, see Dkt. Nos. 297, 307.

---

[8]Plaintiffs stipulated to the voluntary dismissal of all claims against Defendants Yao Wu Fan, Sun Chun Hui, Mark Cheng, and Ping Ching Kwok. ECF No. 287, p. 12, ¶ 8.d.  See Order dated January 23, 2012.  The dismissal of these Defendants also resulted in the dismissal of Count XV, which alleged that the chefs had breached "written Confidentiality Agreements" purportedly signed by each chef, see ECF No. 134, ¶ 43; the Agreements were never produced.

[9]The Court dismissed this case as to all claims against Defendant Costin Dumitrescu, based upon the Defendants' agreement with Plaintiffs' Notice of Voluntary Dismissal as to such claims.  See Order dated January 27, 2012.

The claims tried before the jury

The following federal statutory claims were tried against all Defendants: trademark infringement, 15 U.S.C. § 1114(1) (Count I);[10] trademark infringement "Based on Reverse Confusion and Reverse Palming Off," 15 U.S.C. § 1125(a) (i.e., Defendants use of the "Mr. Chow" trademark[11] caused consumers to view the Plaintiffs as infringers of the Defendants) (Count II); false association/designation of origin and federal unfair competition, 15 U.S.C. § 1125(a) (copying Plaintiffs' menu, etc., to give impression that Defendants' restaurants are related to Plaintiffs' restaurants) (Count III); false advertising, 15 U.S.C. § 1125(a) (Count IV); and dilution of a famous trademark, 15 U.S.C. § 1125(c) (Count V).[12]  Common law claims were brought for: "tradename" infringement (Count VI); unfair competition by misappropriation and reverse passing off (e.g., by falsely claiming that the Plaintiffs' original recipes, methods of preparation, etc., actually were Defendants'

---

[10]Plaintiffs stipulated to dismissal of all claims in Count I for trademark infringement other than those brought by Plaintiff Mr Chow Enterprises, Ltd., the owner of the sole trademark being prosecuted in this case. See ECF No. 287, p. 12, ¶ 8.e., as noted in this Court's Order of January 27, 2012.

[11]The Third Amended Complaint references the "MR CHOW brand, product identity and corporate identity" as well as the "MR CHOW Registered Marks," and the Plaintiffs' "signature dishes, the noodle-pulling demonstration, and the culturally significant Chinese cuisine presented in a refined designer restaurant environment." See ECF No. 134, ¶¶ 103-104. As noted above, the sole trademark at issue at trial was the "Mr. Chow" trademark (emphasis added). However, the very slight difference between the two styles (the trademark includes a period) is of no significance to the issues before the Court at this time.

[12]The Court granted Plaintiffs' request to remove from jury consideration the question of whether dilution of the "Mr. Chow" trademark had been established, brought pursuant to 15 U.S.C. § 1125(c).

8

creations) (Count VII); unfair competition by passing off (of the "Chow" name and the unique aspects of the Plaintiffs' restaurants) (Count VIII); unfair competition, generally (Count IX); conversion (Count XII); and inducing breach of contract (Count XVI). In addition, claims were brought for violation of New York (New York trade secret law, Count X), Florida (Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* (FDUTPA), Count XI), and California (California Business and Professions Code, Sections 17200 *et seq.* (CBPC), Count XIII) state laws on unfair trade practices.[13]

On February 15, 2012, just prior to the close of evidence, the Court orally

_____

[13]The Court granted Defendants' motion for summary judgment as to the claims for violation of FDUTPA and CBPC to the extent that such claims relied exclusively on allegedly unlawful compensation practices by Defendants as to their own employees, as Plaintiffs failed to demonstrate that their alleged damages were the result of such alleged practices. Plaintiffs alleged that Defendants engaged in "providing illegal compensation and benefits to chefs, including unreported cash payments, thereby reducing the operating costs of their restaurants, a form of cost reduction not possible for lawfully operated restaurants such as [Plaintiffs' restaurants]". ECF No. 134, ¶¶ 72, 79. The Court excluded such evidence from the trial after determining that it was irrelevant to the issues, finding that Plaintiffs had failed to establish a relationship between such alleged cash payments and Plaintiffs' claimed damages.

In their motion for new trial, Plaintiffs continue to complain about allegedly "illegal payments" in cash by Defendants, and cite a California court decision which observed, in *dicta*, that the "failure to pay statutorily mandated overtime wages constitutes unfair competition in that an employer which fails to pay overtime wages gains an unfair advantage over its competitors," Herr v. Nestle U.S.A., Inc., 109 Cal. App. 4th 779 (Cal. App. 2d Dist. 2003). The facts presented at trial in this case, however, did not establish that Defendants failed to comply with overtime wage laws in either California or Florida, nor that Plaintiffs' claimed damages in California or Florida were the result of Defendants' allegedly unlawful overtime (or other) compensation practices. Evidence proffered to the Court (including evidence of a prior federal suit brought against Plaintiffs by former employees in New York) suggested that Plaintiffs themselves may have engaged in questionable practices relating to overtime compensation - thereby weakening the argument that Defendants had achieved a competitive advantage by doing so.

9

granted Defendants' motion for directed verdict as to the alleged misappropriation

of trade secrets under New York law (Count X), based on the failure of Plaintiffs to

bring such claim within the applicable statute of limitations.[14] Also, at the close of

trial, the Court noted that Plaintiffs had abandoned their claims of inducement of

breach of contract (Count XVI), and any claims based on trademark registrations

other than the "Mr. Chow" trademark and, accordingly, such claims properly were

dismissed. In summary, by the end of the trial, Plaintiffs had abandoned their

claims as to more than half of the Defendants,[15] and either had abandoned or had

---

[14]New York law provides a three year statute of limitations for claims of
misappropriation of trade secrets. N.Y. C.P.L.R. § 214. "If a defendant
misappropriates and discloses a trade secret, he becomes liable to plaintiff upon
disclosure. On the other hand, if the defendant keeps the secret confidential yet
makes use of it to his own commercial advantage, each successive use constitutes a
new, actionable tort for the purpose of the running of the Statute of Limitations."
Lemelson v. Carolina Enters., Inc., 541 F. Supp. 645, 659 (S.D.N.Y. 1982) (citations
omitted). In the present case, the evidence clearly demonstrated that Defendants
were not keeping any alleged "trade secrets" confidential, but instead were openly
serving food, from the first day their restaurants opened, that was similar to the
food served in Plaintiffs' restaurants. Defendants also gave a tour of their soon-to-
be opened first restaurant to a long-time employee of Plaintiffs, and shortly after
opening that first restaurant Defendants appeared on a television show to
demonstrate preparation of selected menu items. See also, Gurvey v. Cowan,
Liebowitz & Latman, PC, 2009 U.S. Dist. LEXIS 34839 (SDNY April 24, 2009)
(finding claim for misappropriation of trade secrets time-barred); affirmed, 462 Fed.
Appx. 26 (2nd Cir. 2012); IDT Corp. v. Morgan Stanley Dean Witter & Co., 12 N.Y.3d
132 (N.Y. 2009) (finding that claim for misappropriation of confidential business
was time-barred, noting that harmed party failed to demonstrate that any action or
inaction by alleged infringer caused delay in bringing the enforcement action).

[15]The Plaintiffs did not include Defendants Philippe Express, LLC, nor
Philippe Restaurant Corp., a New York Corporation, nor Philippe North America
Restaurants, LLC, a New York Limited Liability Co., in the verdict form. Plaintiffs'
counsel acknowledged that there was testimony that these "were defunct entities, or
shells" and agreed to stipulate to dismiss the entities, ECF No. 355, pp. 12-13; such
Defendants are, therefore, DISMISSED from this action.

judgment entered against them as to four (Counts X, XIV, XV, and XVI) of the original sixteen Counts brought in this case.

The jury deliberated as to eleven Counts (Counts I-IV, VI-IX, and XI-XIII) against four individual Defendants (Morfogen, Chau, Lee, and Hailey) and three corporate Defendants (Davé 60 NYC, Inc.; Philippe Miami, LLC; and Philippe West Coast, LLC), and, as noted above, found liability as to only false advertising (Count IV) and unfair competition by deceptive conduct (as stated in a portion of Counts VII and IX), and as to only two of the seven Defendants. The jury also rejected both of the Counterclaims (for defamation, Counterclaim I, and for de-registration of the "Mr. Chow" trademark, Counterclaim II).[16]

The Court now turns to the parties' post-trial motions.

A. Plaintiffs' motion for new trial as to Counts I and II[17]

Plaintiffs challenge the jury's decision as to the Lanham Act claims for trademark infringement (Count I) and unfair competition by trade name infringement (Count II). Plaintiffs argue that the verdict for Defendants as to Counts I and II is against the evidence and that a new trial should be ordered, pursuant to Fed. R. Civ. P. 59, because Plaintiffs established sufficient evidence of trademark and trade name infringement by demonstrating the existence of actual

---

[16]For a detailed listing of the parties and claims, see Dkt. Nos. 383 and 385 (charts prepared by the parties, summarizing the outcome of each claim as to each party).

[17]Plaintiffs did not seek a new trial as to any other Counts.

confusion as to the parties' restaurants. Plaintiffs also claim that Defendants' trial conduct - particularly statements made by defense counsel in closing argument[18] and defense counsel's "multiple acts of misconduct"- justifies the granting of a new trial. Finally, Plaintiffs argue that the interests of justice would be served by the granting of a new trial, in light of Defendants' deliberate attempt to take substantial business away from Plaintiffs by use of the "obviously confusing name 'Chow,' rather than the [Defendant Philippe Chau's] real family name, 'Chau.'"

Defendants respond that Plaintiffs failed to preserve any issue of defense counsel's misconduct by not objecting to the allegedly improper statements made in closing argument. Moreover, Defendants argue that the greater weight of the evidence supports the jury's verdict; specifically, Defendants Morfogen and Davé 60 NYC argue that no consumer survey was conducted and that the only evidence of alleged consumer confusion was introduced through the testimony of Plaintiffs' employees (all of Plaintiffs' witnesses were either employed by or paid by Plaintiffs for their testimony). Defendants assert that the jury properly applied the law as instructed by this Court and found no liability for federal trademark and trade name infringement due to the lack of compelling and objective evidence of customer confusion related to Defendants' alleged use of the "Mr. Chow" trademark or trade name. At trial, Defendants introduced evidence that their restaurants do not use the "Mr. Chow" trademark or trade name, and objected to Plaintiffs' attempt to

---

[18]Plaintiffs complain, for example, that Defendants' counsel stated: "Ladies and gentlemen of the jury, I thank all of you. May God bless you and your families.... And may God bless the United States of America." ECF No. 345, p. 76.

prohibit Defendants from using the name "Chow" - a name which Plaintiffs argue is used by multiple other entities and as to which other trademark registrations have been issued (see Defendants' Ex. 16).

1. Statement of the claims at issue

Plaintiffs' claims in Counts I and II, as presented to the jury, sought to protect a trademark and trade name, stated identically by Plaintiffs as "Mr. Chow," from confusion on the part of the consumer resulting from Defendants' use of the name "Philippe by Philippe Chow." As an initial matter, the Court notes that Plaintiffs' Third Amended Complaint identifies Count I as "Federal Trademark Infringement" under 15 U.S.C. § 1114(a), and Count II as "Federal Trademark Infringement Based on Reverse Confusion and Reverse Palming Off under 15 U.S.C. § 1125(a)"[19] - and both Counts reference Plaintiffs' "Registered Marks;" however, the Jury Instructions and the Verdict Form reference the claim in Count II as "Trade Name Infringement" and "Unfair Competition by Trade Name Infringement," respectively. Defendants did not object to this characterization of Count II in the Jury Instructions and Verdict Form, nor have they raised such an argument in response to the Plaintiffs' motion for new trial as to Count II. While

---

[19] "'Reverse passing off ... [is when a] producer misrepresents someone else's goods or services as his own.'" Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 27 n. 1 (2003); see also, Del Monte Fresh Produce Co. v. Dole Food Co., 136 F. Supp. 2d 1271, 1284-90 (S.D. Fla. 2001) (stating elements for a "reverse palming off" claim). Count II of Plaintiffs' operative Complaint refers to "confusingly similar marks" which are "likely to cause consumers to view" Plaintiffs' restaurants "as infringers of Defendants' marks and style of doing business," i.e., a stated claim for "reverse confusion" as to the Plaintiffs' trademark.

Count II does not perfectly plead a claim for trade name infringement, it does reference the appropriate statutory provision for such a claim, 15 U.S.C. § 1125(a). In any event, as Plaintiffs described the trade name at trial as identical to the trademark, and Defendants consented to trial of the trade name infringement claim, any defect in the pleading as to Count II (or Plaintiffs' re-characterization of Count II at trial) is not objectionable.[20]   The Court will evaluate Plaintiffs' trademark infringement claims as having been brought under both 15 U.S.C. § 1114(1) and § 1125(a), and will evaluate Plaintiffs' claim of unfair competition by trade name infringement under 15 U.S.C. § 1125(a).[21]

_____

[20]Fed. R. Civ. P. 15(b) allows a Court to treat "unpled issues which are tried with either the express or implied consent of the parties" as if they were raised in the pleadings. Cioffe v. Morris, 676 F. 2d 539, 541-42 (11th Cir. 1982).  Even if Count II of the Complaint lacked a specifically stated claim for trade name infringement, support for such a claim can be found in Count III of Plaintiffs' Third Amended Complaint, which alleged that Defendants' use of the names "Philippe Chow and 'Mr. Chow'" constituted a false designation of origin which was likely to deceive consumers, a violation of the same provision of the Lanham Act, §43(a), (15 U.S.C. §1125(a)) referenced in Count II.

[21]An aggrieved owner of a registered trademark may proceed under either 15 U.S.C. § 1114(1) or § 1125(a), or both, to protect the registered mark.  To protect a qualifying unregistered mark or trade name, an authorized user may proceed under the latter provision of the Lanham Act, § 43(a) (codified as 15 U.S.C. § 1125(a)). See, e.g., Cumulus Media, Inc. v. Clear Channel Comm'ns, Inc., 304 F.3d 1167, 1172 n.3 (11th Cir. 2002).  The Plaintiffs elected to describe the trade name as identical to the trademark, i.e., "Mr. Chow," and the parties somewhat interchangeably referenced the alleged infringement of the "trademark" and "trade name."  The jury was instructed specifically that a "trademark" is "a word, a name, a symbol, or a combination of them, used by a person to identify and distinguish that person's goods or services from those of others," ECF No. 350, p. 9, and that a "trade name" is "any word or words used by a person to identify that person's business and to distinguish it from the business of others," ECF No. 350, p.19.  See, e.g., Safeway Stores, Inc. v. Safeway Discount Drugs, Inc., 675 F.2d 1160, 1163 (11th Cir. 1982) ("[A] trademark identifies and distinguishes a product, ... and a trade name [identifies and distinguishes] a business.").

2.  Legal standards

The Lanham Act protects trademark owners from infringement by subjecting to civil liability any person who shall, without the consent of the owner of the trademark:

> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a *registered mark* in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is <u>likely to cause confusion</u>, or to cause mistake, or to deceive; or
> (b) reproduce, counterfeit, copy, or colorably imitate a *registered mark* and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is <u>likely to cause confusion</u>, or to cause mistake, or to deceive.

15 U.S.C. § 1114(1) (emphasis added).  The Lanham Act also protects against unfair competitive use of trade names, by authorizing civil actions against:

> [a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, *name*, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –
> > (A) is <u>likely to cause confusion</u>, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> > (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities.

15 U.S.C. § 1125(a) (emphasis added).

To prevail on a trademark (or trade name) infringement claim, a plaintiff must establish that it has the rights in the trademark/name at issue and that the infringer: 1) used the trademark/name in commerce without the owner's consent,

15

and 2) that such use was likely to cause confusion.  See, e.g., Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, 605 F.3d 931 (11th Cir. 2010) (reversing summary judgment for alleged infringer of trademark where sufficient evidence of strength of mark and actual confusion by relevant consumer had been offered).  Plaintiff Mr Chow Enterprises, Ltd., owns the mark "Mr. Chow," registered as of July 7, 1981, for "restaurant services and carry out restaurant services."  Plaintiffs' Ex. 1.

The parties agree that in this case a determination of whether Defendants' conduct was "likely to cause confusion" was the critical issue as to both Counts I and II.  The parties also agree that in this case the relevant factors for considering whether Plaintiffs established a likelihood of confusion as to the alleged infringement of the trademark and the trade name are identical.  The Court of Appeals for the Eleventh Circuit has adopted a seven-factor test to determine whether there is a likelihood of confusion as to the use of a registered trademark/name.  The factors are:

> 1) strength of the plaintiff's mark,
> 2) similarity between the plaintiff's mark and the allegedly infringing mark,
> 3) similarity between the products and services offered by the plaintiff and defendant,
> 4) similarity of the sales method,
> 5) similarity of advertising methods,
> 6) defendant's intent, and
> 7) actual confusion.

See, e.g., Tana v. Dantanna's, 611 F.3d 767, 772-73 (11th Cir. 2010) (affirming summary judgment for alleged competitor restaurant with very similar name, due to insufficient evidence of likelihood of confusion or intentional appropriation of

trademark); Cumulus Media, Inc. v. Clear Channel Comm'ns, Inc., 304 F.3d 1167, 1172 n.5 (11th Cir. 2002) (affirming entry of preliminary injunction in action brought for infringement of unregistered mark or trade name). The jury was instructed as to these seven factors, and directed that they also could consider "[a]ny other factors that bear on likelihood of confusion." ECF No. 350, p. 14.

### 3.  Evaluation of the evidence supporting the jury verdict

A new trial should not be granted on evidentiary grounds unless the verdict is "against the clear weight of the evidence ..., even though there may be substantial evidence which would prevent the direction of a verdict." Hewitt v. B.F. Goodrich Co., 732 F.2d 1554, 1556 (11th Cir. 1984) (citations omitted). As the finder of fact, the Court properly defers to the jury unless their verdict is against the great weight of the evidence. "[W]hen independently weighing the evidence, the trial court is to view not only that evidence favoring the jury verdict but evidence in favor of the moving party as well." Williams v. Valdosta, 689 F.2d 964, 973 (11th Cir. 1982). The Court, however, should not substitute the Court's "own credibility choices and inferences for the reasonable credibility choices and inferences made by the jury." Id. Whether this Court would have reached the same conclusion "is irrelevant, as long as there is some support for the jury's decision." Rosenfield v. Wellington Leisure Products, Inc., 827 F.2d 1493, 1498 (11th Cir. 1987).

<u>a. evidence of actual confusion</u>

Plaintiffs argue that the evidence of actual confusion, the seventh factor of

the "likelihood of confusion" test, was substantial, and that Defendants caused

"massive confusion" by their alleged infringement of Plaintiffs' trademark and trade

name.  To support their argument, Plaintiffs rely on several items published in

either newspapers or on the internet which indicated confusion as to whether the

Defendants' restaurants were related to Plaintiffs' restaurants; according to

Plaintiffs, if these authors were confused, then actual confusion exists between

Plaintiffs' and Defendants' restaurants' customers.  Plaintiffs also rely on testimony

by Plaintiffs' employees who reported that customers were confused, and on

statements reportedly made by a member of Defendants' staff, e.g., that customers

"make that mistake [that the restaurants are affiliated] all the time."  At trial,

Plaintiffs did not offer a survey of potential or actual customers, nor any other

evidence - beyond that noted above - supporting a finding of likelihood of confusion.

Defendants argue that the Plaintiffs were unable to prove that consumers

were likely to be confused as to the parties' restaurants during the nearly four years

in which Defendants' restaurants have been competitors of Plaintiffs' restaurants.

Specifically, Defendants argue that the admission of statements allegedly made by

Plaintiffs' customers to Plaintiffs' employees was improperly admitted hearsay.  For

example, Defendants claim that Plaintiffs' counsel questioned employees as to the

specific words customers allegedly had used to describe why they were confused[22]

---

[22]"What did they say?" "Did they say where they were getting that

information from?"  Trial Tr., Jan. 31, p. 39; "What kind of things would people

18

and, in so doing, demonstrated that such testimony was being offered to establish the truth of the matter, i.e., customer confusion, by reference to the specific words and, therefore, that such testimony should have been excluded.  Defendants argue that even if the improper hearsay as to "actual confusion" is considered, there was insufficient evidence at trial to prove that a likelihood of confusion has been caused by Defendants' use of "Philippe by Philippe Chow."

The Court first addresses the Plaintiffs' argument that "major newspapers explicitly told their readers that the Philippe Chow restaurants <u>were</u> 'Mr. Chow.'"[23] In support of this argument, Plaintiffs' motion for new trial references several exhibits, each of which is discussed, below.

Two "major newspapers" are referenced among these exhibits: the New York Post and the New York Times, but none of the exhibits reveal that those publications "told their readers" that the Defendants' restaurants were the Plaintiffs' restaurants.  Two of the pertinent exhibits are printouts from nypost.com, one of which is from a posting about "dating" (describing a blind date which took place at a Philippe restaurant which was described a "Mr. Chow's famous Chinese restaurant"),[24] the other is a posting/article which describes the

---

say?"  Trial Tr., Jan. 31, p. 114; "What did they say?" Trial Tr., Feb. 2, p. 63.

[23]The "major newspapers" reference by Plaintiffs is somewhat misleading; none of the exhibits include a critic's review of the competing restaurants, nor were the majority of these items written by someone affiliated with a "major newspaper."

[24]The exhibit which was printed from <u>www.nypost.com,</u> appears to be a blog posting, from March 2008, reporting on a blind date which the author arranged to take place at the Defendants' New York restaurant, which the author described as "Mr. Chow's famous Chinese restaurant, Philippe."  The author herself did not go to

instant lawsuit[25] – neither of these are necessarily evidence of actual consumer confusion.  And, the only exhibit related to the New York Times is from a "Blog on Dining Out," hosted by the New York Times, which simply refers to a press release (apparently issued by the Philippe restaurants) regarding a survey of New York restaurants.[26]

Of the other exhibits offered by Plaintiffs, all appeared on websites (gayot.com,[27] roxibeatrice.blogspot.com[28]) with an unknown readership, or on an

---

the restaurant, instead sending a"Josh" and a "Lauren" to dine there.  Plaintiffs' Ex. 68 ("'Shanghai Surprise', by Saryn Chorney, last updated 3:00 a.m. March 16, 2008").

[25]An exhibit which appears to be an internet posting or article from the New York Post references the instant lawsuit; the posting, by Jeremy Olshan, includes a statement by Defendant Morfogen that clarifies that there is no familial relationship between Michael Chow and Philippe Chow Chau.  Plaintiffs' Ex. 95 ("Ow!  'Chow' a Chau Till Now," by Jeremy Olshan, last updated 11:13 a.m., July 10, 2009).

[26]Plaintiffs provided a printed version of a blog posting apparently affiliated with the New York Times, www.dinersjournal.blogs.nytimes.com, which includes the blog post author's brief "Congratulations, Mr. Chow" which he posted after receiving a press release in October 2009 noting that "Philippe Named Top Chinese Restaurant in NYC."  Plaintiffs' Ex. 73.  The author is not identified as a customer of the restaurants, and this brief mention may have been insufficient to convince the jury that this was evidence of actual confusion by relevant consumers.

[27]A blog posting, printed from www.gayot.com, with an unspecified audience, briefly announces several different restaurants which are opening in New York City, among which Philippe's restaurant is included ("Philippe Chow, the chef known as Mr. Chow, is about to fire up the stoves at his new eatery." Plaintiffs' Ex. 63).  This post is not written by someone identified as a customer of either Plaintiffs' or Defendants' restaurants, and the jury may have concluded that this was not evidence of actual confusion of customers of the restaurants.

[28]A blog posting, printed from www.roxibeatrice.blogspot.com, reports that "Phillipe [sic] is opening a location in West Hollywood ….  Philippe is by Mr. Chow the food is just as incredible but not a set menu."  Plaintiffs' Ex. 72.  Again, this

open website to which the public can post a comment (yelp.com[29]) and, as such, may

have been viewed by the jury as of little persuasive value in determining that

actual consumers were confused.

Moreover, among Plaintiffs' exhibits at trial were several examples of clearly

stated comparisons between the Defendants' new restaurant and the Plaintiffs'

existing restaurant, indicating that there was not widespread confusion. See, e.g.,

Plaintiffs' Ex. 64, (a restaurant review published in New York Magazine: "Imitation

Chinese: A veteran of the storied Mr. Chow's attempts a spinoff of his own," by

Adam Platt, April 16, 2006, printed from nymag.com); Plaintiffs' Ex. 62 ("Morfogen

makes no effort to divert attention from the [Mr. Chow restaurant nearby]. 'You

have to compare it to Mr. Chow because we have basically their core kitchen, but

it's not like we took all their people,' he said, nothing [sic] that there were chefs that

retired 10 years ago that recently came back." "Woks & Waterfalls On The UES,"

dated December 19, 2005, printed from www.fashionweekdaily.com).

"'Short-lived confusion or confusion of individuals casually acquainted with a

---

appears to be simply a brief announcement of an upcoming opening of a restaurant
in late 2009, on a blog which has an unknown audience; in addition, the author is
not identified as an actual customer of either Plaintiffs' or Defendants' restaurants.

[29]Plaintiffs' Ex. 125 is printed from yelp.com, and includes a comment posted
by a "Lisa M." of Boca Raton, Florida, as to the Defendants' restaurant in Boca
Raton (which was closed before the trial of this case) which states: "This is one of
the best restaurants .... I've eaten at Mr. Chow in LA and NYC and am so pleased to
have one in my neighborhood." While the author of this comment, posted on a
website to which the public is invited to contribute comments, claims to be a
customer of Plaintiffs' restaurants, it is unclear that this customer also dined at
Defendants' restaurants, nor is it clear whether the apparent confusion revealed in
the comment carried enough weight to persuade the jury of the author's actual
confusion.

21

business is worthy of little weight while confusion of actual customers of a business is worthy of substantial weight.'" Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC, 605 F.3d 931, 936 (11th Cir. 2010), quoting Safeway Stores, Inc. v. Safeway Discount Drugs, Inc., 675 F.2d 1160, 1167 (11th Cir. 1982). "[T]he consumers of the relevant product or service, especially the mark holder's customers, turn the key [as to evidence of likelihood of confusion]." Caliber, at 936. Plaintiffs did not establish that the persons writing these blog postings or comments were actual customers of Plaintiffs' restaurants, with the possible exception of the "Lisa M." who posted a comment on yelp.com, nor did they establish that the reading audience - which might include actual customers of Plaintiffs' restaurants - was confused.[30]

In summary, a review of all of these exhibits, along with the other evidence introduced at trial, does not reveal that there was "rampant newspaper confusion," as claimed by Plaintiffs.  The jury simply may not have viewed these exhibits as evidence of actual confusion by the relevant consuming public, or may not have found that any confusion indicated in these exhibits had been caused by Defendants' use of "Philippe by Philippe Chow."

As to the statements allegedly made by Plaintiffs' customers, as reported by Plaintiffs' employees, this Court overruled the Defendants' objections and admitted

---

[30]Plaintiffs argued that the "enormous" reading audience of these publications were "all potential consumers" of Plaintiffs' restaurants.  In fact, it appears that only some of the readers of these blogs or other media sources might be Plaintiffs' customers, and that those readers maybe would be confused if they read these comments.  The Court cannot make a finding of actual confusion based on such reasoning.

the evidence, despite the weakness of Plaintiffs' arguments as to admissibility.[31]

> In limited and appropriate circumstances, courts have considered evidence of customer confusion recounted in the business' employees' affidavits. Such evidence is considered admissible as evidence of the consumers' state of mind, not as proof of the truth of the matter asserted. However, this exception is not open-ended or without boundaries. Rather, the evidentiary value of such proof of customer confusion depends on the facts and circumstances presented.... Vague statements suggesting that some unidentified customer expressed some sort of general confusion is "practically useless," and is properly disregarded by the Court.

Atlantic National Bank v. Atlantic Southern Bank, 2010 U.S. Dist. LEXIS 133665

(S.D. Ga. July 29, 2010) (citations omitted) (rejecting claim that there was a

likelihood of confusion, and granting summary judgment in favor of alleged

---

[31]The Court overruled Defendants' objections to the testimony of Plaintiffs' employees at trial as to the alleged confusion on the part of their customers, as this Court tends toward a broad approach to admissibility of evidence. Plaintiffs argued persistently that the statements were not hearsay, as they were not being offered to demonstrate that the Plaintiffs' and Defendants' restaurants were the same, but rather were offered to establish that customers were confused. On further reflection, the Court might not have been correct in admitting such testimony - particularly since it generally was introduced without specific information as to when the statements by customers were made, or which customers made such statements. In Air Turbine Technology, Inc. v. Atlas Copco AB, 295 F. Supp. 2d 1334 (S.D. Fla. 2003), a court faced arguments similar to those which Plaintiffs presented during the trial of this case. "Plaintiff initially argues that these statements are not being offered for the truth of the matter asserted. The Court rejects this argument. It is only because of the asserted truth of the statements that they are being offered." Id., at 1345 n.6. That court reviewed several decisions of the Eleventh Circuit as to the admissibility of consumer statements, and discerned that while hearsay testimony might be admissible to demonstrate a state of mind of "confusion," the reason behind the state of mind was not admissible as evidence of, for example, the alleged "false advertising." The court cited the 1972 Advisory Committee Notes to Fed. R. of Evid. 803(3), noting that the exclusion of "statements of memory or belief to prove the fact remembered or believed" from admissibility pursuant to this Rule "is necessary to avoid the virtual destruction of the hearsay rule which would otherwise result from allowing state of mind, provable by a hearsay statement, to serve as the basis for an inference of the happening of the event which produced the state of mind."

infringer).  The evidence offered through Plaintiffs' employees suggested that some diners at Plaintiffs' restaurants apparently had desired originally to dine at Defendants' restaurants - e.g., diners had made reservations at Defendants' restaurants but arrived at Plaintiffs' restaurants, diners ordered dishes which were not served at Plaintiffs' restaurants but claimed that they had ordered the dish on a prior visit (obviously, at Defendants' restaurants), etc.  Even with the admission of this suspect evidence, the jury apparently did not find that the alleged trademark or trade name infringement had resulted in actual consumer confusion.

The consumers' statements, reported only by Plaintiffs' employees (and admitted as evidence despite Defendants' objections thereto), must be evaluated as to what extent of actual consumer confusion was represented in those statements. Tana v. Dantanna's, at 779-780.  Without specifics as to the consumers' basis for confusion, e.g., the record is silent as to what caused these customers' confusion, the jury might have found that the confusion was not based on Defendants' allegedly infringing use of "Philippe by Philippe Chow."[32]  Or, the jury may have made a credibility determination as to the Plaintiffs' witnesses - a determination which this Court should not disturb - which limited the persuasive value of this testimony.  In short, the Court cannot find that the Plaintiffs' employees' testimony was such clear

---

[32]The testimony by Plaintiffs' employees also may have been perceived to establish that Plaintiffs inadvertently obtained new customers in recent years as such customers sought out Plaintiffs' restaurants when, instead, the customers originally had planned to visit Defendants' restaurants - which the evidence indicated have been successful in gaining a favorable reputation.  While this evidence clearly does suggest confusion on the part of customers, it does not demonstrate that the confusion was related to the Defendants' use of an infringing mark or name.

evidence of actual customer confusion caused by an alleged infringement by Defendants such that the jury's verdict on the infringement claims must be set aside.

Finally, as to the isolated statements allegedly made by Defendants' employees, which Plaintiffs claim provide evidence of consumer confusion, the jury reasonably could have found this evidence to be unpersuasive.  For example, Michael Chow's sister-in-law, Ms. Chun, testified that she phoned the Defendants' restaurant in New York soon after it was open (in late 2005/early 2006) and the person on the phone responded "yes" when Ms. Chun asked if it was "Mr. Chow." Trial Tr. Jan. 30, p. 74.  As another example of this type of evidence, Ms. Valerie Rivera-Giraud, a former probation officer hired by Plaintiffs to serve as a private investigator (admittedly not an expert on food or the restaurant industry),[33] testified that when she made her reservation by telephone with Defendants' restaurant, she asked if the restaurants were affiliated because they both had the same last name, and was told that "the former chef from Mr. Chow works at Philippe" and that "people make that mistake all the time."[34] Trial Tr., Feb. 2, pp.

---

[33]Ms. Rivera-Giraud was asked to visit Defendants' restaurant in Miami Beach in December 2011 and compare it to Plaintiffs' restaurant in Miami Beach. Trial Tr., Feb. 2, p. 39.

[34]Defendants objected to introduction of this testimony, but Plaintiffs' counsel persuaded this Court that the statements were made by a party opponent.  Upon further reflection, the Court views this evidence as having been offered for the truth of the matter asserted, and not subject to a hearsay exception; I probably should have excluded this evidence at the time, as a reservations agent is not an agent of the party to the extent that they do not have the authority to bind the party on a critical issue in litigation (such as whether there is a likelihood of confusion between the Defendants' and Plaintiffs' restaurants).

63-64. The former statement is not exactly misleading, nor is it relevant evidence of any confusion by customers,[35] and the latter statement - which may have been viewed by the jury as an offhand or isolated remark - is not direct evidence of actual confusion by customers of either Plaintiffs' or Defendants' restaurants. Indeed, Ms. Rivera-Giraud herself testified that when she spoke to a patron next to her, whom had been to both restaurants, that the patron "understood that the restaurants were different." Trial Tr., Feb. 2, p. 61. (That patron had been told that the restaurants were not affiliated. Id.)

### b. evidence of the likelihood of confusion

Finding that the evidence of "actual" confusion was somewhat lacking, the Court turns to evaluation of the other factors which can demonstrate a likelihood of consumer confusion. If the Plaintiffs failed to carry their burden of establishing that consumers were likely to be confused by Defendants' use of "Philippe by Philippe Chow," then the verdict for Defendants was proper and the motion for new trial should be denied.

The jury was instructed that they could consider all seven factors of the test,

---

[35]At trial, Plaintiffs exhaustively addressed the question of whether Philippe Chau had ever been a <u>head</u> chef or <u>master</u> chef at Plaintiffs' restaurants, instead referring to him as one of the staff, among others, responsible for a certain set of duties lesser than those of the head chef (e.g., Chau was a "great expediter-chopper," Trial Tr., Jan. 26, p. 160, but not sufficiently skilled for the "first wok" position in the kitchen, as "first wok is sort of sacred ground, only for the ... head chef," Trial Tr., Jan. 24, p. 130, etc.). The jury was free to evaluate to what extent Philippe Chau had served as a "chef," "head chef," or "master chef," and whether his status as a "chef" was pertinent to the issue of consumer confusion.

identified above, in order to determine whether Defendants' allegedly infringing conduct created a likelihood of confusion. Specifically, the jury was instructed that they could consider the strength or weakness of Plaintiffs' trademark. "A mark's strength is measured by its distinctiveness.... [D]escriptive marks ... may not be distinctive at all [and, therefore] may be weak and entitled to a narrower range of protection, if any." ECF No. 350, p. 11. The jury was instructed that the "Mr. Chow" mark was considered "incontestable" and was presumed to be at least a descriptive mark with secondary meaning. Id., pp. 12, 17.

The Plaintiffs' mark, "Mr. Chow," was registered decades ago, and has been used (in the modified version, "Mr Chow") continuously and prominently by Plaintiffs' restaurants. While Plaintiffs apparently do not engage in advertising, it was evident at trial that Plaintiffs foster a conscious connection between Plaintiff Michael Chow's name and his restaurants. For example, Plaintiffs played a video-recording of a party celebrating the thirtieth anniversary of the Plaintiffs' restaurant in California, which included recordings of congratulations to "Michael" from dozens of celebrities. Plaintiffs' Ex. 111.

Defendants do not dispute that the "Mr. Chow" mark is associated, at least in the minds of Plaintiffs' customers, with Plaintiffs' restaurants which offer Chinese cuisine in a fine dining environment. Defendants offered evidence, however, that multiple other entities have obtained trademark registrations including the name "Chow" (a total of fifty three registrations relating to restaurants and restaurant services, and sixty one relating to food-related goods and services, were identified),

and have registered businesses which include "Chow" in the business name (one hundred and three businesses registered in New York, California, and Florida). Defendants' Ex. 16.[36]  The jury may have determined that this evidence indicated that the Plaintiffs' mark, "Mr. Chow," was not particularly strong, as the jury was instructed that "[t]he extent to which third parties have used the same mark is also something that you may consider in determining the strength of the mark."  ECF No. 350, p. 12.[37]

As to the factor relating to similarity of the marks, there was little or no evidence that Defendants ever used the specific mark "Mr. Chow."  Defendants have continuously used "Philippe by Philippe Chow" or "Philippe Chow" or "Philippe" in association with their restaurants, including use of these names in signs, menus, plates, etc.  (See Defendants' Exs. 69, 80, 87-91.)  Plaintiffs argue that Defendants' choice of "Chow" for use in their restaurants resulted in misleading consumers.

Plaintiff Michael Chow testified at trial that he always knew Defendant Chau as "Philippo Chau" during the 25 years he worked for Plaintiffs' restaurants. Trial Tr., Jan. 26, pp. 126-27, 129.[38]  When Defendant Chau became a naturalized

---

[36]While there may be some duplication among these registrations, the evidence clearly demonstrated third party use of the term "Chow."  Although the Plaintiff's trademark is "Mr. Chow" and not simply "Chow," the use by dozens of other entities of the term "Chow" was admitted as relevant to whether a likelihood of confusion existed between Plaintiffs' and Defendants' restaurants.

[37] Indeed, the jury's verdict for Defendants as to the claimed infringement may indicate that the jury determined that Defendants' use of "Philippe by Philippe Chow" was not an infringement as to the mark "Mr. Chow."

[38]See, also, Plaintiffs' Ex. 43, memo from Michelle Chun to staff of Plaintiffs' New York restaurant, dated January 17, 2003 ("Always communicate through Mr.

citizen of the United States (in August 2006), he changed his legal name from Chak Yam Chau to "Philippe Chow Chau." Trial Tr., Feb. 8, pp. 59-60, 65, 68.[39] Defendant testified that he chose the name Philippe because his name already had been informally changed to Philippe ("an English name that will be easier", Trial Tr., Feb. 9, p.12), by one of the chefs at Plaintiffs' restaurants with whom Defendant worked for many years, and also that customers usually called him Philippe, Trial Tr., Feb. 8, p. 65. He also testified that he chose "Chow" as his middle name because it represented a spelling of his Cantonese name "Chau" which sounded the same and which others already assumed was the correct spelling. Trial Tr., Feb. 8, p. 64; see, also, Trial Tr., Feb. 13, pp. 16-17.

Plaintiff Michael Chow conceded that from "day one" he bonded with and liked Defendant Chau, as they shared the same last name/character, a symbol pronounced "Zhou," from their country of origin, China. Trial Tr., Jan. 25, pp. 71-72; Trial Tr., Jan. 26, pp. 129-30. The jury heard extensive testimony from Plaintiff Chow as to the history of the pronunciation of the Chinese character, the difference between the Cantonese and Beijing dialects, the colonization of Hong Kong by the British, and resulting modification of Zhou to Zhow and then Chow. Trial Tr., Jan. 25, pp. 71-74. The jury easily could have concluded that because Defendant's legal name was Philippe Chow Chau, at least as of August 2006, and his legal name prior

---

Hor and in his absence, talk to Phillipo.").

[39]It is undisputed that Defendant Chau submitted a properly supported Petition for Name Change to the U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services, to change his name to Philippe Chow Chau, ECF No. 287, p. 7, ¶ 5.ff., in August 2006 and such name change was completed.

to that time was Chak Yam Chau, that he was entitled to use the name "Chow" as to his restaurants and that the use of the name was not necessarily evidence of trademark or trade name infringement.[40]

Moreover, the jury was instructed that "each mark must be considered as a whole.... [and that likelihood] of confusion cannot be based on dissection of a mark, that is, on only part of a mark. The mere fact that both marks share a common term does not by itself make the marks similar enough to establish likelihood of confusion." ECF No. 350, p. 12. While the evidence clearly established that the focus at Plaintiffs' restaurants is on the identity of the founder, Michael, i.e., Mr., Chow, the evidence also clearly established that the prominent term in the Defendants' restaurants' trade name is Philippe by Philippe Chow.

Nor did Plaintiffs establish that Defendants knew that a trademark as to the name "Mr. Chow" existed prior to the filing of this lawsuit. Plaintiff Chow admitted that Defendant Chau probably would not have known that Plaintiffs had a trademark as to "Mr. Chow" when Defendant left Plaintiffs' employment in late 2005 to open the Philippe restaurants. Trial Tr., Jan. 25, p. 61. Indeed, there was no direct evidence offered that Plaintiffs told Defendants that they were infringing on Plaintiffs' trademark prior to the initiation of this case in late 2009. The Jury Instructions specified that Plaintiffs could recover damages for trademark infringement only if Plaintiffs "have proven by a preponderance of the evidence that

---

[40]Moreover, whether Defendants' restaurants had used "Chow" or, instead, "Chau," in their name may be of little moment, as the pronunciation of the two versions of the word is similar, if not identical, and the Plaintiffs may well have argued that confusion existed as a result of the similar sound of the name.

Defendants had either statutory or actual notice that Plaintiffs' trademark was registered." ECF No. 350, p. 17.[41]

The jury heard from several witnesses that Plaintiffs did nothing to protect their trademark or trade name use by Defendants for several years, despite being aware of Defendants' competing restaurants even before the first of such restaurants opened in early 2006.[42] For example, Brahim Muratovic (referred to by all parties as Brian Murati), a longtime employee of Plaintiffs and the current maitre d' manager at Plaintiffs' restaurant located on 57th Street in New York City, testified that he provided a copy of Defendants' menu to Michael Chow and Michelle Chun (a manager of the Plaintiffs' restaurants) in December 2005. Trial Tr., Jan. 31, pp. 28-30.

Mr. Murati, who had been employed at the Plaintiffs' 57th Street restaurant since 1979, testified that he saw Defendants' menu (with "Philippe by Philippe Chow" at the top of the menu)[43] and sent it by facsimile to Ms. Chun and to Michael Chow, who was in Los Angeles at the time, because Mr. Murati was concerned that some items on that menu were identical to items being served at the Mr Chow

---

[41]The claim for trade name infringement, of course, does not include a similar requirement for imposition of damages, as a "trade name" need not be registered in order to entitle the user to pursue a claim for damages under the Lanham Act.

[42]Defendants argued that Plaintiffs waited to file this lawsuit until after Defendants opened a restaurant in Miami Beach near the location where Plaintiffs intended to open a competing restaurant, in an attempt by Plaintiffs to gain favorable (and free) publicity.

[43]Mr. Murati also testified that he visited Defendants' restaurant on 60th Street in New York City before it opened and was given a full tour of the new restaurant by Defendant Morfogen. Trial Tr., Jan. 31, pp. 34-35, p. 51.

restaurant. Trial Tr., Jan. 31, pp. 49-51. Mr. Murati testified that Plaintiff Chow and Ms. Chun did nothing about the allegedly copied menu items after they received the Philippe restaurant's menu. Ms. Chun admitted that she knew of the Defendants' opening in December 2005 and saw a menu, and that she told both Plaintiff Chow and also Ms. Chun's sister, Chris Chun, an attorney working for Plaintiffs at the time, about this information. Trial Tr., Jan., 30, pp. 122-124.

As further evidence of Defendants' transparency as to the launching of its restaurants as competitors to Plaintiffs' restaurants, which arguably might support a determination that Defendants did not engage in bad faith or intentional infringement, Defendant Chau testified that he and Defendant Morfogen appeared on an episode of the Martha Stewart television show in February 2006, preparing a menu item titled "Green Prawns," and that another of Defendants' employees, Mr. Cheng, appeared on that same episode and performed a "noodle show" (making noodles by pulling dough by hand). Trial Tr., Feb. 9, pp. 23-24.[44]

To support Plaintiffs' claim that Defendants should have known that they were infringing on a trademark, Plaintiffs' counsel relied heavily on one phone call placed by Ms. Chun to Defendant Chau soon after the Defendants opened their first restaurant in New York City. In closing argument, Plaintiffs' counsel stated that Ms. Chun provided adequate notice to Defendants by that phone call, and that her

---

[44]During this testimony, Plaintiffs' counsel objected that the word "show" was ambiguous. Counsel conceded that noodle pulling has been done for "hundreds of years" but implied that performing such feats "on the floor of a restaurant" was a distinctive aspect of Plaintiffs' restaurants which Defendants had copied. Trial Tr., Feb. 9, pp. 24-25.

oral statements were "just as good as a lawyer writing a letter." Trial Tr., Feb. 16, p. 80. However, it was undisputed that Defendant Chau - the recipient of Ms. Chun's call, had some limits in his use of the English language (indeed, he testified at trial with the help of an interpreter), and that Ms. Chun was speaking in English, and rapidly, when she telephoned Defendant Chau to tell him to "not bother my chef, you're not allowed to walk on the 57th Street." Trial Tr., Feb. 8, p. 74. Ms. Chun testified that she was upset and told Defendant Chau that "you copied the menu, you tried to steal the name, all these things you're doing is really wrong.... And stop coming around the restaurant trying to steal staff and doing all this nonsense." Trial Tr., Jan. 30, pp. 69-70. Defendant Chau testified that after Ms. Chun finished scolding him, she hung up the phone. Trial Tr., Feb. 8, p. 74.[45]

Plaintiffs' counsel asked Defendant Chau (at least five times) whether there was a portion of the call that he did not understand because Ms. Chun was speaking rapidly and in English; counsel apparently was attempting to "establish that there was a great deal said that [Defendant] was not remembering." Trial Tr., Feb. 8, pp. 77-78. But that line of questioning instead simply established that Defendant probably did not understand much of what Ms. Chun was stating, as she herself had admitted that she was upset and didn't let him speak. Defendant testified that he remembered clearly that Ms. Chun told him to not bother her chef and to not walk on 57th Street, but he could not remember much of the call because

---

[45]Ms. Chun acknowledged that she told him not to speak until she finished speaking, and that when he tried to say something, she hung up the phone  ECF No. 311, p. 70.

he was very upset about being told to avoid walking on the street.  Trial Tr., Feb. 9, p. 76.  Moreover, Ms. Chun did not even testify that she referenced the trademark during the telephone call.[46]

In light of the Plaintiffs' failure to pursue Defendants until almost four years after the competing restaurants had been opened, the jury may have determined that Plaintiffs themselves did not find much similarity between the "Mr. Chow" trademark/trade name and the allegedly infringing mark used by Defendants, nor similarity between the products and services offered by the competing restaurants.[47] The clear weight of the evidence indicated that the Defendants may not have been

----

[46]Although the question of laches was not presented to the jury, the jury may have been troubled by the fact that there was only this single contact by Plaintiffs in the nearly four years between the opening of Defendants' restaurants and the filing of this lawsuit.

[47]Plaintiffs' Count III alleged unfair competition by "Trade Dress Infringement."  "'[T]rade dress infringement' is a subset of the 'false designation of origin' or 'false or misleading description of fact' claims originally recognized under § 43(a)."  Hyman v. Nationwide Mut. Fire Ins. Co., 304 F.3d 1179, 1187 (11th Cir. 2002).  "'Trade dress' involves the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques."  John H. Harland Co. v. Clarke Checks, Inc., 711 F.2d 966, 980 (11th Cir. 1983) (citations omitted).  "The factors relevant to determining whether there is a likelihood of confusion between the trade dress of two products are 'essentially the same' as those relevant to determining whether there is a likelihood of confusion between the parties' trademarks."  Id., at 981 (citations omitted).  In Count III, Plaintiffs alleged that Defendants copied "signature dishes, menu, and all the other distinctive elements" associated with Plaintiffs' restaurants, and the Jury Instructions stated that trade dress "may include the general appearance of the exterior and interior of the restaurant, the décor, the menu, the style of service, the style of preparation, and any other features reflecting on the total image of the restaurant."  The jury entered a verdict in favor of Defendants as to this Count, and Plaintiffs do not seek a new trial as to the allegations of trade dress infringement.

aware of Plaintiffs' trademarks until the filing of this lawsuit in 2009.[48]

The jury also heard testimony and saw physical evidence of the significant distinctions between the parties' restaurants which may have contributed to the jury's conclusion that Plaintiffs had not established a likelihood of confusion.  For example, the style of the lettering in the restaurants' names is different, the color scheme in their restaurants is not the same,[49] the menu items are not identical (although the evidence revealed that many items are similar[50]), etc.  Plaintiff Chow

---

[48]Defendant Morfogen testified that he had no notice prior to May 2009 from Plaintiffs that he was engaging in false advertising by purchasing internet search terms, which included "Mr. Chow," Trial Tr., Feb. 7, p. 85, and his testimony as to this issue was uncontroverted.  See discussion, *infra*, relating to false advertising claims.

[49]Ms. Rivera-Giraud testified that Plaintiffs' restaurant had a blue carpet, and served food on silver plates, and Defendants' restaurant had a red carpet, and served food on ceramic plates marked with "Philippe" - such that the décor was similar but the "ambience [of the restaurants was] different."  Trial Tr., Feb. 2, p. 60.

[50]Although Plaintiffs do not challenge the jury's verdict for Defendants as to conversion, the Court addresses the issue here to illustrate the weakness of Plaintiffs' case as to the alleged trade name infringement and consumer confusion. During deliberations on February 21, 2012, the jury posed the following question: "For conversion of intellectual property are we to decide if Mr. Chow has the copyright of the signature dish and decoration."  The Court responded, pursuant to the agreement of counsel, "No. You do not need to determine if Mr. Chow has a copyright for the 'signature dish and decoration' you mention in your question.  You only need to decide if these terms are 'intellectual property' under the instruction I have given to you on Conversion and also consider all of the factors in the instruction on Conversion."  The jury's question reveals that the jury was considering whether Plaintiffs had a signature dish and decoration which might have been converted by Defendants; it is reasonable to conclude that the jury had duly considered a similar question as to whether any signature dish or decoration had been infringed by Defendants.

35

testified that he perceived fortune cookies as "symbolically very demeaning ... to the culture of my country" and that he would never serve fortune cookies in his restaurants. Trial Tr., Jan. 26, p. 99. In contrast, a witness hired by Plaintiffs to visit the Defendants' restaurant in Miami Beach testified that she was served fortune cookies at Defendants' restaurant, and that the message in the cookie was "sexual and almost crude in content." Trial Tr., Feb. 2, p. 45.

Plaintiffs also offered testimony that many of their customers consistently or regularly dined at their restaurants, for example, Plaintiff Chow testified that ninety percent of the clientele at the 57th Street restaurant in New York City were local residents who supported the restaurant, Trial Tr., Jan. 26, pp. 76-77, and Ms. Chun testified that their long-time clients had been ordering one of Plaintiffs' menu items, Chicken Satay, "for decades," Trial Tr., Jan. 30, pp. 108-109, which suggests that such clients might not be likely to be confused by the opening of a competing restaurant even if that restaurant were only a few blocks away and served similar menu items. Plaintiff Chow also testified that the Plaintiffs' restaurants are known throughout the world and that he also is a well known figure in the United States. Trial Tr., Jan. 25, pp. 168-169.[51] This evidence suggests that a finding of likelihood

---

[51]Plaintiffs played a video for the jury which had been recorded during a celebration of the thirtieth anniversary of a Mr Chow restaurant; that video revealed that a number of actors and other public figures were personally sending their anniversary greetings to "Michael" Chow. Plaintiffs' Ex. 111. This is additional evidence that the jury might have weighed in determining that, at least as to the clientele frequenting the Plaintiffs' restaurants, there was little likelihood of confusion between Plaintiffs' restaurants and Defendants' restaurants, as Plaintiffs' customers strongly associated Plaintiffs' restaurants with Plaintiff Chow, himself.

of confusion by consumers was by no means the only conclusion that the jury could have reached. The Court cannot conclude that the great weight of this evidence established a likelihood of confusion related to Defendants' alleged use of the Plaintiffs' trademark or trade name or use of a name "similar to" the trademark or trade name (see Jury Instructions, ECF No. 350, pp. 9, 19).[52]

As to the fourth and fifth factors of the likelihood of confusion test, i.e., the similarity of the sales method, and the similarity of advertising methods, the jury reasonably could have found that Plaintiffs did not establish that the relevant class of consumers would be confused by Defendants' competing restaurants' sales or advertising methods. For example, Plaintiffs eschew commercial advertising. "[W]e don't do much advertising or marketing, because Mr. Chow, the restaurant gets lot [sic] of publicity on its own. .... [W]e don't really advertise to promote the restaurant." Trial Tr., Jan. 30, p. 137 (Ms. Chun). Defendants, in contrast, offered evidence of a promotional baseball cap (Defendants' Ex. 79), happy hour flyer (Defendants' Ex. 83), and gift card (Defendants' Ex. 84) associated with Defendants' marketing efforts.

Finally, as to Defendants' intent to compete unfairly and the balancing of this factor along with the other factors of the applicable test, the Court notes that the

---

[52]Although the jury necessarily had to find that the Defendants' conduct caused a likelihood of consumer confusion in order to find for Plaintiffs as to the common law claim for unfair competition, see Jury Instructions, ECF No. 350, p. 28, that finding did not require the jury to identify that Defendants had used the federally-protected trademark or trade name "Mr. Chow." For example, the jury may have found that Defendants simply engaged in "deceptive or fraudulent conduct," e.g., false advertising, not related to the specific use of the "Mr. Chow" trademark or trade name.

jury heard repeated arguments from Plaintiffs and their counsel as to Defendant Morfogen's alleged intention to take business from Plaintiffs.  Plaintiffs offered testimony that rumors were "out on the street" that Defendant Chau was either Plaintiff Michael Chow's brother or son - an untrue statement apparently attributed to Defendant Morfogen,[53] but the witness offering that testimony admitted that within several months of the Defendants' first restaurant's opening, news articles were correctly noting that the men were not related.  Trial Tr., Jan. 30, p. 120. Plaintiffs also introduced evidence of a prior legal action against Defendant Morfogen alleging use of a competitor's trade name related to a restaurant Defendant operated approximately eight years prior to the opening of the Philippe restaurants.  See, e.g., Plaintiffs' Ex. 61.

Plaintiffs argued at trial that Defendant Morfogen urged Chau to intentionally add "Chow" to his legal name so that he could confuse the consuming public by claiming to be related to Plaintiff Michael Chow.  All of the evidence, discussed above, as to Defendants' legal name change may have demonstrated to the jury that Defendant Chau (and other Defendants) were not intentionally engaging in unfair competition when Defendant adopted the name "Chow."  The jury heard impassioned testimony from Defendant Chau that he left his long-time employer, whom he liked, because "Michael Chow didn't give me the chance, so ... I

---

[53]Plaintiffs also introduced evidence that Defendant Morfogen described Defendant Chau as the "chef and architect of the menu [at Plaintiffs' restaurants] for the past 27 yrs," Plaintiffs' Ex. 80 - a statement clearly lacking in factual support.

believe I need to go out and have my own business." Trial Tr., Feb. 9, p. 46.[54]

The evidence of the intention of Defendants Morfogen and Chau to compete with Plaintiffs' restaurants is not necessarily evidence of an intention to compete unfairly. The great weight of the evidence indicated that Defendants intended to compete directly with Plaintiffs by offering a type of fine Chinese dining which is relatively unique, and available from only a few restaurateurs. The jury's verdict for Defendants on infringement may simply reflect that the jury found that Defendants did not intentionally use "Mr. Chow" in their restaurants' names, menus, etc., and any likelihood of confusion in the mind of consumers was the result of lawful competitive conduct. The law does not protect a trademark owner (or user of a trade name) from all competition, or even from aggressive competitors, but only protects against unfair competition. While Defendants competed openly and, perhaps, aggressively, Plaintiffs have not established that the jury's verdict in favor of Defendants on the infringement claims was against the clear weight of the evidence.

In summary, the jury may have found that there was not credible evidence that the Defendants had used the trademark or trade name "Mr. Chow" in a manner that was likely to cause confusion among consumers, nor that there was sufficient evidence of actual confusion between Plaintiffs' and Defendants'

---

[54]Defendant Chau testified that he resigned because his wife continually asked him why he was not being promoted to head chef by Mr. Chow, particularly since he had been working for Mr. Chow for more than twenty years. Trial Tr., Feb. 8, p. 22. Defendant Chau continued to work for Plaintiffs' restaurant for three years after he was denied the promotion to head chef, and finally left in late 2005, after having worked for 25 years for Mr. Chow. Trial Tr., Feb. 8, pp. 17, 22.

restaurants resulting from Defendants' use of "Philippe by Philippe Chow."[55]  For all the above reasons, the Court cannot find that the verdict in favor of Defendants as to federal trademark and unfair competition by trade name infringement is against the clear weight of the evidence.

### 4.  Alleged misconduct by Defendants and their counsel

As an alternative basis for the granting of their request for a new trial on Counts I and II, Plaintiffs point to four primary areas of defense counsel's allegedly deceptive conduct which Plaintiffs claim prejudiced the jury against them: (1) reference to a magazine article which did not publish a recipe which counsel implied was contained therein (if the article had published the recipe it would have been evidence of the non-secret nature of Plaintiffs' recipes); (2) questions asked as to whether Plaintiff Michael Chow's wife, Eva Chow, had published a cookbook (when in fact the evidence was that no such cookbook had ever been published, and instead that Michelle Chun had written down the Plaintiffs' recipes in a recipe book which was kept in a safe at one of the restaurants) - again purportedly as evidence of the non-secret nature of the recipes; (3) the reading of a transcript of a deposition of Michelle Chun which was referred to by defense counsel as a deposition of Eva Chow; and (4) displaying a photo of a restaurant with the "Chow" name during

---

[55]Plaintiffs argued that there was substantial, "massive," and uncontradicted evidence of widespread actual confusion of consumers that has occurred and is still occurring as a result of Defendants' alleged use of the trademark, but did not offer a satisfactory explanation to the jury as to why Plaintiffs waited for more than three years to pursue a trademark infringement action against Defendants if there was such widespread actual confusion among consumers.

cross-examination of Michael Chow and confusing the witness by referring to a different restaurant.  As to the cookbook issue, the Court gave a curative instruction, on February 13, 2012, advising the jury that Mrs. Chow had not published a cookbook, and that the jury should disregard defense counsel's statement that Mrs. Chow had published a cookbook.  None of the other areas of alleged misconduct rise to the level that they required a curative instruction at trial nor do they require the granting of a new trial.[56]

Plaintiffs also claim that Defendant Morfogen, with his counsel's knowing participation, engaged in misconduct and provided false testimony relating to whether an unrelated restaurant was using the name Mr. Chow or Mr. Chen.  Even if this was an incident of false testimony, and even if defense counsel had knowingly permitted such false testimony - which the Court doubts, the Court does not find that this would be a sufficient basis on which to grant a new trial.  The jury heard sixteen days of testimony and argument, and spent three days deliberating; the Plaintiffs' complaints about Defendants' and their counsel's conduct simply are insufficient to require Court intervention.

Indeed, the Court notes that conduct of all counsel suffered as the trial continued far beyond the parties' original estimate of the time required to try this case.  For example, in closing argument Plaintiffs' counsel referenced an exhibit,

---

[56]Plaintiffs' counsel repeatedly, in the presence of the jury, complained about defense counsel making "misleading" statements.  The Court, of course, would not condone any counsel's intentional misconduct; however, mistakes may be made, in good faith, during litigation and when such mistakes occur, present an opportunity for all counsel to endeavor to improve their future performance.  In this case, any curative instructions which were requested, and necessary, were provided.

Plaintiffs' Ex. 81, as evidence of Defendants' efforts to "attack Mr. Chow ... [o]ver and over again." ECF No. 345, p. 31. The Exhibit is an email sent to Defendant Morfogen by his wife, dated January 26, 2007. Plaintiffs' counsel reported that the email states that "[it would be] the ultimate fuck you to Mr. Chow [to open a restaurant in a location in Miami Beach]" and counsel said "[t]hat tells you what their thinking was; that tells you what they're doing." ECF No. 345, p. 31. Defense counsel responded, properly, in his closing argument that the referenced exhibit was a personal email sent by Defendant's wife, "after Michael Chow told all his vendors in New York City, don't sell them food in 2007. You sell them food, then I'm not going to pay you, and you're no longer going to be my vendor." ECF No. 345, p. 56. He continued by describing that "when Stratis told his wife that, his wife got angry and she said something ... that she's embarrassed about ..., but that's how she felt. Why is that in this courtroom? ... It was his personal email." ECF No. 345, p. 56. Surprisingly, during Plaintiff's rebuttal closing argument, Plaintiffs' counsel again referenced the "fuck you to Mr. Chow" statement contained in the Exhibit and then misstated defense counsel's position by claiming that: "Counsel told you this was written because his wife was angry over the lawsuit. Well, this was written two years before the lawsuit. So, that explanation doesn't fly." ECF No. 345, p. 81. Defense counsel did not object at the time to this mis-characterization of his statement, and the Court - reluctant to interrupt any counsel during closing argument, did not correct the Plaintiffs' counsel's significant mis-characterization. Plaintiffs' counsel's attack on defense counsel was significant, of course, because it

portrayed defense counsel as untruthful, and was one of the last things the jury heard before beginning their deliberations.

In conclusion, and noting that this case was litigated over a period of five weeks, the Court does not find that defense counsel's isolated statements, nor Defendants' conduct during trial, merit a new trial as to Counts I and II.  Plaintiffs failed to object to such statements at the trial and, moreover, have failed to establish that such statements influenced the jury improperly such that a new trial is warranted.


In summary, the Court finds that there was very little evidence of actual consumer confusion introduced at trial - and such evidence may have been considered unpersuasive by the jury.  There was substantial evidence of aggressive competition between the parties, and some evidence that there may be a likelihood of confusion among relevant consumers, but little evidence that Defendants used Plaintiffs' trademark or trade name in such a manner that such use resulted in any demonstrated likelihood of confusion.  The verdict for Defendants as to Counts I and II is not against the clear, or great, weight of the evidence, and Plaintiffs have not established any other basis for setting aside the jury's verdict on these Counts; therefore, Plaintiffs' motion for a new trial is DENIED.

B. Defendants' motion for judgment as a matter of law as to false advertising and common law unfair competition[57]

In ruling on Defendants' motion for judgment as a matter of law, the Court must "consider all the evidence, and the inferences drawn therefrom, in the light most favorable to the nonmoving party ... [and] then determine whether, in this light, there was any legally sufficient basis for a reasonable jury to find in favor of the nonmoving party." Pensacola Motor Sales, Inc. v. Eastern Shore Toyota, LLC, 684 F.3d 1211, 1226 (11th Cir. 2012) (citations omitted). The standard is heavily weighted in favor of preserving the jury's verdict. The Court's assessment of the Plaintiffs' motion for a new trial, above, differs significantly from the Court's analysis of Defendants' motion for judgment; as to the former, the Court had to determine whether the verdict was against the great weight of the evidence, but as to the latter the Court reviews the evidence only to determine whether there was any legally sufficient basis to sustain the jury's verdict - if so, then the verdict should stand.

1. Basis for jury's verdict for Plaintiffs as to false advertising and unfair competition by deceptive conduct

Defendants argue that Plaintiffs failed to set forth evidence of damages sustained as a result of false advertising and failed to introduce evidence of actual confusion among consumers; Defendants also argue that the damages awarded by

_____

[57]Although Defendants' motion is titled as a motion for judgment notwithstanding the verdict, the requested relief is properly described as a renewal of Defendants' motion for judgment as a matter of law, pursuant to Fed. R. Civ. P. 50(b).

the jury to Plaintiffs TC Ventures, Inc., and Michael Chow, individually, are duplicative.  Moreover, Defendants note that this Court previously found that only the Plaintiff Mr Chow Enterprises, Ltd. had standing to enforce the "Mr. Chow" trademark (and not the other Plaintiffs), such that only Mr Chow Enterprises, Ltd. could be awarded damages for false advertising (but the jury awarded nothing to Mr Chow Enterprises and instead, found only for Michael Chow and TC Ventures, Inc.).

    Plaintiffs respond that Defendants have misconstrued the relevant standards, and that there is no need to establish a trademark infringement, nor a likelihood of confusion resulting from Defendants' improper advertising.  Plaintiffs correctly note that a claim for false advertising requires demonstration of a likelihood of "deception," not "confusion," and that such claim may be brought by any person, i.e., not solely the trademark registrant, "who believes that he or she is or is likely to be damaged" by the false advertising.  15 U.S.C. § 1125(a)(1)(B).  Plaintiffs urge the Court to uphold the jury's verdict as to the question of false advertising and unfair competition, based on the evidence that false statements were made by Defendants which had the tendency to deceive customers such that their buying decisions would be influenced - "even if [the customers] understood that they were two different and unrelated restaurants."  ECF No. 365, p. 9.

    To establish false advertising under the Lanham Act, Plaintiffs must establish that the Defendants' advertisements and promotions (which were used "in commerce") were false or misleading,[58] and either deceived consumers or had the

---

[58]The challenged advertisement may be literally false, or it may simply be misleading.  "The line between literally false and misleading is not always a clear

capacity to do so, and that such deception had a material effect on the consumers' purchasing decisions.  15 U.S.C. § 1125(a).  Plaintiffs also must establish an injury resulting from the false advertising.  Id.; see also, e.g., Osmose, Inc. v. Viance, LLC, 612 F.3d 1298, 1319-20 (11th Cir. 2010) (no clear error in finding that manufacturer of wood preservative was likely to be injured by competitor's statements that a third party's testing of the manufacturer's product verified claims made by the competitor that the manufacturer's product was defective).

At trial, Plaintiffs offered evidence of two categories of allegedly false advertising: (1) statements by (or at the direction of) Defendant Morfogen to restaurant critics/reviewers in December 2005 that Defendant Chau was the mastermind of the dishes and the architect of the menu at the Mr Chow restaurants and that Defendant Chau was a chef acclaimed by top critics,[59] and (2) the purchase of search terms on internet search engines which resulted in the Philippe restaurants appearing in searches for "Mr Chow" restaurants.  (Defendant Morfogen also may have had employees submit positive reviews in an attempt to skew publicly viewable reviews in favor of Philippe restaurants, but the Court has not found any precedent for finding that this constitutes false advertising.)

As to the statements to restaurant critics/reviewers, the Court must take the

one, 'but it is a fine line.'" Osmose, Inc. v. Viance, LLC, 612 F.3d 1298, 1317 (11th Cir. 2010) (quoting N. Am. Med. Corp. V. Axiom Worldwide, Inc., 522 F.3d 1211, 1225 (11th Cir. 2008)).

[59]Plaintiffs also complained repeatedly about Defendant Chau's decision to change his name to "Chow," and Defendant Morfogen's attempts to mislead the public that Defendant Chau and Michael Chow were related, as discussed previously.

evidence in the light most favorable to Plaintiffs and, in doing so, is unable to conclude that the jury's verdict should be disturbed.  There was sufficient evidence that certain of the statements reported in the media were without a basis in fact. The Court observes that Defendant Morfogen appears to be inclined toward exaggeration, at a minimum, as he allegedly publicly stated before trial that $1.7 million in attorneys' fees had been awarded to Defendants - when no such order had been entered,[60] and after trial he proclaimed that the jury verdict was a "landslide win" for Defendants - which is disputable, at least.

As to the argument relating to purchase of internet search terms, Plaintiffs offered exhibits demonstrating internet search results dated 2008 - 2009 which show the address of the Philippe restaurant on 60th Street in New York City, with its corresponding website address, appearing immediately under the heading "Sponsored Links" and "Mr Chow" on a printout of Google search results.  Plaintiffs' Ex. 33.  Defendant argues that it was not engaging in commercial advertising when it purchased these search terms on Google and other search engines[61] and that such

---

[60]Apparently the basis for this comment was Defendants' interpretation that the Court's ruling in favor of Defendants as to certain claims would result in the entry of an order awarding attorneys' fees to Defendants.

[61]Defendant Morfogen testified that Defendants bought from Google (and others) the "key words" Chow, Mr. Chow, Philippe Chow, Chinese cuisine, Peking Duck, etc. - in total several hundred words were purchased.  Trial Tr., Feb. 2, pp. 119-125, 144-151; Trial Tr., Feb. 6, pp. 146-148; Trial Tr., Feb. 7, p. 121.  The purchase of such "key words" by Defendants was to generate traffic to Defendants' own website, as follows: A user searching on Google for "Mr. Chow" would see the Philippe Chow information appearing as a "sponsored link," and if the user then clicked on the Philippe Chow information the user would go to the Defendants' website. Id. at 121, Trial Tr., Feb. 6, pp. 146-148; Trial Tr., Feb. 7, pp. 103-104, 120-123.

activity does not constitute false advertising as the conduct was not a "false statement of fact" about their restaurants.  Defendants assert that the only time period when they had purchased such terms - or similar terms - was in 2008 or 2009, prior to the filing of this lawsuit and at a time when Defendants claim that they did not know Plaintiffs owned the trademark as to that name.[62]  Defendants also have offered to stipulate that they will not purchase the search term "Mr. Chow" in the future, as they now have been notified that it is protected as a trademark.

The United States Court of Appeals for the Fourth Circuit recently has addressed, in some detail, the use of Google AdWords and the evolution of Google's policy as to the use of trademarks by advertisers, in Rosetta Stone Ltd. v. Google, Inc., 676 F.3d 144 (4th Cir. 2012).  As observed by that court, from 2004 until 2009 Google permitted advertisers to purchase keywords containing a third party's trademarks even over the objection of the trademark owner.  (Advertisers purchase keywords for use in searches through a process of bidding for the right to have the advertisers' ad and website address displayed whenever a user searches for the specific keyword.)  In 2009, "Google changed its policy to permit the limited use of trademarks in advertising text in four situations." Id. at 151.  Those situations included: 1) when the advertiser is a reseller of the trademarked product, 2) makes or sells component parts of the product, 3) offers compatible goods for use with the

---

[62]Defendant Morfogen testified that he had no notice prior to May 2009 that he was falsely advertising by using these Google search terms, Trial Tr., Feb. 7, p. 85.

product, or 4) provides information about or reviews the product.  The appellate court determined that Google had not vicariously infringed on the trademark at issue in that case, but remanded the case to the trial court for further proceedings as to whether Google had directly or contributorily infringed on the trademark or diluted the trademark.[63] Id. at 173.

Plaintiff Chow testified that he saw sponsored links on internet search engines (Google, AOL, and Yahoo) which misleadingly affiliated the Defendants' restaurants with the Mr Chow restaurants' name,  see Plaintiffs' Ex. 33, 34, 35, Trial Tr., Jan. 25, p. 23, but no testimony was offered as to whether such sponsored links had resulted in consumers going to Defendants' restaurants as a result of confusion when their original intention was to dine at a Mr Chow restaurant.  In the case of Internetshopsinc.com v. Six C Consulting, Inc., 2011 U.S. Dist. LEXIS 31222 (N.D. Ga. March 24, 2011), the trial court observed that there was no evidence that sales of the allegedly competing product had resulted from potential customers clicking on a sponsored link which used a trademarked term without authorization.

The Eleventh Circuit "has not yet determined whether the purchase of Google AdWords can be considered a use in commerce for purposes of 15 U.S.C. §

---

[63]At least one commentator has observed that "finding search engines liable for trademark infringement impermissibly gives mark owners more rights than trademark law entitles them," and recommended that courts not find that search engine practices of allowing advertisers to use others' trademarks to trigger ads or suggesting keywords for the competitor to purchase should trigger trademark infringement liability.  Malachowski, Daniel, Seminar Article: Search Engine Trade-Marketing: Why Trademark Owners Cannot Monopolize Use of Their Marks in Paid Search, 22 DePaul J. Art Tech. & Intell. Prop. L. 369, 386 (Spring 2012).

1125(a)." <u>S. Grouts & Mortars v. 3M Co.</u>, 575 F.3d 1235, 1250 (11th Cir. 2009) (claim was not pursued after lower court refused to permit amendment of complaint to add claim). The appellate court has acknowledged that a competitor might legitimately include another company's trademarked name or term as a "meta tag" embedded in a website in order to generate search results. "Although we express no opinion thereon, such a defendant may have a legitimate reason to use the competitor's trademark as a meta tag and, in any event, when the defendant's website is actually accessed, it will be clear to the consumer that there is no relationship between the defendant and the competitor beyond the competitive relationship." <u>North Am. Med. Corp. v. Axiom Worldwide, Inc.</u>, 522 F.3d 1211, 1224 (11th Cir. 2008).

Taking the evidence in the light most favorable to Plaintiffs, the Court is unable to find a basis for setting aside the jury's verdict as to false advertising and unfair competition by deceptive conduct, as the jury may have viewed the statements attributable to Defendant Morfogen, or the purchase of "Mr. Chow" and related key words as internet search terms, as sufficient evidence of false statements which had the capacity to deceive consumers. While the Court's discussion, above, suggests that the purchase of search terms - standing alone - may not necessarily be sufficient to demonstrate a violation of the Lanham Act's proscription against false or misleading advertising, the Court finds that the jury had a legally sufficient basis for its verdict as to this claim. In light of the above, Defendants' motion for judgment as a matter of law as to these claims is DENIED.

2. Duplicative damages award

As to the alleged duplicative award of damages to TC Ventures, Inc., as well as to Michael Chow, individually, the Court finds that the jury mistakenly awarded damages to Michael Chow which resulted in a duplication of the jury's award to TC Ventures, Inc. A review of the record reveals that the Court - with counsel's cooperation - created a confusing verdict form which did not correspond to the Jury Instructions and, therefore, was misleading to the jury.

On February 7, 2012, Plaintiffs filed their first version of their proposed jury instructions and verdict form, which included the following statement under the title "Damages." "If you find in favor of the Plaintiffs on any of the above claims, you should proceed to determine the damages, if any, suffered by each restaurant." ECF No. 325-2, p. 4. The first entity listed in the "Damages" portion of the form was "Mr. Chow Restaurant - New York City (57th Street). Id. Plaintiff Michael Chow was not included in the Damages section of the Plaintiffs' original proposed verdict form.[64] On February 12, after negotiations with Defendants' counsel, Plaintiffs filed a revised set of proposed jury instructions and verdict form. ECF No. 335-1. The proposed verdict form included the same statement quoted above, and also listed the 57th Street restaurant as the first entity listed in the "Damages" portion of the form; immediately below that entity, however, appeared "Michael Chow" with a footnote stating: "It is the Defendants' position that Michael Chow

---

[64]Defendants' initially proposed verdict form, filed February 7, 2012, did not list any Defendants by name, instead providing a blank space for the jury to complete as to which Defendants were responsible for each proposed category of damages. ECF No. 328.

individually should also be identified as seeking damages for each restaurant. <u>It is the Plaintiffs' position that he does not need to be identified separately because he owns the corporations and their income passes through to him.</u>" ECF No. 335-1, p. 4 (emphasis added).[65]  Plaintiffs did not include Michael Chow elsewhere on their proposed verdict form.  As a result of discussions with counsel in chambers, the final verdict form moved the listing of "Michael Chow" to the end of the list of potential recipients of damages, i.e., after the list of the Plaintiffs' restaurant corporations.

The Court's instructions to the jury stated that:

> In this case, the damages claimed by Plaintiffs have been separated into damages suffered by (1) **the Mr. Chow restaurant in New York City (57th Street)**, (2) **the Mr. Chow restaurant in Beverly Hills, California, and** (3) **the Mr. Chow restaurant in Miami Beach, Florida.**  You should determine the Plaintiffs' damages, if any, in each location.
>
> In determining damages for each location, you may consider awarding (1) the Plaintiffs' lost profits at the restaurant, (2) the reduced sale value of the restaurant at that location, or (3) the Defendants' profits in that location.  These are alternative measures of damages though.  You may award only one of those measures of damages for each location, but no more than one.

ECF No. 350, p. 43 (emphasis added).  The jury asked a question during deliberations as to which Defendants would be responsible to pay damages to Michael Chow; the question apparently was prompted by the Court's own failure to include a list of Defendants on the verdict form immediately below Michael Chow's name.  The Court provided a corrected page, which listed all Defendants, and the

---

[65]The parties' Joint Pretrial Stipulation indicates that "TC Ventures, Inc. is a New York corporation that owns and operates the Mr. Chow restaurant located at 324 E. 57th Street," ECF No. 287, p. 5, ¶ 5.i., and that Michael Chow and his wife, Eva Chow, are the sole owners of Mr Chow Enterprises, Ltd., <u>TC Ventures, Inc.</u>, MC Tribeca, LLC, and MC Miami Enterprises, LLC.  ECF No. 287, p. 6, ¶ 5.p.

jury selected only Stratis Morfogen. As to the damages awarded to the Plaintiffs' restaurant on 57th Street in New York City, the jury selected only the Defendant Davé 60 NYC, Inc., as the responsible party.

Although Plaintiffs had not originally sought to include Michael Chow on the verdict form, Plaintiffs now strenuously argue in favor of the jury's decision to award $500,000 to him. Plaintiffs claim that Michael Chow testified to not being able to sell his restaurant on favorable terms, and that could have been the basis for the jury's calculation of damages he suffered individually.[66] Plaintiffs' expert testified that he did not calculate damages for Michael Chow individually but that "[i]ndirectly, he's obviously behind all these restaurants." Trial Tr., Feb. 1, p. 145. According to Plaintiffs' Memorandum Regarding Proof of Damages at Trial, filed January 23, 2012, "Mr. Chow ... will testify as to the actual and projected sales of his New York restaurant before and after the defendants' acts of unfair competition, as well as the value of his New York restaurant." ECF No. 294, p. 6. "Recoverable damages may be based on the diminution in the value of the plaintiff's property. And, an officer of the plaintiff may testify to such values." Id., at p. 8, citations omitted. During opening statements, Plaintiffs' counsel stated:

_____

[66]Plaintiffs also argue that the damages may have been for Michael Chow to pay for remedial advertising to overcome the negative impact of the false advertising by Defendant Stratis Morfogen; however, no evidence was introduced as to the cost of any remedial advertising. (Indeed, Plaintiffs reportedly do not engage in advertising. See discussion, supra.) Moreover, the search engine results were approximately three years old at the time of trial (the results were from 2009), and although Plaintiffs argue that such misleading search terms were operable for nearly one year, the evidence of any alleged current harm from such prior conduct was minimal, at best.

Now, what damage was done to Mr. Chow? You will hear testimony about what damage. And you will find out that in the New York restaurant, the damage is principally in the New York restaurant because Miami is new, and there's very little damage out in California.... Mr. Chow's sales dropped like a rock.... And you can see the effect it had. I mean, this cost him a huge amount of money that he's lost. Also cost him value. He had a saleable asset in this New York restaurant for a very big number, because it was very successful as of December '05. Today, I think he'd have a hard time giving it away.

ECF No. 301, pp. 40-41. "[T]he California damage, we concede, is very slight. The

Florida damage is very slight, actually. Mr. Chow is doing well here. It hasn't been

as a big disaster as it is in New York. But in New York, his restaurant was

destroyed. Destroyed big time." ECF No. 301, pp. 41-42. The focus was, of course,

on the damage to the restaurants. The Jury Instructions also explained that:

> In determining damages for each [restaurant] location, you may consider awarding (1) the Plaintiffs' lost profits at the restaurant, **(2) the reduced sale value of the restaurant at that location**, or (3) the Defendants' profits in that location. These are **alternative measures of damages** though. You may award only one of those measures of damages for each location, but not more than one.

ECF No. 350, p. 43 (emphasis added). As is clear from these Instructions, the jury

was to consider <u>either</u> the lost profits or the reduced sale value of the restaurant,

and the award to Michael Chow individually - without connection to a particular

restaurant which was damaged - appears to have been made in error. Notably, the

jury declined to award any punitive damages, despite being instructed that punitive

damages were permissible.

Taking the evidence in the light most favorable to Plaintiff Chow, and in

recognition of the Jury Instructions, which were approved by the parties, and the

Plaintiffs' counsel's own statements as to the potential recovery of damages as to

the corporations that would pass through to Plaintiff Chow, the Court finds that the Defendant Morfogen is entitled to judgment as a matter of law in his favor as to this issue, and the award of $500,000 to Plaintiff Michael Chow, individually, must be set aside.

C. Plaintiffs' motion for injunctive relief as to false advertising

Plaintiffs seek an order permanently enjoining Defendants from false advertising and also seek injunctive relief as to the claims for common law unfair competition. Defendants argue that Plaintiffs lack standing to seek such broad relief, as the only Plaintiff who prevailed, TC Ventures, Inc., does not own the "Mr. Chow" trademark (it is owned by Mr Chow Enterprises, Ltd.). As recently stated by the Eleventh Circuit, a court has broad discretion as to the determination of whether an injunction should issue after the allegedly harmful conduct has ceased. Pensacola Motor Sales, Inc. v. E. Shore Toyota, LLC, 684 F.3d 1211 (11th Cir. 2012). The Court notes that the jury awarded no punitive damages whatsoever, and the Court's assessment of the evidence and the parties suggests that an injunction is not necessary at this time. The Plaintiffs' most recent example of allegedly false advertising (by purchasing internet search terms) took place two or more years before the trial of this case. Injunctive relief would be an extraordinary remedy, and the Court does not find that the facts of this case warrant such relief.

Finally, Defendants' motion for sanctions (Dkt No. 358) is DENIED.

Defendants ask the Court to direct Plaintiffs to stop misrepresenting facts and evidence to the public, and ask the Court to direct Plaintiffs' counsel to stop filing frivolous motions which misstate the evidence and facts found by the jury. The Court finds that such relief is not necessary at this time.[67]

### D. Plaintiffs' motion for injunctive relief for dilution

Plaintiffs claim that the "Mr. Chow" trademark has been diluted; however, this claim did not go to the jury because Plaintiffs instead asked this Court to rule on the matter, arguing that the claim sought solely injunctive relief.[68] To determine whether Plaintiffs are entitled to relief under this theory, the Court must determine whether Defendants blurred or lessened the value of Plaintiffs' trademark. 15 U.S.C. § 1125(c)(1). In light of the jury's determination that there was insufficient evidence of trademark or trade name infringement, and after a consideration of the totality of the evidence presented with respect to the separate standard applicable to dilution claims (under either the Lanham Act or New York law), the Court is not able to find that Defendants diluted Plaintiffs' trademark; therefore, Plaintiffs' motion for injunctive relief as to dilution is DENIED.

---

[67]The Defendants' motion also requested an extension of time to respond to a pending motion - the requested extension was granted orally by the Court on February 27, 2012.

[68]Defendants argue that Plaintiffs simply made a tactical decision not to submit this claim to the jury - correctly observing that the Plaintiffs sought both injunctive relief and damages for dilution, similar to Plaintiffs' other Counts brought pursuant to the Lanham Act which were submitted to the jury.

E. Plaintiffs' request to increase damages

Plaintiffs ask the Court to treble the $520,451 in damages awarded against Defendant Davé 60 NYC, Inc., arguing that such damages are insufficient to compensate Plaintiffs for their losses. (Plaintiffs sought damages totaling in excess of twenty million dollars in this case.) The Lanham Act permits a court to award "any sum above the amount found as actual damages, not exceeding three times such amount." 15 U.S.C. § 1117(a). The determination of whether additional damages are required is based on the Court finding "that the amount of the recovery based on profits is ... inadequate" and, if the Court so finds, then the Court may, in its discretion "enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." 15 U.S.C. § 1117(a). The amount awarded is strictly to be considered as compensation, and is not to be construed as a penalty. Id.

The Court has "considerable" discretion to award such additional damages, based on a showing of actual harm. Plaintiffs argue that they proved damages from January 2006 through March 2011 (the end date used by Plaintiffs' expert Sergio Negreira), but that the jury apparently only attributed the Plaintiffs' losses from the first four months of 2006 (i.e., prior to when the Plaintiffs opened a second restaurant in New York City, in Tribeca) to Defendants' conduct, and did not find that the entire loss of profits between May 2006 and December 2011 was attributable to Defendants' conduct, i.e., the jury found that such losses were the result of a cause other than Defendants' conduct. Defendants respond that the

Plaintiffs' damages request was a "ballpark" number and not based on specific evidence of damages, and urge the Court not to increase the amount of damages awarded by the jury. Defendants elicited testimony at trial that when Plaintiffs opened their second restaurant in New York City, it was "helpful" to the original restaurant, Trial Tr., Jan. 25, pp. 197-98, and the volume of business at the original location "went up for three months." Trial Tr., Jan. 26, pp. 69-70.

During deliberations, the jury asked for the monthly total gross earnings for 2005 and 2006 for the Mr Chow restaurant on 57th Street in New York City, which were provided - pursuant to the parties' agreement; the jury then asked for the exact opening date ("we need the month and day") for the Plaintiffs' restaurant in Tribeca, to which the parties agreed to respond "May 2006." The jury apparently did not find that the Plaintiffs had proven that Defendants' false advertising or unfair competition by deceptive conduct was the cause of the reduction in Plaintiffs' profits after May 2006 (when Plaintiffs elected to open a second restaurant in New York City). The Court has determined that the jury properly assessed the damages proven at trial and, consequently, declines to award an increase in the damages; as such, Plaintiffs' motion is DENIED.


### F.  Plaintiffs' and Defendants' motions for attorneys' fees

The Court has the discretion to determine whether to award fees. The Lanham Act provides that a court "in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117. The Court of Appeals for

the Eleventh Circuit has defined "exceptional" to include cases where a party acts in a "malicious, fraudulent, deliberate and willful" manner or a case in which "evidence of fraud or bad faith exists." <u>Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.</u>, 253 F.3d 1332, 1335 (11th Cir. 2001). The parties in this case all claim to have been the "prevailing" party, and claim that an award of fees is warranted.

Plaintiffs argue that the central litigated issue was won by Plaintiffs (with evidence of intentionally false advertising) and also that the conduct of Defendant Morfogen and defense counsel at trial make this an "exceptional case" for which fees should be awarded to Plaintiffs. Defendants respond by arguing that the Plaintiffs did not prevail, overall, as they did not succeed on the "significant issues tried before the court" - referencing a test employed by the Eleventh Circuit. Defendants claim that they won on the claims that made up 80% of the discovery taken and 100% of the motions to compel that Plaintiffs had filed. Moreover, Defendants argue that they prevailed on the other Lanham Act claims (trademark infringement, etc., which Defendants say were brought in bad faith by Plaintiffs[69]), and that Defendants also prevailed on the New York trade secrets claim (the Court ruled before the verdict that the New York claim was time-barred, as the Plaintiffs did not give Defendants timely notice that they were infringing on Plaintiff's "MR. CHOW" trademark). Defendants also argue that they prevailed on the Florida claim for deceptive and unfair trade practices (FDUTPA).

---

[69]The Eleventh Circuit permits the award of fees to a prevailing defendant when a plaintiff has brought "an obviously weak Lanham Act claim and the evidence shows that the plaintiff acted in bad faith and with an improper motive." <u>Welding Servs. v. Forman</u>, 301 Fed. Appx. 862 (11th Cir. 2008).

The Court notes that Plaintiffs spent a large amount of time on the issue of alleged "trade secrets" - including requesting that the court room be sealed during testimony which was purportedly going to reveal secret recipes, when there was nothing secret about the testimony subsequently elicited.  In addition, Plaintiffs included claims against several of Defendants' chefs (employees) for allegedly breaching "Written Agreements" of confidentiality but no such agreements were ever produced, e.g., the Joint Pretrial Stipulation reports that Defendant Chau "did not have a written non-compete agreement or written confidentiality agreement with any of the Plaintiffs."  ECF No. 287, p. 7, ¶ 5.dd.  Plaintiffs ultimately abandoned all claims against four of the Chefs on the eve of trial, and also abandoned claims alleging that Defendants induced the Chefs to breach their agreements with Plaintiffs.  Plaintiffs also dismissed their allegations against Defendant Dumitrescu, a maitre d' employed by Defendants and previously employed by Plaintiffs (until he sued for unpaid overtime wages, intentional infliction of emotional distress, battery and assault by Plaintiff Chow, and settled that litigation in July 2008).  Finally, Plaintiffs sued Defendant Manny Hailey, who only purchased an investment interest in the Defendants' California operations in 2010, the year after this lawsuit was filed; despite Defendant Hailey's admittedly little involvement in the issues being litigated, Plaintiffs were unwilling to dismiss the case against him.  The jury ultimately found no liability attributable to Defendant Hailey.  Plaintiffs' broadly stated allegations in the Third Amended Complaint resulted in those four chefs, the maitre d', and Defendant Hailey all

being under the cloud of litigation for several years without an apparent basis for maintaining the claims filed against them.

In total, Plaintiffs called approximately twenty witnesses, and the overwhelming majority of the questions posed by Plaintiffs' counsel related to the allegations of trade secrets (despite the three year statute of limitations which applies to claims in New York), and trademark or trade name infringement – claims on which Plaintiffs were unsuccessful.  In light of this record, the Court does not find that Plaintiffs, to the extent that they were the prevailing party on the claim of false advertising pursuant to the Lanham Act, are entitled to a determination that this is an exceptional case which merits an award of fees.

As to Defendants' request for fees, to the extent that they "prevailed" on any Lanham Act claims, the Court does not find a basis for deeming this an exceptional case which justifies an award of fees.  In summary, the Court does not find a basis for granting attorneys' fees under the Lanham Act to any party.

Although attorneys' fees according to FDUTPA are justified for Defendants - as of the present record - such request is premature.  The Court also finds that Defendants may be entitled to attorneys' fees under the CBPC and New York law, but will deny the motion for fees, without prejudice to be renewed at the conclusion of any appeals.


G.  Costs

Defendants filed a motion seeking fees and costs, relying on multiple

statutory provisions and Fed. R. Civ. P. 54(d). In a response in opposition, Plaintiffs then claimed entitlement to costs, citing Fed. R. Civ. P. 54(d) and the Lanham Act.

The Court has determined that Defendant Davé 60 NYC, Inc., was not a prevailing party in this case and is not entitled to an award of costs. All other Defendants, however, can be considered the "prevailing party" as Plaintiffs did not succeed as to any claims against these other Defendants and, therefore, these Defendants are entitled to their costs in defending against Plaintiffs' claims, pursuant to Rule 54(d). "A defendant is a prevailing party if the plaintiff achieves none of the benefits sought in bringing its lawsuit." Pickett v. Iowa Beef Processors, 149 Fed. Appx. 831, 832 (11th Cir. 2005).[70]

Also, the Court has determined that Plaintiff TC Ventures, Inc.,[71] is entitled to costs related to prosecution of the claim for false advertising (Count IV) and unfair competition by deceptive conduct, pursuant to the Lanham Act, and Fed. R. Civ. P. 54(d),[72] respectively. In addition, as Defendants did not succeed as to their three Counterclaims, (two of the Counterclaims relied on provisions of the Lanham Act), all Plaintiffs are entitled to costs as to their defense against the

---

[70]As the Florida statutes provide an independent basis for an award of costs as to Count XI (FDUTPA), Fla. Stat. § 501.2105(1), and require that an award of costs not be made until the conclusion of any appeals, the Court will await a ruling on the amount of the costs as to Count XI until Defendants notify the Court that such an award is permissible.

[71]No other Plaintiffs were the "prevailing party."

[72]See, e.g., Head v. Medford, 62 F.3d 351, 354 (11th Cir. 1995) ("Usually the litigant in whose favor judgment is rendered is the prevailing party [for purposes of Rule 54(d).") (quotations omitted).

Counterclaims. The parties shall submit any requests for costs, with accompanying documentation, no later than November 20, 2012.

## CONCLUSION

For the reasons stated above, Plaintiffs' motion for new trial is DENIED, and Defendants' motion for judgment as a matter of law is GRANTED, in part - the award of $500,000 in damages as to Plaintiff Chow is set aside and judgment will be entered on behalf of Defendant Morfogen. Plaintiffs' motions for injunctive relief (as to dilution and as to false advertising) are DENIED. Plaintiffs' motion for increased damages is DENIED. The parties' motions for attorneys' fees pursuant to the Lanham Act are DENIED. Plaintiffs' motion for costs is GRANTED, in part, and Defendants' motion for costs is GRANTED, in part, consistent with the discussion above.

Finally, Plaintiffs' motion for entry of final judgment is GRANTED, in part. Judgment will be entered in a separate document, based on the jury verdict and consistent with the Court's rulings, above.

DONE AND ORDERED in Chambers in Miami this 24th day of October 2012.

_____

WILLIAM M. HOEVELER
SENIOR UNITED STATES DISTRICT COURT JUDGE

Copies furnished:
    Bertram H. Fields
    Curtis B. Miner
    Anthony Accetta
    Vincent J. Ancona